**Gallagher v. San Diego Unified Port District, et al.**
**Case No. 08-CV-0886 IEG (RBB)**

## INDEX TO EXHIBITS

| EXHIBIT | PAGE(S) | DOCUMENT |
|---|---|---|
| 1 | 1-8 | Agenda Sheet of the Board of Port Commissioner's meeting regarding §4.36, dated August 22, 2000 |
| 2 | 9-21 | Original Ordinance 2107 (§4.36), dated August 22, 2000 |
| 3 | 22-36 | Settlement Agreement and Release of Claims dated August 8, 2000 in *Gallagher v. San Diego Unified Port District*, 98-CV-0615 J (JAH) |
| 4 | 37-41 | Third Offer of Judgment in *Gallagher v. San Diego Unified Port District*, 98-CV-0615 J (JAH), dated 11/17/00 |
| 5 | 42-43 | Plaintiff's Acceptance of Third Offer of Judgment in *Gallagher v. San Diego Unified Port District*, 98-CV-0615 J (JAH), dated 11/27/00 |
| 6 | 44-57 | UPD Code §4.38, dated June 3, 2003 |
| 7 | 58-65 | Completion Report submitted by District to the United States Army Corps of Engineers, dated May 15, 2003 |
| 8 | 66-67 | Agenda Sheet of the Board of Port Commissioner's December 6, 2005 meeting regarding the A-8 Anchorage |
| 9 | 68-71 | Minutes from the December 6, 2005 Board of Commissioner's meeting |
| -- | 72-75 | *BLANK* |
| 10 | 76-84 | Agenda Sheet of the Board of Port Commissioner's May 2, 2006 meeting regarding the A-8 Anchorage |
| 11 | 85-91 | Minutes from the May 2, 2006 Board of Commissioner's meeting |
| 12 | 92-101 | Agenda Sheet of the Board of Port Commissioner's June 6, 2006 meeting regarding the A-8 Anchorage |
| 13 | 102-105 | Minutes from June 6, 2006 Board of Port Commissioner's meeting |
| 14 | 106-116 | Agenda Sheet of the Board of Port Commissioner's September 5, 2006 meeting regarding the A-8 Anchorage |
| 15 | 117-120 | Minutes from September 5, 2006 Board of Port Commissioner's meeting |
| 16 | 121-140 | Letter to John Gallagher from Ellen Gross Miles, dated July 6, 2007 |

**<u>Gallagher v. San Diego Unified Port District, et al.</u>**
**Case No. 08-CV-0886 IEG (RBB)**

## INDEX TO EXHIBITS (p. 2)

| EXHIBIT | PAGE(S) | DOCUMENT |
|---------|---------|----------|
| 17 | 141-159 | Order Granting Defendants' Motion to Dismiss Without Prejudice, dated 4/4/07, in *Renard v. San Diego Unified Port District*, 06-CV-2665 H (BLM) |
| 18 | 160-196 | Plaintiff's Notice of Motion and Motion to Enforce Judgment, with accompanying documents, dated November 1, 2002, in *Gallagher v. San Diego Unified Port District*, 98-CV-0615 J (JAH) |

**EXHIBIT 2**

000013

SAN DIEGO UNIFIED PORT DISTRICT

ORDINANCE  2107

AN ORDINANCE AMENDING ARTICLE 4
OF THE SAN DIEGO UNIFIED PORT DISTRICT CODE

WHEREAS, the unregulated use of the A-8 Anchorage located in Central San Diego

Bay has caused many health and welfare and environmental concerns including:

1.    Abandonment of vessels without any means of tracing the

owners;

2.    Long term use of anchorage for storage or liveaboards without

any permit or regulation;

3.    Docking of barges and commercial vessels unsuited to this

anchorage;

4.    Unseaworthy vessels occupying the anchorage;

5.    Discharge of harmful substances into San Diego Bay;

6.    Raising of sunken vessels, destruction or towing and storage of

abandoned or derelict vessels at the District's expense; and

7.    Debris and sunken vessels posing extreme hazards to

navigation.

WHEREAS, regulation is necessary to conserve and protect this anchorage for future

public use, NOW, THEREFORE,

The Board of Port Commissioners of the San Diego Unified Port District

does ordain as follows:

2107

Section 1.    Article 4 of the San Diego Unified Port District Code is hereby amended by adding Section 4.36 entitled "Regulation of Vessels - A-8 Anchorage" to read as follows:

SEC. 4.36 - REGULATION OF VESSELS - A-8 ANCHORAGE

(a)  Purpose:

California law (San Diego Unified Port District Act, Harbors and Navigation Code, Appendix 1) requires the Board of Port Commissioners to regulate and control the anchoring, mooring, towing and docking of vessels, and to make and enforce all necessary rules and regulations governing the use and control of navigable waters within the District.  The purpose of this Section of the San Diego Unified Port District Code is to implement that responsibility within the A-8 Anchorage.

(b)  Definitions:

Certain words and phrases used herein are defined as follows, unless the context requires a different meaning:

1.  A-8 Anchorage - In South San Diego Bay, the Sweetwater Anchorage, the water enclosed by a line beginning at latitude 32°39'12.2" N., longitude 117°07'45.1" W.; thence easterly to latitude 32°39'12.2" N., longitude 117°07'30.1" W.; thence southerly to latitude 32°38'45.2" N., longitude 117°07'30.1" W.; thence westerly to latitude 32°38'45.2' N., longitude 117°07'45.1" W.; thence northerly to the point of beginning.

2.  Abandonment - Any hulk, derelict, wreck or parts of any ship, vessel, or other watercraft, sunk, beached or

000011

allowed to remain in an unseaworthy or dilapidated condition upon publicly owned submerged lands, salt marsh, or tidelands within the corporate limits of the District, without the consent of District, evidenced by resolution of the Board of Port Commissioners first had and obtained in each instance, for a period longer than Thirty (30) days without a watchman or other person being maintained upon or near and in charge of the property.

3.    Anchorage - Any portion of the A-8 Anchorage which has been designated by competent authority for the anchoring of vessels.

4.    Anchoring - Attachment of a vessel to the bottom or the shore of San Diego Bay using an anchor and proper ground tackle.

5.    Anchoring Permit - A document conferring the right to use an anchor in the A-8 Anchorage for a prescribed period.

6.    Applicant - Individual applying for an Anchoring Permit to anchor in the A-8 Anchorage.

7.    Caretaker - Has the same meaning as watchman and is an individual who has been designated by a boat owner, in writing, to act in the owner's absence; Caretaker information shall be contained in the Anchoring Permit Application file.

8.    District - The San Diego Unified Port District.

COP012

2107

9.    Executive Director - Executive Director of the San Diego Unified Port District.

10.    Harmful Substances - Solid or liquid or gaseous material which may cause harm to or pollute the inland waters.

11.    Hearing Officer - Person designated by Executive Director to hear testimony and receive evidence regarding an Anchoring Permit refusal or revocation.

12.    Liveaboard - Any person who shall occupy a vessel with the intent that such vessel shall be his or her primary residence.

13.    Major Repair - Includes without limitation the use of welding or burning equipment, spray painting on the exterior of a vessel, exterior sandblasting and any work beyond repair of replacement of electrical equipment, mechanical or hydraulic components or repair and adjustment to machinery which remains onboard the vessel.

14.    Marine Sanitation Device - Toilet equipment (United States Coast Guard Approved) designed to receive human waste onboard vessels.

15.    Permittee - person who has acquired an Anchoring Permit from the District to anchor in the A-8 Anchorage.

16.    Propulsion System - A system which is designed to propel a vessel through the water through the use of sail or mechanical power.

2107

17.    Seaworthy - Describes a vessel in good material condition which is not likely to sink or become a menace to navigation or a nuisance, and which is capable of getting underway and navigating safely using its own propulsion system.

18.    Sewage - Human body waste, either treated or untreated.

19.    Vessel - A watercraft designed to float upon the surface of a body of water for the purpose of transporting persons or property.

20.    Waste - Sewage and all other waste or substances associated with human habitation; or of human or animal waste.

(c)    Anchoring Permits

1.    No person (including the owner, master, operator, caretaker or person in possession of a vessel) shall anchor a vessel in the A-8 Anchorage without first having secured an Anchoring Permit from the District in the form and manner provided therefor.

2.    For an Anchoring Permit to be issued, the following must be satisfied:    verification of ownership, verification of registration; inspection for seaworthiness, sanitary facilities, waste containers, safety and fire suppression equipment and other safety and health-related equipment required by existing laws.

3.    Vessels must have a propulsion system and operate under their own power to the District approved inspection site.

4.    The vessel's bilges must be petroleum free.

5.    The Anchoring Permit will be valid for Six (6) Months from the date of issue. Re-inspection of the vessel will be required upon renewal of the Anchoring Permit and the vessel inspection will be at a site determined by District.

(d)    <u>Anchoring Purposes Only</u>

An Anchoring Permit shall authorize the holder thereof to anchor within the boundaries of the A-8 Anchorage.

(e)    <u>Refusal to Issue Anchoring Permit</u>

District shall have the right at all times to refuse to issue or reissue an Anchoring Permit to any vessel if it determines that the vessel is not seaworthy, properly maintained, or presents a danger to public safety, District's property or other vessels.

(f)    <u>Revocation of Anchoring Permit</u>

District shall have the right at all times to revoke an Anchoring Permit to any vessel if it determines that the vessel is not seaworthy, properly maintained, or presents a danger to public safety, District's property or other vessels.

g)    <u>Ground Tackle</u>

Ground tackle shall be provided by the Permittee and shall be of sufficient number, strength, and size to insure that vessels remain securely anchored under all conditions.

(h)    <u>Vessel Inspection</u>

The District reserves the right to inspect any vessel anchored, moored or requesting anchorage in the A-8 Anchorage for proper safety, sanitary, mechanical, or other devices or equipment as may be prescribed by law. The District will provide reasonable notice to the owner/operator of any vessel of such inspection authorized by the District for the purpose of welfare and safety concerns.

(i)    <u>Refuse</u>

1.    Pursuant to Fish & Game Code Sections 5650 through 5655, no person shall throw, discharge or deposit from any vessel or from the shore or float, or in any other manner, any refuse matter, sewage, waste, fish parts, polluted bilge water, or garbage of any kind whatsoever into or upon the water of the A-8 Anchorage or any waters within the boundaries of the harbor.

2.    No person shall dump or discharge oil, spirits, flammable liquid or polluted bilge water into the A-8 Anchorage.

3.    No person on board any vessel anchored in the A-8 Anchorage shall use the toilet on board such vessel unless it is equipped with a suitable marine sanitation device or other approved device for sewage retention that is in proper working order.

000018

(j)    Major Repairs or Servicing of Vessels Prohibited

1.    Major repairs or servicing of a vessel in A-8 Anchorage is prohibited except upon the prior written authorization of the District.  Vessel maintenance work shall be limited to that required to maintain a vessel in seaworthy and in operable condition.

2.    No person shall engage in exterior spray painting in the A-8 Anchorage except as authorized in writing by the District.

3.    If it is necessary to perform work onboard a vessel involving the use of welding or burning equipment, the person intending to use welding or burning on board a vessel shall notify the District of the nature and extent of the proposed work, the workman or company doing the work and the date and time the work shall be performed.  This notice shall be given before the start of work and whenever practical, at least One (1) day before the work is to be performed.  All such work of welding or burning shall be performed only at an appropriate location as specified by the District.  No person shall engage in such work in the A-8 Anchorage except as authorized in writing by the District.

(k)    Uses Prohibited

1.    No business or commercial enterprise shall be conducted at the A-8 Anchorage.

C00017

2107

2.    No barges and floating docks shall be allowed to moor or anchor at the A-8 Anchorage.

3.    No vessel more than Sixty Five (65) feet in length shall be allowed to moor without a special permit issued by District.

(l)    Abandonment of Vessel

1.    Pursuant to Harbors and Navigation Code Section 522 et seq., no vessel shall be left in A-8 Anchorage with the intent to abandon such vessel, and if any vessel is abandoned, in addition to other legal remedies available to it, the District will have the right to tow and store or demolish the vessel at the expense of the owner.

(m)    Enforcement

The Executive Director of District or his designated representative shall have the authority to enforce the provisions of this ordinance and all lawful regulations and laws affecting the A-8 Anchorage. It shall be the duty of the Executive Director or his designee to:

1.    Carry out and enforce the orders of the Board of Port Commissioner of District, the provisions of this ordinance, and all regulations and laws affecting the A-8 Anchorage.

2.    Execute on behalf of the District, Anchoring Permits for the assignment of anchorages to vessels within the A-8 Anchorage.

2107

3.    Order any vessel improperly moored, anchored, or in violation of any provision in this Section or any applicable ordinance to change its position to one he shall designate, or to remove same from A-8 Anchorage, and in the event his orders are not complied with, to cause such vessel to be moved and to collect the cost thereof from such vessel, permittee, or owner.

4.    Report promptly to the proper authorities any violation of the laws of the United States for the protection of navigation or any violation of State or local laws or regulations.

5.    Insure thorough inspection that all vessels mooring or anchoring in the A-8 Anchorage are in compliance with all navigational, maritime, Federal, State, local and District laws and regulations, including but not limited to those mentioned in this section.

(n)    <u>Applicant's or Permittee's Right of Appeal</u>

1.    If District refuses to issue an Anchoring Permit, as described in Section (e), above, and Applicant for such Anchoring Permit believes he/she satisfies all conditions for the issuance of an Anchoring Permit, Applicant may appeal, in writing, to the Executive Director within Ten (10) calendar days of the date of refusal.

2.    If District revokes an Anchoring Permit as described in Section (f), above, Permittee may appeal such

2107

revocation, in writing, to the Executive Director within Ten (10) calendar days of the date of revocation.

3.    If Permittee or Applicant desires a hearing on the refusal or revocation, the letter to the Executive Director must so state.

4.    The Executive Director or his designated representative shall respond within Ten(10) calendar days of receipt of appeal either setting a hearing date, if one has been requested, or giving a written decision.

5.    If a hearing is requested, it must be set within Fifteen (15) calendar days of the date of receipt of appeal. The decision of the hearing officer is final.

6.    If no hearing is requested, the written decision of the Executive Director or his designated representative is final.

Section 2.    This ordinance shall take effect on the 31st day from its passage by the Board of Port Commissioners.

sw
8/22/00

San Diego Unified Port District

Office of the Clerk

## CERTIFICATION OF VOTE

Passed and adopted by the Board of Port Commissioners of the San Diego Unified Port District on _____ August 22, _____ 2000, by the following vote:

| Commissioners | Yeas | Nays | Excused | Absent | Abstained |
|---|---|---|---|---|---|
| Stephen P. Cushman | X | | | | |
| Susan Lew | X | | | | |
| David Malcolm | | X | | | |
| Patricia A. McQuater | | X | | | |
| Paul H. Speer | X | | | | |
| Frank J. Urtasun | X | | | | |
| Jess Van Deventer | X | | | | |

AUTHENTICATED BY:

_____
Chair of the Board of Port Commissioners

_____
ELIZABETH MOORE-STUMP
Clerk of the San Diego Unified Port District

By: _____
District Clerk

(Seal)

Resolution Number: _____
     or
Ordinance Number: __2107__

Adopted: _____08/22/2000____

UPD Form 022 (Rev. 01/00)

**EXHIBIT 3**

000022

( /4 )

Document No.
Filed    AUG 0 8 2000
SD UNIFIED PORT DISTRICT Clerk's Office
40940

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (hereinafter referred to as the "Agreement") is entered into as of the 30th day of May, 2000, by and between the following parties, each of whom may be individually referred to as a "Party" or collectively referred to as the "Parties": (1) JOHN GALLAGHER (hereinafter referred to as "Plaintiff"); and (2) SAN DIEGO UNIFIED PORT DISTRICT (hereinafter referred to as "Defendant").

### RECITALS

The Agreement is made with reference to the following facts:

1.    In April 1998, Plaintiff filed a Class Action Complaint and Demand for Jury Trial against Defendant in the United States District Court in the Southern District of California, Case No. 98 CV 0615 J (JAH) (hereinafter referred to as "Plaintiff's Complaint").

2.    In that complaint, Plaintiff alleges, among other things, that he "was denied equal access to Defendant's programs, activities, facilities, goods, and/or services in violation of both federal and state laws and/or was injured due to violations of federal and state access laws."

3.    Defendant does not admit any discrimination and denies any liability for the claims alleged in Plaintiff's Complaint or of any kind.

4.    In entering into the Agreement, no Party is admitting the sufficiency of any claims, allegations, assertions, contentions or positions. The Parties have nevertheless agreed to enter into the Agreement to avoid further expense, inconvenience and distraction of litigation, with respect to the claims released herein and to be free of further liability from any claims by Plaintiff, whether or not asserted in Plaintiff's Complaint or any successor or predecessor

40940

complaints in this action, with the sole exception of Plaintiff's claim and all allegations in the Complaint which relate to, refer to or otherwise support his claim that Defendant "has regulated anchorage within San Diego Bays which regulation effectively discriminates against Plaintiff and others similarly situated" (hereinafter referred to as the "Anchoring Claim") and which the Parties have agreed shall be specifically reserved and excluded from this Agreement.

5.    By excluding the Anchoring Claim from the Agreement, Defendant is not admitting the sufficiency of any allegations made related to the Anchoring Claim and denies any discrimination and any liability of any kind to Plaintiff.

6.    This Agreement is subject to approval by the Court and the Parties agree that Defendant, or its designee, will prepare all necessary documentation to obtain said approval and further that if the Court requires notice to potential class members of this Agreement, that Defendant shall be responsible for preparing, and all costs associated with the provision of, said notice.

7.    This Agreement is subject to approval by the San Diego Unified Port District Board of Commissioners.

8.    Defendant expressly acknowledges its desire and intent to comply with disability access requirements such as those contained in the Americans with Disabilities Act and its implementing regulations. The basis of design for the boat dock improvements required in Subsection 3(c) of this Agreement and listed in Exhibit "A" attached to this Agreement is the Americans with Disabilities Act Accessibility Guidelines prepared by the Architectural and Transportation Barriers Compliance Board (Access Guidelines for Recreation Facilities) and published in the Federal Register on July 9, 1999.

SDLIT\CX\CV233024                              -2-

40940

9.    Defendant has recently completed construction of an accessible public dock adjacent to the Coronado Ferry Landing and Peohe's Restaurant. The District anticipates that the dock will be open for public use by June 30, 2000 following repair to a float that was damaged during construction.

10.    The City of Coronado has indicated to Defendant that the City plans to provide an accessible dock at or adjacent to Glorietta Bay ("City Dock Project"). To the extent that Defendant must approve and/or cooperate with the City to enable the City to complete its Dock Project, Defendant will act in good faith consistent with its obligations under federal and state law.

11.    Finally, the District expressly recognizes the recommendation of United States Magistrate Judge John A. Houston that the District retain an expert in accessibility for individuals with disabilities to coordinate the District's commitments contained in this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants, promises and warranties set forth herein, the Parties agree as follows:

1.    The aforesaid "Recitals" shall be part of the Agreement.

2.    It is hereby agreed by and between the Parties that Plaintiff's Complaint, as well as any successor or predecessor complaints (excluding the Anchoring Claim as provided above), and any claims, damages or causes of action arising out of the disputed matters or the subject matter thereof, be settled and compromised as between the Parties, subject to the terms and conditions contained in the Agreement.

SDLI:DCXC:233024

-3-

**40940**

3

3.     Plaintiff and Defendant have agreed to settle all matters disputed between them (except
for the Anchoring Claim) in consideration of the Parties undertaking the following actions:

    a.     Defendant will update its Self-Evaluation and prepare an updated Transition Plan
within one year of the San Diego Unified Port District Board of Commissioners'
("Board") approval of this Agreement;

    b.     Defendant will remove barriers identified in its Updated Transition Plan within
three years of Board approval of this Agreement; provided, however, that upon a
showing of good cause by Defendant and approval of the Magistrate retaining
jurisdiction over this Agreement, Defendant shall be granted additional time to
remove barriers as required by this subsection;

    c.     Defendant will complete the improvements listed in the Boating Punch List, a
copy of which is attached to this Agreement as Exhibit "A", by December 31,
2002; provided, however, that upon a showing of good cause by Defendant and
approval of the Magistrate retaining jurisdiction over this Agreement, Defendant
shall be granted additional time to complete the improvements required by this
subsection;

    d.     Defendant, or its designee, will complete the improvements listed in the Non-
Boating Punch List , a copy of which is attached as Exhibit "B" to this
Agreement) within fourteen months of Board approval of this Agreement;
provided, however, that upon a showing of good cause by Defendant and approval
of the Magistrate retaining jurisdiction over this Agreement, Defendant shall be
granted additional time to complete the improvements required by this subsection;

40940

e.    Defendant will pay to Plaintiff's attorney, Amy B. Vandeveld, the total sum of
$117,500 for attorney's fees and costs within thirty days of Board approval of this
Agreement;

f.    Defendant will donate the total sum of $120,000 made payable to "Accessible San
Diego." The check will be delivered within thirty days of Board approval of this
Agreement to the law offices of Amy B. Vandeveld;

g.    Plaintiff will make his best efforts in obtaining Court approval of this settlement
of all claims in the Complaint, with the sole exception of the Anchoring Claim.;

h.    Plaintiff accepts the $120,000 donation to Accessible San Diego, as provided for
in Section 3(f) of this Agreement, as full and total compensation for any damages
(including but not limited to actual, general, punitive, special, treble, etc.) that he
may have suffered as a result of Defendant's conduct as alleged in the Complaint,
including conduct related to the Anchoring Claim. Plaintiff agrees that he is not
and shall not in any future litigation or other proceedings of any kind be entitled
to and hereby waives any claim for any additional damages arising out of the
Anchoring Claim; and

i.    Plaintiff accepts the $117,500 Defendant will pay in accordance with Section 3(e)
of this Agreement as full and final satisfaction of all of his attorneys' fees and
costs incurred in this matter, including those incurred and relating to the
Anchoring Claim, up to and including May 1, 2000.

4.    The Parties expressly agree that Plaintiff's right to seek recovery for attorneys' fees and
costs related to Plaintiff's prosecution of his Anchoring Claim after May 1, 2000 is preserved.

40940
5

5.    Plaintiff's Release of Defendant

Plaintiff, together with his predecessors, successors, assigns, agents, heirs, executors, administrators and representatives, hereby fully release, absolve and forever discharge Defendant together with Defendant's respective predecessors, successors, employees, assigns, agents, principles, owners, representatives, officers, directors, shareholders, and attorneys of and from all past, present, or future claims, demands, damages, liabilities, rights, actions, attorneys' fees, obligations, costs, expenses, liens, actions, judgments, and causes of action of every kind and nature whatsoever existing between them (with the sole exception of the Anchoring Claim as provided in Recital 4 and Section 2 herein), whether known, unknown or suspected, arising out of, or in any way connected with or relating to the claims in Plaintiff's Complaint.

6.    Defendant's Release of Plaintiff

Defendant, together with its respective predecessors, successors, employees, assigns, agents, principles, owners, representatives, officers, directors, shareholders, and attorneys, hereby fully release, absolve and forever discharge Plaintiff together with Plaintiff's predecessors, successors, assigns, agents, heirs, executors, administrators and representatives, of and from all claims (with the sole exception of the Anchoring Claim as provided in Recital 4 and Section 2 herein) whether known, unknown or suspected, arising out of, or in any way connected with or relating to the claims in Plaintiff's Complaint.

40940

6

7.    Waiver of Civil Code Section 1542

    a.    In furtherance of the Agreement, the Parties acknowledge that they have been

advised by legal counsel with respect to, and are familiar with and understand, the

provisions of California Civil Code Section 1542, which provides in pertinent

part:

        **A general release does not extend to claims which the creditor
does not know or suspect to exist in his favor at the time of
executing the release which if known by him must have
materially affected his settlement with the debtor.**

    b.    The Parties hereby specifically waive and relinquish each and every right or

benefit which they have or may have under Civil Code Section 1542 to the full

extent that they may lawfully waive such rights. In doing so, the Parties

acknowledge that they are aware that they may hereafter discover facts in addition

to, or different from, those which they now know or believe to be true regarding

the subject matter of the claims released herein. Nevertheless, it is the intention of

the Parties to fully, finally and forever settle and release all claims as to Plaintiff's

Complaint, and all claims relative thereto, known or unknown, suspected or

unsuspected, which now exist or may exist in the future with the sole exception of

the Anchoring Claim. In furtherance of such intention, the Releases as given

herein shall be and remain in effect as full and complete Releases of all such

matters, notwithstanding the discovery or existence of any additional or different

claims or facts relating thereto.

40940

7

8.    Continuing Jurisdiction

The Parties hereby agree to United States District Court Magistrate Judge jurisdiction for the interpretation and enforcement of this Agreement if a dispute should arise between the Parties and in furtherance of that agreement, the Parties will file all necessary consent documentation.

9.    Representations and Warranties

The Parties represent and warrant that they have the full power, capacity and authority to enter into the Agreement, that they have not sold, assigned or in any manner transferred any claims which they ever had against each other to any third party, and that no other releases or settlements are necessary from any other person or entity to release and discharge completely the Parties from the claims specified herein. Each Party agrees to indemnify, defend and hold harmless the other Party from and against any and all claims which may be asserted against such other Party, based upon, arising out of, or in connection with a breach of the representations and warranties made herein.

10.    Execution Not An Admission

The Agreement is the result of a settlement and compromise of disputed matters as herein set forth. By entering into the Agreement, no Party herein admits that the claims of the others are valid or more meritorious and each Party hereto agrees that the terms of the Agreement shall never be used, referred to, or considered as an admission of liability of such claims except for the limited purpose of obtaining Court approval of this Agreement and if required, notice to the class as anticipated in Recital 8 herein. Defendant has in the past denied and continues to deny the

40940

claims, assertions, allegations and contentions of the Plaintiff and any and all liability associated therewith.

11.    Legal Representation

Plaintiff acknowledges that he has had the opportunity to receive the advice of independent legal counsel prior to the execution of the Agreement and the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of the Agreement, and he understands the terms and provisions of the Agreement and its nature and effect. Plaintiff further represents that he is entering into the Agreement freely and voluntarily, relying solely on the advice of his own counsel, and not relying on the representations of any other Party or the counsel of any other Party. Plaintiff expressly agrees that the Agreement shall not be construed or interpreted for or against the Party drafting the Agreement.

12.    Successors and Assigns

The Agreement may not be assigned by any Party without the prior written consent of the other Party. Subject to the foregoing provision, the Agreement shall inure to the benefit of and be binding upon the Parties hereto and their respective heirs, successors and assigns.

13.    Applicable Law

The Agreement is made, executed and entered into and shall be governed by the laws of the State of California and is to be enforced in the County of San Diego.

14.    Integration

The Agreement contains the entire agreement and understanding between the Parties concerning the subject matter herein and supersedes and replaces any prior negotiations and agreements between the Parties hereto, whether written or oral.

40940    9

15.  Attorneys' Fees

If either Party breaches any obligation under the Agreement, the non-breaching Party shall be entitled to its reasonable expenses, attorneys' fees and costs incurred in any action taken, with or without litigation, to enforce the terms of the Agreement or to remedy or compensate for such breach.

16.  Severability

In the event that any one or more of the provisions of the Agreement shall be declared invalid, illegal, or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not be in any way affected or impaired thereby.

17.  Modifications

Any alterations, changes or modifications of or to the Agreement, in order to be effective, shall be made by written instrument or endorsement thereon and in each such instance shall be duly signed on behalf of each Party hereto.

18.  Future Assurances

Each Party to the Agreement agrees to execute, acknowledge, deliver, file, and/or record such further acts and things as may be necessary to carry out the intent and purposes of the Agreement.

19.  Notices

Any and all notices required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be in writing and shall be deemed duly served, delivered, and received when personally delivered (facsimile transmission shall also constitute personal delivery) to the Party to whom it is directed, or in lieu thereof, when three business days

40940    /0

have elapsed following deposit in the United States mail, certified or registered mail, return

receipt requested, first-class postage prepaid, addressed as follows:

**TO PLAINTIFF JOHN GALLAGHER**

Amy B. Vandeveld, Esq.
Law Offices of Amy B. Vandeveld
1850 Fifth Avenue, Suite 22
San Diego, California 92101
Telephone: (619) 231-8883
Facsimile: (619) 231-8329

**TO DEFENDANT SAN DIEGO UNIFIED PORT DISTRICT**

David R. Chapman, Port Attorney
San Diego Unified Port District
P.O. Box 120488
San Diego, California 92112
Telephone: (619) 686-6219
Facsimile: (619) 686-6444

With copy to:

Arlene Prater, Esq.
Best Best & Krieger LLP
402 W. Broadway, 13th Floor
San Diego, California 92101
Telephone: (619) 525-1300
Facsimile: (619) 233-6118

A Party may change an above address by giving timely written notice of such change to

the other Party in the manner provided in this Section.

20.    Counterparts

The Parties agree that this Agreement may be signed in counterparts.

4C940

IN WITNESS WHEREOF, the Parties have executed the Agreement as of the day and year first written above.

DATED: _5/26/00_

_John Gallagher_
JOHN GALLAGHER
Plaintiff

DATED: _3/31/00_

_Bruce Hollingsworth_
Bruce B. Hollingsworth
Senior Director\Treasurer
SAN DIEGO UNIFIED PORT DISTRICT
Defendant

APPROVED AS TO
FORM AND CONTENT:

LAW OFFICES OF AMY B. VANDEVELD

DATED: _5/26/00_

By: _____
Amy B. Vandeveld
Attorney for Plaintiff
JOHN GALLAGHER

SAN DIEGO UNIFIED PORT DISTRICT

DATED: _6/5/00_

By: _____
Arlene Prater
Caryn L. Craig
Attorneys for Defendant
SAN DIEGO UNIFIED PORT DISTRICT

40940 /2

ADA COMPLIANCE PROJECTS
BOATING

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| | Area/Location | ADA Issue | Fix | Cost | Timeline | Responsible Party | Comments |
| 1 | | | | | | | |
| 2 | Cor Tidelands Beach area | inaccessable, deep sand | provide for wheelchair access | | | Engineering Design | dinghy storage area |
| 3 | Chula Vista Boat Ramp | dock slope | reduce to 8.33% maximum | | | Engineering Design | first part of dock is 15% |
| 4 | Shelter Island Boat Ramp | walkway slopes | reduce to maximum of 8.33% | | | Engineering Design | Two are 12.8-11.0% |
| 5 | "    "    " Fishing Pier | Gangway slope lower dock | reduce to 8.33% | | | Engineering Design | current slope is 20% or more |
| 6 | A J Mooring Laurel Street | path of travel gangways | reduce to 8.33% | | | Engineering Design | 3 gangways now 20% slope |
| 7 | Visiting Vessel Boat Dock | gangway slope, third pier | reduce to 8.33% | | | Pier closed to public access | gangway currently 30% slope |
| 8 | Pepper Park Boat Dock | ramp slope | reduce to 8.33% maximum | | | Engineering Design | currently greater than 20% |

EXHIBIT "A"

**40940**

ADA COMPLIANCE PROJECTS
NON-BOATING

| Area/Location | ADA Issue | Fix | Cost | Timeline | Responsible Party | Comments |
|---|---|---|---|---|---|---|
| Marine View Park Parking lot | number of disabled spaces | add disabled spaces | 600 | | General Services | "Van Accessible" |
| | signage missing | add entry signage | 200 | | General Services | towing illegal parked vehicles |
| * Restroom(m) | lavatory knee clearance | increase to at least 29" | 2500 | | General Services | currently 13 7/8 |
| * Restroom(m) | air blower height | lower to maximum of 40" | 940 | | General Services | operating part currently 50" |
| * Picnic Tables | minimum clear floor space | provide at least 30"x19" post | 6000 | | General Services | at least 5 tables |
| Car Tidelands Park parking | access aisle on driver's side | place aisle on passenger side | 600 | | General Services | singly marked disabled space |
| | Van Accessible space & sign | mark ½ van accessible space | 600 | | General Services | space marking and signs |
| * Restroom(m) | lavatory knee clearance | increase to at least 29" | 4400 | | General Services | also wall-hung urinal (m) |
| | sign symbol mountings | remount to provide 1/4" | 200 | | Engineering Design | curb & triangle now flush mtd. |
| * Playground | inaccessible, deep sand | provide for wheelchair access | TBD | | General Services | |
| * Picnic area | lavatory on tables | compacted gravel walk on 5% | | | General Services | currently surrounded by grass |
| * Picnic area | table ¾ in space inadequate | provide 32" minimum space | 2000 | | General Services | on stationary concrete tables |
| * Sand/bar | signage missing | add entry signage | 500 | | General Services | currently 34" high |
| CV Harbor Boat Launch area | curb cut slopes | reduce to 8.33% & 1/2" edge | 3000 | | General Services | 5 replace 1 van accessible |
| CV Harbor Boat Launch area | ramp slope and handrails | provide disabled parking | 500 | | General Services | towing illegal parked vehicles |
| CV Harbor Restroom (m&w) | sign and symbol mountings | reduce to meet code | 200 | | General Services | parking lot restroom & turf area |
| CV Harbor Restroom (m&w) | commode location | remount 32" from furthest wall | 8000 | | General Services | at least 5 dimensions |
| CV Harbor Restroom (m&w) | commode grab bar location | remount to meet code | | | General Services | on outside walls |
| CV Harbor Restroom (m&w) | lavatory knee clearance | remount to provide 1/4" | 200 | | General Services | currently only 10" (Use Alt.) |
| CV Harbor Restroom (m&w) | commode location | increase to meet code | 940 | | General Services | (Use Alternative) |
| CV Harbor Restroom (m&w) | lavatory knee clearance | increase to at least 29" | 2200 | | General Services | commode blocked by commode |
| CV Harbor Police Station | air blower height | lower to maximum of 40" | 200 | | Engineering Design | currently only 21" |
| CV Harbor Park | ramp slope width/handrails | revise to meet code | | | General Services | currently 50" high |
| CV Harbor Park | sidewalk slopes | reduce slope or meet ramp of | TBD | 0  Police Trailer removal | Engineering Design | 8.33% slope 45" width, 1/2"np |
| Shelter Island Boat Ramp | number of disabled spaces | provide disabled parking | 600 | | Engineering Design | current slope 15.3%and 5% |
| Shelter Island Boat Ramp | disabled access aisles | change to passenger side | 500 | | General Services | currently none on 1 of the lots |
| Shelter Island Boat Ramp | path of travel | provide safe route | 3000 | | General Services | currently on driver's side |
| Shelter Island Boat Ramp | curb cut slopes | reduce to 8.33% | 3000 | | General Services | currently must go behind cars |
| Shelter Island Restrooms (m) | lavatory knee clearance | reduce to 34" | | | General Services | 3 are 2.4% & 3-14 37% |
| Shelter Island Restrooms (m) | commode location | reduce to maximum of 40" | 300 | | General Services | currently only 24" |
| A-3 Mooring Laurel Street | symbol height | reduce to maximum of 60" | 300 | | General Services | currently 39 1/2" high |
| A-3 Mooring Laurel Street | access aisle on driver's side | place aisle on passenger side | 600 | | General Services | symbols are now 71" & 65" |
| A-3 Mooring Laurel Street | symbol height | reduce to maximum 34" high | 1300 | | General Services | stations are currently 36" high |
| A-3 Mooring Laurel Street | curb cut slopes | reduce to 34" | 300 | | General Services | 2 spaces |
| Visiting Vessel Boat Dock | lavatory knee clearance | reduce to 1/4" maximum | 2500 | 0521 | General Services | men's restroom now 78" high |
| Visiting Vessel Boat Dock | threshold height women's rr | reduce to 34" | 300 | | General Services | currently 40" high |
| Visiting Vessel Boat Dock | speed bump slope | reduce to 1/4" maximum | 3000 | | General Services | currently 1" high |
| Visiting Vessel Boat Dock | curb cut slopes | reduce to 8.33% 14" ridge | 3000 | | General Services | southernmost cut now 9.1% |
| Pepper Park, Parking | curb cut slopes | reduce to 8.33% | 300 | | General Services | area north of Slsd of stairs |
| Pepper Park, Parking | disabled spaces, speed bump | provide required spaces | 1000 | | General Services | at entrance to first pier 12.6% |
| Pepper Park, Parking | path of travel | reduce to 8.33% 1/4" step up | 3000 | | General Services | 4 curb cuts now 10.5-17% |
| Pepper Park, Parking | curb cut slopes | reduce to 8.33% | 5000 | TBD | General Services | stations now limit 6 to 27" |
| Pepper Park, Parking | disabled spaces, ramp slope | add 3 spaces, repaint aisle | 500 | TBD | General Services/Planning | currently 14.4% |
| Pepper Park, Parking | entry signage | add Van Accessible & entry | 200 | | General Services/Planning | total of 5 spaces, aisle on right |
| Pepper Park, Parking | curb cut slopes | reduce to 8.33% | 0 | | Stores OK per consultant | entry signs in 1 lot wrong |
| Pepper Park, Restroom (m) | entrance doorway clearance | increase to 32" minimum | 3000 | | General Services | 4 curb cuts now 9.3-13.9% |
| Pepper Park, Restroom (m) | signage | conform to code | 200 | | General Services | currently 30 1/2" w/frame |
| Pepper Park, Restroom (m) | commode location | remount to conform to code | 2000 | | General Services | 32'.18" to wall 17-18" high |
| Pepper Park, Restroom (m) | flush button accessibility | remount to conform to code | 0 | | General Services | now blocked by commode (Alt) |
| Pepper Park, Restroom (m) | lavatory knee clearance | reduce to 17" or 44" | | | General Services | pushbutton now 25" and 45" |
| Pepper Park, Restroom (m) | lavatory knee clearance | remount to provide 29" mm | 1200 | | General Services | currently only 21 1/2" |
| Pepper Park, Restroom (m) | air blower height | remount to 44" maximum | 2200 | | General Services | currently only 17" |
| Pepper Park, Restroom (m) | commode height | reduce to code | 940 | | General Services | 2 kt is currently 49" high |
| Pepper Park, Fishing Pier | picnic table clear floor space | 2 tables provide 30"x19" mm | 1300 | | General Services | violation not rated, 5 t rr |
| CV Bayside Park, Parking | disabled space signage | correct signage and markings | 3000 | 0615 | General Services | blue mrkt, Van Accessible |
| CV Bayside Park, Parking | valve skirt flower | change skirt flower to raised curb cut | 200 | 0500 | General Services | 2 disabled spaces marked |
| CV Bayside Park, Parking | curb cut slopes | provide entry signage, towing | 2000 | 0572 | General Services | illegally parked disabled space |
| CV Bayside Park, Parking | entry signage | reduce to 8.33% | 3000 | 0500 | General Services | restroom N of Bayside Pkwy. |
| CV Bayside Park, Restroom | commode location | remount to provide 29" mm | 350 | | General Services | pedestrian entrance @ 12.6t |
| CV Bayside Park, Restroom | lavatory knee clearance | remount to 44" maximum | 2200 | 0626 | General Services | @ north restroom, now 23" |
| CV Bayside Park, Restroom | air blower height | remount to conform to code | 470 | | General Services | @ N rr currently 49" high |
| CV Bayside Park, Restroom | commode location | remove to code | 940 | | General Services | violation not rated, 5 t rr |
| CV Bayside Park, Restroom | lavatory knee clearance | replace with 17-19" height | 2000 | 0500 | General Services | @ S rr currently 16" high |
| CV Bayside Park, Restroom | commode height | remount to 34" and 29" | 200 | | General Services | @ S rr currently 36" and 27" |
| CV Bayside Park, Pier | flush clearance height | reduce to 34" maximum | 1300 | | General Services | 2 stations currently, 42" high |
| CV Bayside Park, Picnic area | picnic table clear floor space | 2 tables provide 30"x19" mm | | 0620 | General Services | |
| | | Subtotal | 10424 | | | |
| | | Planning & Contingency | 120474 | | | |
| | | TOTAL | 30,118 | | | |
| | | | 150,592  (estimate only) | | | |

ADA compliance tasks rev 5 da

EXHIBIT "B"

40940    EXHIBIT 14

**EXHIBIT 4**

1   Arlene Prater, Bar No 67191
    Shawn D Hagerty, Bar No. 182435
2   Alison D Alpert, Bar No 199257
    BEST BEST & KRIEGER LLP
3   402 WEST BROADWAY, 13ᵀᴴ FLOOR
    SAN DIEGO, CALIFORNIA 92101-3542
4   TELEPHONE (619) 525-1300
    TELECOPIER (619) 233-6118
5
    Ellen Faye Gross, Bar No 149127
6   Deputy Port Attorney
    SAN DIEGO UNIFIED PORT DISTRICT
7   POST OFFICE BOX 120488
    TELEPHONE (619) 686-6219
8   TELECOPIER (619) 686-6444

9   Attorneys for Defendant
    SAN DIEGO UNIFIED PORT DISTRICT
10

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13
    JOHN GALLAGHER, for himself and   | Case No.  98 CV 0615 J (JAH)
14  on behalf of others similarly     |
    situated,                          | THIRD OFFER OF JUDGMENT
15
                    Plaintiff,         | [FRCP 68]
16
         v.
17
    SAN DIEGO UNIFIED PORT DISTRICT
18  and DOES 1 through 20,
    Inclusive,
19
                    Defendant.
20

21
22
23
24
25
26
27
28

1    Defendant San Diego Unified Port District ("Port District")
2  hereby offers to allow entry of judgment pursuant to Rule 68 of the
3  Federal Rules of Civil Procedure in favor of Plaintiff John
4  Gallagher, for himself and on behalf of others similarly situated
5  ("Plaintiff"), as follows.

6

7    1.    The Port District shall designate Anchorage Area A-9 (the
8  "Cruiser Anchorage") as an alternative free, long-term anchorage
9  area for qualified individuals with a disability who, because of
10  that disability, are unable to use Anchorage Area A-8 and who seek
11  a reasonable accommodation in the Port District's anchorage and
12  mooring regulations. All regulations applicable to A-8 shall apply
13  to the use of the alternative Anchorage Area A-9.

14

15    2.    The Port District shall issue a permit to Plaintiff John
16  Gallagher to anchor in Anchorage Area A-9 as an alternative free,
17  long-term anchorage area, subject to all the regulations applicable
18  to A-8.    In addition, the Port District shall, on a ministerial
19  basis, issue up to three additional permits to anchor in A-9 to
20  persons who demonstrate that they are qualified individuals with a
21  disability who, because of that disability, are unable to use
22  Anchorage Area A-8 and who seek to use A-9 as a reasonable
23  accommodation to A-8. The Port District shall use its best efforts
24  to make the portion of A-9 that is closest to the dinghy dock at
25  the foot of Laurel Street (i.e., the eastern portion of A-9)
26  available to persons with disabilities who receive a permit to use
27  A-9.

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
402 WEST BROADWAY 13TH FLOOR
SAN DIEGO, CALIFORNIA 92101-3542

SDLIT\5XP\233765                           -2-

1    3.   The Port District shall also appoint the Executive
2  Director or his or her designee to consider and act upon any
3  written requests for a reasonable accommodation from persons with
4  a disability who seek an accommodation in the Port District's
5  anchorage and mooring regulations and who cannot be accommodated by
6  the use of A-9 or who are unable to obtain one of the four permits
7  to use A-9.  Prior to acting on the written request, the Executive
8  Director or his or her designee shall engage in a reasonable
9  accommodation interactive process with the applicant.  Thereafter,
10  the Executive Director or his or her designee shall make a
11  decision on the written request, taking into account all factors
12  that are permitted under the Americans with Disabilities Act,
13  including, without limitation, whether the request constitutes a
14  reasonable accommodation or a fundamental alteration in the Port
15  District's service, program or activity.  The financial impact of
16  any proposed accommodation shall also be assessed.  In acting upon
17  the written request, the Executive Director or his or her designee
18  may issue additional permits to anchor in A-9.

19

20    4.   Court costs and reasonable attorney fees incurred by
21  Plaintiff in connection with this "Anchoring Claim," as the

22

23

24

25

26

27

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
402 WEST BROADWAY, 13TH FLOOR
SAN DIEGO, CALIFORNIA 92101-3542

SDLIT\SAM\239785                    -3-

1  "Anchoring Claim" is defined in the May 2000 Settlement Agreement,

2  from May 1, 2000 to November 17, 2000.

3

4  Dated: _Nevenber 17, 2000_  BEST BEST & KRIEGER LLP

5

6  By: _____

7  Shawn D. Hagerty
   Attorneys for Defendant
8  SAN DIEGO UNIFIED PORT
   DISTRICT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

LAW OFFICES OF
BEST BEST & KRIEGER LLP
402 WEST BROADWAY, 13TH FLOOR
SAN DIEGO, CALIFORNIA 92101-3542

SDLIT\SAM\23978r