**Gallagher v. San Diego Unified Port District, et al.**
**Case No. 08-CV-0886 IEG (RBB)**

## INDEX TO EXHIBITS

| EXHIBIT | PAGE(S) | DOCUMENT |
|---|---|---|
| 1 | 1-8 | Agenda Sheet of the Board of Port Commissioner's meeting regarding §4.36, dated August 22, 2000 |
| 2 | 9-21 | Original Ordinance 2107 (§4.36), dated August 22, 2000 |
| 3 | 22-36 | Settlement Agreement and Release of Claims dated August 8, 2000 in *Gallagher v. San Diego Unified Port District*, 98-CV-0615 J (JAH) |
| 4 | 37-41 | Third Offer of Judgment in *Gallagher v. San Diego Unified Port District*, 98-CV-0615 J (JAH), dated 11/17/00 |
| 5 | 42-43 | Plaintiff's Acceptance of Third Offer of Judgment in *Gallagher v. San Diego Unified Port District*, 98-CV-0615 J (JAH), dated 11/27/00 |
| 6 | 44-57 | UPD Code §4.38, dated June 3, 2003 |
| 7 | 58-65 | Completion Report submitted by District to the United States Army Corps of Engineers, dated May 15, 2003 |
| 8 | 66-67 | Agenda Sheet of the Board of Port Commissioner's December 6, 2005 meeting regarding the A-8 Anchorage |
| 9 | 68-71 | Minutes from the December 6, 2005 Board of Commissioner's meeting |
| -- | 72-75 | *BLANK* |
| 10 | 76-84 | Agenda Sheet of the Board of Port Commissioner's May 2, 2006 meeting regarding the A-8 Anchorage |
| 11 | 85-91 | Minutes from the May 2, 2006 Board of Commissioner's meeting |
| 12 | 92-101 | Agenda Sheet of the Board of Port Commissioner's June 6, 2006 meeting regarding the A-8 Anchorage |
| 13 | 102-105 | Minutes from June 6, 2006 Board of Port Commissioner's meeting |
| 14 | 106-116 | Agenda Sheet of the Board of Port Commissioner's September 5, 2006 meeting regarding the A-8 Anchorage |
| 15 | 117-120 | Minutes from September 5, 2006 Board of Port Commissioner's meeting |
| 16 | 121-140 | Letter to John Gallagher from Ellen Gross Miles, dated July 6, 2007 |

**Gallagher v. San Diego Unified Port District, et al.**
**Case No. 08-CV-0886 IEG (RBB)**

## INDEX TO EXHIBITS (p. 2)

| EXHIBIT | PAGE(S) | DOCUMENT |
|---------|---------|----------|
| 17 | 141-159 | Order Granting Defendants' Motion to Dismiss Without Prejudice, dated 4/4/07, in *Renard v. San Diego Unified Port District*, 06-CV-2665 H (BLM) |
| 18 | 160-196 | Plaintiff's Notice of Motion and Motion to Enforce Judgment, with accompanying documents, dated November 1, 2002, in *Gallagher v. San Diego Unified Port District*, 98-CV-0615 J (JAH) |

**EXHIBIT 5**

1 | Amy B. Vandeveld, SBN 137904
LAW OFFICES OF AMY B. VANDEVELD
2 | 1850 Fifth Avenue
San Diego, California  92101
3 | Telephone:   (619) 231-8883
Facsimile:   (619) 231-8329
4 |
Attorney for JOHN GALLAGHER
5 |
6 |
7 |
8 |                IN THE UNITED STATES DISTRICT COURT
9 |                   SOUTHERN DISTRICT OF CALIFORNIA
10 | JOHN GALLAGHER,                          Case No.: 98 cv 0615  J
                                              (JAH)
11 |             Plaintiff,
                                              PLAINTIFF'S ACCEPTANCE
12 | vs.                                      OF THIRD OFFER OF
                                              JUDGMENT
13 | SAN DIEGO UNIFIED PORT DISTRICT and
DOES 1 THROUGH 20, Inclusive,                 [F.R.Civ.P. Rule 68]
14 |
             Defendants.
15 |

16 |     TO DEFENDANT SAN DIEGO UNIFIED PORT DISTRICT (hereinafter

17 | referred to as "PORT DISTRICT") AND TO ITS ATTORNEY OF RECORD:

18 |     **PLEASE TAKE NOTICE THAT** pursuant to Rule 68 of the Federal Rules

19 | of Civil Procedure, Plaintiff JOHN GALLAGHER hereby accepts PORT

20 | DISTRICT's Third Offer of Judgment which was mail served on November

21 | 17, 2000, and which is filed concurrently with this Acceptance.

22 |                            LAW OFFICES OF AMY B. VANDEVELD

23 | Dated: 11/27/00

24 |                            AMY B. VANDEVELD, Attorney
                               For Plaintiff
25 |

26 |

27 |

28 |

**EXHIBIT 6**

## SEC. 4.38 - REGULATION OF VESSELS – A-1 ANCHORAGE, A-5 ANCHORAGE AND A-9 ANCHORAGE

(a) Purpose:

California law (San Diego Unified Port District Act, Harbors and

Navigation Code, Appendix 1) requires the Board of Port Commissioners to

regulate and control the anchoring, mooring, towing and docking of vessels,

and to make and enforce all necessary rules and regulations governing the use

and control of navigable waters within the District. The purpose of this

Section of the San Diego Unified Port District Code is to implement that

responsibility within the A-1, A-5 and A-9 Anchorages.

(b) Definitions:

Certain words and phrases used herein are defined as follows, unless

the context requires a different meaning:

1.    A-1 Anchorage - In North San Diego Bay, the Shelter

Island (La Playa Cove) Yacht Basin Anchorage, the water

enclosed by a line beginning at latitude 32    °42'56.7"N.,

longitude 117 °13'47.1"W.; thence southwesterly to latitude

32°42'53.6"N., longitude 117°13'51.3"W.; thence northwesterly

to latitude 32°43'01.3"N., longitude 117 °13'59.1"W.; thence

northeasterly to latitude 32      °43'02.6"N., longitude

117°13'55.5"W.; thence southeasterly to latitude 32°42'59.8"N.,

SEC. 4.38 (cont.)

longitude 117°13'50.4"W.; thence southeasterly to the point of beginning.

2.    A-5 Anchorage - In Central San Diego Bay, the Glorietta Bay Anchorage, the water enclosed by a line beginning at latitude 32°40'42.2"N., longitude 117°10'03.1"W.; thence southwesterly to latitude 32°40'41.2"N., longitude 117°10'06.6"W.; thence northwesterly to latitude 32°40'46.2"N., longitude 117°13'15.6"W.; thence northeasterly to latitude 32°40'46.7"N., longitude 117°10'14.1"W.; thence southeasterly to the point of beginning.

3.    A-9 Anchorage - In North San Diego Bay, the "Cruiser" Anchorage, the water enclosed by a line beginning at latitude 32°43'35.9"N., longitude 117°11'06.2"W.;    thence southwesterly to latitude 32    °43'31.5"N.,    longitude 117°11'13.2"W.; thence southeasterly to latitude 32°43'28.9"N., longitude 117 °11'11.0"W.;    thence southeasterly to latitude 32°43'25.9"N., longitude 117°11'07.7"W.; thence northeasterly to latitude 32°43'34.8"N., longitude 117 °11'03.2"W.; thence northwesterly to the point of beginning.

SEC. 4.38 (cont.)

    4.   Anchorage – Any portion of the A-1 Anchorage, the A-5 Anchorage, or the A-9 Anchorage which has been designated by competent authority for the anchoring of vessels.

    5.   Anchoring – Attachment of a vessel to the bottom or the shore of San Diego Bay using an anchor and proper ground tackle.

    6.   Anchoring Permit – A document conferring the right to use an anchor in the A-1 Anchorage, the A-5 Anchorage, or the A-9 Anchorage for a prescribed period of time.

    7.   Applicant - Person (as defined in Section 0.03 of this Code) applying for an Anchoring Permit.

    8.   "Cruiser" Vessel - A cruiser vessel is a visiting vessel, not from the County of San Diego, traveling between ports on a voyage.

    9.   District - The San Diego Unified Port District.

    10.   Executive Director – Executive Director of the San Diego Unified Port District.

    11.   Permittee – Person (as defined in Section 0.03 of this Code) who has acquired an Anchoring Permit from the District to anchor in the A-1 Anchorage, the A-5 Anchorage, or the A-9 Anchorage.

Article 8 - Sec. 4-38 - Page 3 of 13

SEC. 4.38 (cont.)

      12.   Propulsion System – A system which is designed to propel a vessel through the water through the use of sail or mechanical power.

      13.   Seaworthy – Describes a vessel in good material condition which is not likely to sink or become a menace to navigation or a nuisance, and which is capable of getting underway and navigating safely using its own propulsion system.

      14.   Sewage – Human body waste, either treated or untreated.

      15.   Vessel – a watercraft designed to float upon the surface of a body of water for the purpose of transporting persons or property.

      16.   Waste – Sewage and all other waste or substances associated with human habitation; or of human or animal waste.

(c)  Anchoring Permits

      1.   No Person, including the owner, master, operator, caretaker, or person in possession of a vessel, shall anchor a vessel in the A-1 Anchorage, the A-5 Anchorage, or the A-9

SEC. 4.38 (cont.)

> Anchorage without first having secured an Anchoring Permit from the District in the form and manner provided therefor.
>
> 2. No Person, including the owner, master, operator, caretaker, or person in possession of a vessel, shall allow the vessel to remain anchored after an Anchoring Permit has expired.
>
> 3. For an Anchoring Permit to be issued for the A-9 Anchorage only, the following must be satisfied: verification of ownership, verification of registration; inspection for seaworthiness, sanitary facilities, waste containers, safety and fire suppression equipment and other safety and health-related equipment as may be prescribed by law.
>
> 4. Any vessel anchoring in the A-1 Anchorage, the A-5 Anchorage, or the A-9 Anchorage must have a propulsion system and operate under its own power.
>
> 5. Any vessel anchoring in the A-1 Anchorage, the A-5 Anchorage, or the A-9 Anchorage must have petroleum free bilges.
>
> 6. Any vessel anchoring in the A-1 Anchorage, the A-5 Anchorage, or the A-9 Anchorage must be seaworthy.

SEC. 4.38 (cont.)

> 7. No Person on board any vessel, on which
> construction was initiated on or afer January 30, 1975, in
> the A-1, A-5 or A-9 Anchorages shall use the toilet on board
> such vessel unless it is equipped with a suitable marine
> sanitation device or other United States Environmental
> Protection Agency or United States Coast Guard approved
> device for sewage retention or that is in proper working order.
> These requirements do not apply to portable devices which can
> be carried on or off the vessel.

(d) Anchoring Purposes Only

An Anchoring Permit shall authorize the holder thereof to anchor within the boundaries of the anchorage designated by the Anchoring Permit.

(e) Refusal to Issue Anchoring Permit

The District shall have the right at all times to refuse to issue or reissue an Anchoring Permit to any vessel if it determines that the vessel fails to meet any condition of this Section 4.38, as amended is not seaworthy, properly maintained, or presents a danger to public safety, District property, other vessels, or the property of another, or if the Permittee, or any other person using, possessing or controlling the vessel fails to comply with any Federal, State, or local laws, or any terms and conditions of the Anchoring Permit, or if the Permittee, or any other person using, possessing or

SEC. 4.38 (cont.)

controlling the vessel has any outstanding fees or charges owed to the District for damage to District property, towing and storage of a vessel, or failing to remove any derelict, beached, or sunken or partially sunken vessel, or causing the abandonment of a vessel.

(f) Revocation of Anchoring Permit

The District shall have the right at all times to revoke an Anchoring Permit to any vessel if it determines that the vessel fails to meet any condition of this Section 4.38, as amended is not seaworthy, properly maintained, or presents a danger to public safety, District property, other vessels, or the property of another, or if the Permittee, or any other person using, possessing or controlling the vessel fails to comply with any Federal, State, or local laws, or any terms and conditions of the Anchoring Permit, or if the Permittee, or any other person using, possessing or controlling the vessel has any outstanding fees or charges owed to the District for damage to District property, towing and storage of a vessel, or failing to remove any derelict, beached, or sunken or partially sunken vessel, or causing the abandonment of a vessel.

(g) Vessel Inspections

As a condition to receiving or maintaining any Anchoring Permit, the District may inspect any vessel anchored, moored or requesting

Article 8 - Sec. 4-38 - Page 7 of 13

SEC. 4.38 (cont.)

anchorage in the A-1, A-5 or A-9 Anchorages for proper sanitary, mechanical or other devices or equipment as may be prescribed by law.

    (h)   Permit Limitations

       1.   A-1 Anchorage - The A-1 Anchorage is a Seventy Two (72) hour anchorage open for weekend anchorage only. A-1 Anchoring Permits shall be issued for the period beginning each Friday at 9:00 AM and ending each Monday at 9:00 AM.

         a)   The Seventy Two (72) hour period shall be extended on holiday weekends when the holiday, as recognized and observed by the District, is observed on Mondays. The period of the Anchoring Permit shall be extended to Tuesday at 9:00 AM.

         b)   The Seventy Two (72) hour period may also be extended or altered for holidays that fall on other than Saturday through Monday, with the approval of the Chief of Harbor Police.

         c)   No person shall anchor a vessel, nor allow a vessel to remain anchored, in the A-1 Anchorage when the Anchoring Permit has expired.

       2.   A-5 Anchorage - The A-5 Anchorage is a Seventy Two (72) hour anchorage. A-5 Anchoring Permits shall be

SEC. 4.38 (cont.)

issued for a Seventy Two (72) hour period, Seven (7) days per week.

    a)   No person shall anchor a vessel, nor allow a vessel to remain anchored, in the A-5 Anchorage when the Anchoring Permit has expired.

3.   No more than Three (3) Seventy Two (72) hour Anchoring Permits may be issued to any person or vessel in any Thirty (30) day period. The Three (3) Anchoring Permits may be issued for the A-1 or A-5 Anchorage, or both, but are cumulative.

    a)   No Two (2) Seventy Two (72) hour Anchoring Permits shall be issued on consecutive calendar days for the same Anchorage.

4.   A-9 Anchorage - The A-9 Anchorage is designated for use by "Cruiser" Vessels as defined in Section (b)8, above, of this Section.

    a)   A Cruiser Vessel may not be registered or documented to an address in San Diego County and the owner/operator may not be a resident of San Diego County.

SEC. 4.38 (cont.)

b)    An A-9 Anchoring Permit will be issued for a Thirty (30) day period.

c)    No vessel shall be allowed to anchor for more than Ninety (90) days in any Three Hundred Sixty Five (365) day period, with the exception of vessels owned/operated by persons with disabilities as defined under the Americans with Disabilities Act (ADA).

d)    Persons with disabilities, whose disability precludes them from anchoring in the long term A-8 Anchorage, may be eligible for a Six (6) month Anchoring Permit to anchor in the A-9 Anchorage. This Anchoring Permit may be renewed every Six (6) months as long as the vessel meets the requirements to obtain an Anchoring Permit in the A-8 Anchorage as described in Section 4.36 et seq., of this Code.

SEC. 4.38 (cont.)

(i)     Prohibited Uses

It shall be unlawful to commit any of the following acts in or to use the

A-1 Anchorage, the A-5 Anchorage, or the A-9 Anchorage as follows:

1.     Business or commercial enterprise is prohibited.

2.     Commercial vessels and/or vessels for hire are prohibited from anchoring.

3.     Barges and floating docks are prohibited.

4.     Vessels more than Sixty Five (65) feet in length are prohibited from anchoring unless and until a special conditional use permit is obtained.

5.     An Anchoring Permit may be revoked for violation of any Federal, State, or local statute or ordinance.

6.     Any vessel anchored in violation of any provision of this Section is subject to removal and storage, by any Harbor Police Officer, pursuant to Section 8.25(a) of this Code. The registered and/or legal owner of the vessel may be liable for all costs related to the removal and storage of the vessel.

7.     Any person who violates any provision of this Section is guilty of a misdemeanor.

SEC. 4.38 (cont.)

(j)   Applicant's or Permittee's Right of Appeal

1.    If the District refuses to issue an Anchoring Permit, as described in Section (e), above, and Applicant for such Anchoring Permit believes he/she satisfies all conditions for the issuance of an Anchoring Permit, Applicant may appeal, in writing, to the Executive Director within Ten (10) calendar days of the date of refusal. The appeal should contain all reasons why Applicant believes he/she satisfies all conditions for the issuance of said Anchoring Permit.

2.    If the District revokes an Anchoring Permit as described in Section (f), above, Permittee may appeal such revocation, in writing, to the Executive Director within Ten (10) calendar days of the date of revocation. The appeal should contain all reasons why Permittee believes the revocation of the Anchoring Permit to be improper.

3.    The Executive Director or his designated representative shall respond within Ten (10) calendar days of the receipt of appeal, giving a written decision. The decision of the Executive Director or his designated representative shall be final.

(Enacted June 3, 2003, Ordinance 2250)

SEC. 4.38 (cont.)

(Amended February 12, 2008, Ordinance _____)

**EXHIBIT 7**



# SAN DIEGO UNIFIED PORT DISTRICT
## ENGINEERING DEPARTMENT
P.O. BOX 120488
SAN DIEGO, CA 92112-0488
(619) 686-6200

May 15, 2003

Ms. Shannon Bryant
Regulatory Branch
U.S. Army Corps of Engineers
16885 West Bernardo Drive, Suite 300A
San Diego, CA 92127

SUBJECT:    COMPLETION REPORT for Accessible Boat Docks, San Diego Bay
(File No. 200200537-SKB)

Dear Ms. Bryant:

The Port of San Diego is submitting herein, a project completion report as described in Special Conditions Item 12, for the subject project. The construction phase dates follow:

- Notice to Proceed was issued to the Contractor on July 23, 2002.
- In-water construction at Shelter Island (Site 1), Chula Vista Marina (Site 3) and Anchorage Area A-3 (Site 4) was completed prior to March 31, 2003. In-water construction Pepper Park (Site 2) was completed on April 15, 2003.
- Landside work is expected to be totally complete on or before May 15, 2003.

May 12, 2003 photo of accessible dock at Site 1, the Shelter Island boat launch facility, located on Shelter Island in San Diego, California.



May 12, 2003 photo of accessible dock at Site 2, the Pepper Park boat launch facility, located in National City, California.



May 12, 2003 photo of accessible dock at Site 3, the Chula Vista Marina boat launch facility, located in Chula Vista, California.



May 12, 2003 photo of accessible dock at Site 4, Anchorage Area A-3, located in San Diego, California.



The Port of San Diego complied with the Permit Conditions contained in the Letter of Permission (LOP) for the project. Comments follow:

- General Conditions Nos. 1 through 6.

    *All General Conditions of the LOP were followed.*

- Special Conditions:

    1. Prior to the onset of the authorized activity, the permittee shall implement a contractor education program to ensure that all onsite personnel are informed of the biologically sensitive resources associated with the project site and compliance with all the general and special conditions herein. The permittee shall provide all onsite personnel a copy of this permit, and require all onsite personnel read, understand, and agree to this authorization in its entirety prior to initiation of the authorized activity.

        *An onsite contractor educational meeting conducted by Eileen Maher, Assistant Director of Environmental Services (Port of San Diego) was held at the project site prior to the beginning of construction. Please see the attached acknowledgement signed by contractor personnel who attended the meeting.*

    2. The permittee shall post a copy of this permit onsite including all general and special conditions herein at all times during the authorized activity.

        *The General Contractor posted a copy of the ACOE permit at the job site*

3. The permittee is not authorized to conduct activities that shall cause any Corps jurisdictional waters of the U. S. to be filled or dredged.

   *No water filling or dredging of waters was caused by this project.*

4. The permittee shall allow Corps representatives to inspect the authorized activity at any time deemed necessary to ensure compliance with the general and special conditions herein.

   *The project site was open for inspection by Corps representatives at all times.*

5. The permittee shall not perform in-water work during the California least tern (*Sterna antillarum browni*) nesting season from April 1 to September 15. This condition is necessary to avoid potential impacts to this federally-listed-as-endangered species, which is known to utilize habitat in the vicinity of the proposed project.

   *(Note: Special Condition 5 was modified to allow in-water work until April 12, 2003 at Site 2). All in-water work for Sites 1, 3, and 4 was accomplished prior to March 31, 2003, outside the California least tern nesting season. All pile driving for Site 2 was completed prior to March 31, 2003.*

6. The permittee shall ensure that all vessel operators have a marine band radio, monitor Channel 16, and follow navigation rules (rules of the road at all times. The permitted shall not interfere with the public's right to free navigation on all navigable waters of the U.S.

   *Vessel operators had marine band radios and monitored Channel 16. The contractor kept his vessels clear of the waterways and did not obstruct other vessels.*

7. The permittee shall mark with buoys any underwater cables or anchoring systems for vessels involved with the project proposed herein, the locations of all eelgrass beds known to be onsite, and shall make every effort to keep project equipment outside of these areas.

   *The contractor marked all buoys and underwater cables. Eelgrass beds do not exist at or adjacent to the project sites.*

8. The permittee shall provide written notification to the Corps of Engineers (cc: USCG Marine Safety Office, Attn: Port Operations, San Diego, California 92101, Phone (619) 683-6492 a minimum of 10 days prior to the start of work as the anticipated beginning and ending dates of construction.

   *Notifications of beginning and ending dates of project construction were sent to the Corps of Engineers.*

9. The permittee shall have a qualified biologist perform a pre-construction eelgrass survey of the project area in accordance with the Southern California Eelgrass Mitigation policy (adopted by federal and state resource agencies dated July 31, 1991) and submit a report for Corps review (cc: NMFS and FWS) at least 15 days prior to commencement of in-bay construction in order to establish the location of all eelgrass in the vicinity of the project.

*An Essential Fish Habitat Assessment prepared by JNE & Associates, Inc. found that no eelgrass beds are located at or adjacent to the project sites.*

10. The permittee shall have a qualified biologist perform a post-construction eelgrass survey of the project area in accordance with Southern California Eelgrass Mitigation Policy (adopted by federal and state resource agencies dated July 31, 1991) and submit a report for Corps review (cc: NMFS and FWS) no more than 30 days after the completion of the in-bay work to determine if any eelgrass habitat was impacted by the authorized activity.

*A post-construction eelgrass survey was not performed.*

11. The permittee shall perform eelgrass mitigation if it is determined by the post-construction eelgrass survey that there was a loss of eelgrass habitat. This mitigation would be in accordance with and subject to the requirements of the Southern California Eelgrass Mitigation Policy (adopted by federal and state resource agencies dated July 31, 1991).

*Mitigation is not required.*

12. The permittee shall submit a report to the Corps no more than 30 days after completion of the proposed activity authorized herein that shall include dated photographs, and a summary of all project activities, which document compliance with all the general and special conditions herein.

*The project completion report is submitted herein.*

Please let us know if you need further information or if you have any questions regarding the proposed project.

Sincerely,

Javier Saunders
Assistant Director of Engineering-Design

jwt:jt

Attachments:
Onsite Training Acknowledgement
Certificate of Compliance

cc:
Eileen Maher
Jim Trefren

Army Corps of Engineers
Permit Authorization
200200537-SKB
Dinghy Dock Replacement
Shelter Island, Pepper Park, Chula Vista, A-3 Achorage

I, the undersigned contractor, subcontractor and foreperson, have received, read, understood and agreed to comply with the conditions of the above referenced Army Corps of Engineers Permit:

Name Steven Pettro/Signature _Steven Petroll_ Phone Number 505-372.2 Address

WILLIE SPENCER   _William Spencer_   619-227-5211   2181 Hollister St.

Mike Nowon   _signature_   253-4199

Paul Lemos   _signature_   575 4387

Jim Fuller   _signature_   707 678 2385



-8-

*LOS ANGELES DISTRICT*
*U.S. ARMY CORPS OF ENGINEERS*

# CERTIFICATION OF COMPLIANCE WITH DEPARTMENT OF THE ARMY PERMIT

**Permit Number:**      200200537-SKB

**Name of Permittee:**   Port of San Diego

**Date of Issuance:**    April 23, 2002

Upon completion of the activity authorized by this permit, sign this certification and return it to the following address:

> U.S. Army Corps of Engineers
> Regulatory Branch
> ATTN: CESPL-CO-R-200200537-SKB
> P.O Box 532711 Los Angeles, CA 90053-2325

Please note that your permitted activity is subject to a compliance inspection by an Army Corps of Engineers representative. If you fail to comply with this permit you may be subject to permit suspension, modification, or revocation.

I hereby certify that the work authorized by the above referenced permit has been completed in accordance with the terms and conditions of said permit.

Signature of Permittee   Asst. Director Oper.        Date   May 20 - 03

**EXHIBIT 8**

## *AGENDA ITEM 23*

# *SAN DIEGO UNIFIED PORT DISTRICT*

**DATE:** December 6, 2005

**SUBJECT: DISCUSSION OF ISSUES INVOLVING A-8 ANCHORAGE AND DIRECTION TO STAFF**

### EXECUTIVE SUMMARY:

Due to increased crime, environmental concerns, abandoned and derelict vessels, and cost to the District associated with the A-8 Anchorage, staff is seeking direction to raise public awareness in order to find solutions to these issues.

### RECOMMENDATION:

Discussion of issues involving the A-8 Anchorage and direction to staff.

### FISCAL IMPACT:

None.

### DISCUSSION:

The A-8 Anchorage is a free, long-term anchorage located in Central San Diego Bay. Since its creation by ordinance in August, 2000, there have been on-going issues concerning crime, adverse environmental impact, abandoned and derelict vessels, non-compliant vessels, and increased cost to the District in the form of the removal of vessels and enforcement of the ordinance. Staff is seeking direction from the Board to begin public outreach and awareness in an effort to create long-term solutions with the input of stakeholders and the public to maximize the value of the A-8 Anchorage as a public resource in San Diego Bay.

**Port Attorney's Comments:**

Not applicable.

**Environmental Review:**

Not applicable.

**Equal Opportunity Program:**

Not applicable.

### PREPARED BY:

Kirk M. Sanfilippo, Chief of Harbor Police
Ellen Gross Miles, Deputy Port Attorney
Pete Cruz, Director, General Services

ACTION TAKEN: 12/06/05 - Chief Kirk Sanfilippo, Harbor Police, made a
presentation to the Board.

**EXHIBIT 9**

On motion of Commissioner Vilaplana, seconded by Commissioner Cushman, the Board directed staff to proceed with the implementation of "A Decade of Public Art Visibility Campaign", by the following vote:  Yeas-Bixler, Cushman, Hall, Rios, Spane, Valderrama, Vilaplana; Nays-None; Excused-None; Absent-None; Abstained-None.

Chairman Hall announced that a member of the public had requested to speak regarding agenda item 17 (Authorization to Enter into Agreement with Urban Corps of San Diego ) but had not been given the opportunity at that time.  Chairman Hall invited Sam Duran, representing the Urban Corps of San Diego, to address the Board. Mr. Duran thanked the Board on behalf of Urban Corps, and discussed the programs that are supported through the District's partnership with Urban Corps.

## PRESENTATION OF UPDATE ON FISHERIES IN SAN DIEGO BAY

Agenda Item 21.  Chairman Hall announced that this item would be continued to a future Board meeting.

## DISCUSSION OF ISSUES INVOLVING A-8 ANCHORAGE

Agenda Item 23.  Chief Kirk Sanfilippo, Harbor Police, addressed the Board and discussed various issues involving A-8 Anchorage.  (Copies of the staff report and presentation are on file in the Office of the District Clerk.)

The following individuals addressed the Board with varying viewpoints regarding this matter:  Retired US Merchant Marine Captain Scott Barber, Shelby Britt, Kenneth Erickson, and Charles Ellery.

Commissioner discussion ensued.  Chairman Hall thanked the speakers for their input and stressed the importance of including stakeholders in working toward solutions to the problems with the anchorage.  Commissioner Rios expressed concern regarding the safety and environmental risks associated with a number of boats in the anchorage. Commissioner Rios thanked members of the public for their input and encouraged them to help the District find solutions to the problems being discussed.

Commissioner Cushman stressed that the problems do not lie with Mr. Britt and other tenants of the anchorage, but rather with people who abandon boats in the anchorage, including local marinas.  Commissioner Cushman stated that the District needs to bring orderly and safe conditions to the A-8 Anchorage.  Commissioner Cushman recommended directing Chief Sanfilippo, Harbor Police, to provide a report to

the Board on all mooring balls in the area, including charges, regulations and waiting lists, and if it is determined that more mooring balls are needed, then the boaters in A-8 Anchorage would be given the first opportunity to move to the mooring balls. Commissioner Cushman pointed out that the issue is not about revenue for the District, but about order and safety.

Commissioner Vilaplana concurred with Commissioner Cushman that safety is the District's top concern. Commissioner Vilaplana requested and received clarification regarding the legality of permanent residences on boats in the Bay. Ralph Hicks, Director, Land Use Planning, responded that it is legal for 10% of boats in each marina to be considered liveaboards. In response to further inquiry from Commissioner Vilaplana, Chief Sanfilippo stated that approximately 50% of the boats in A-8 Anchorage are liveaboards. Chairman Hall pointed out that the 10% guidelines were for marinas, and that different guidelines exist for anchorages and moorings. Chairman Hall requested that Chief Sanfilippo research the percentages of liveaboards that are allowed for anchorages and moorings. Chairman Hall stressed the need for a viable means of disposal of sewage and trash for the boaters in A-8 Anchorage, as well as regulations for boat maintenance.

Commissioner Spane stated that there seem to be two issues at hand: 1) the enforcement of existing regulations, which are most likely adequate for the people living in the anchorage, and 2) the boats that are being abandoned as derelict vessels by marinas in the area, which is the more costly issue for the District, and the most difficult to address. Commissioner Spane stated that the marinas should be made aware that the District will not tolerate such actions, and will aggressively enforce the laws prohibiting the abandonment of vessels in the anchorage.

Commissioner Bixler made the following recommendations: the boats in the anchorage should have a current California boating sticker and CF number; the District should explore requiring boaters in the anchorage to procure an insurance policy as suggested by Mr. Ellery during the public comment period for this item; boaters in A-8 Anchorage should report abandoned and derelict vessels to the District as soon as they are discovered; and the District should consider adopting an ordinance addressing the issue of visual blight. Commissioner Valderrama concurred with Commissioner Bixler's comments regarding soliciting input from the boaters in the process of working toward a solution to these issues.

Bruce Hollingsworth, Executive Director, summarized the direction to staff as follows: the District will commence a public process that will include stakeholder input,



specifically those in the A-8 Anchorage; the District needs to create a safe and orderly environment in the A-8 Anchorage; staff will prepare a report of all mooring operations in the Bay, including the charges, regulations and waiting lists; it should be emphasized that this issue is not about money or revenue; explore the possible need for more mooring balls, followed by a process to ensure that existing boaters in A-8 Anchorage are given the first opportunity to move to the mooring balls; examine rules regarding liveaboards and report to the Board; ensure a viable means of sewage and trash removal, in compliance with all local, State and Federal laws; ensure the integrity of the moorings; spotlight on marinas and individuals illegally abandoning vessels in the anchorage; ensure that every boat has a current State boating CF permit; enforcement of all existing rules and regulations; explore the possibility of requiring boaters to maintain a general liability insurance policy; seek help from the boating community; and consider a visual blight ordinance for the entire Bay.

## ACTION

### ADOPTION OF THE COMPASS STRATEGIC PLAN FY 2007-2011

Agenda Item 24.    On motion of Commissioner Vilaplana, seconded by Commissioner Cushman, the Board adopted RESOLUTION 2005-220 approving and adopting the COMPASS Strategic Plan FY 2007-2011, on file in the Office of the District Clerk as Document No. 49903, by the following vote: Yeas-Bixler, Cushman, Hall, Rios, Spane, Valderrama, Vilaplana; Nays-None; Excused-None; Absent-None; Abstained-None.

### AUTHORIZATION TO ENTER INTO AGREEMENT WITH GRACE BUILDING MAINTENANCE COMPANY, INC.

Agenda Item 25.  Commissioner Cushman moved to select and authorize an Agreement with Grace Building Maintenance Company (Grace), in lieu of staff's recommendation of Aztec Janitorial Service (Aztec).

Marci Aguilar Grismer, representing Aztec Janitorial Service, addressed the Board regarding this item.

Commissioner Spane requested and received clarification regarding staff's recommendation of Aztec.  Cesar Romero, Administrative Manager, General Services, responded that Grace's estimate for restroom maintenance was 44% less than Aztec, and this raised concerns for staff regarding the ability of Grace to provide adequate

000072 – 000075 BLANK