**Gallagher v. San Diego Unified Port District, et al.**
**Case No. 08-CV-0886 IEG (RBB)**

## INDEX TO EXHIBITS

| EXHIBIT | PAGE(S) | DOCUMENT |
|---|---|---|
| 1 | 1-8 | Agenda Sheet of the Board of Port Commissioner's meeting regarding §4.36, dated August 22, 2000 |
| 2 | 9-21 | Original Ordinance 2107 (§4.36), dated August 22, 2000 |
| 3 | 22-36 | Settlement Agreement and Release of Claims dated August 8, 2000 in *Gallagher v. San Diego Unified Port District*, 98-CV-0615 J (JAH) |
| 4 | 37-41 | Third Offer of Judgment in *Gallagher v. San Diego Unified Port District*, 98-CV-0615 J (JAH), dated 11/17/00 |
| 5 | 42-43 | Plaintiff's Acceptance of Third Offer of Judgment in *Gallagher v. San Diego Unified Port District*, 98-CV-0615 J (JAH), dated 11/27/00 |
| 6 | 44-57 | UPD Code §4.38, dated June 3, 2003 |
| 7 | 58-65 | Completion Report submitted by District to the United States Army Corps of Engineers, dated May 15, 2003 |
| 8 | 66-67 | Agenda Sheet of the Board of Port Commissioner's December 6, 2005 meeting regarding the A-8 Anchorage |
| 9 | 68-71 | Minutes from the December 6, 2005 Board of Commissioner's meeting |
| -- | 72-75 | *BLANK* |
| 10 | 76-84 | Agenda Sheet of the Board of Port Commissioner's May 2, 2006 meeting regarding the A-8 Anchorage |
| 11 | 85-91 | Minutes from the May 2, 2006 Board of Commissioner's meeting |
| 12 | 92-101 | Agenda Sheet of the Board of Port Commissioner's June 6, 2006 meeting regarding the A-8 Anchorage |
| 13 | 102-105 | Minutes from June 6, 2006 Board of Port Commissioner's meeting |
| 14 | 106-116 | Agenda Sheet of the Board of Port Commissioner's September 5, 2006 meeting regarding the A-8 Anchorage |
| 15 | 117-120 | Minutes from September 5, 2006 Board of Port Commissioner's meeting |
| 16 | 121-140 | Letter to John Gallagher from Ellen Gross Miles, dated July 6, 2007 |

**Gallagher v. San Diego Unified Port District, et al.**
**Case No. 08-CV-0886 IEG (RBB)**

## INDEX TO EXHIBITS (p. 2)

| EXHIBIT | PAGE(S) | DOCUMENT |
|---------|---------|----------|
| 17 | 141-159 | Order Granting Defendants' Motion to Dismiss Without Prejudice, dated 4/4/07, in *Renard v. San Diego Unified Port District*, 06-CV-2665 H (BLM) |
| 18 | 160-196 | Plaintiff's Notice of Motion and Motion to Enforce Judgment, with accompanying documents, dated November 1, 2002, in *Gallagher v. San Diego Unified Port District*, 98-CV-0615 J (JAH) |

**EXHIBIT 17**



1
2
3
4
5
6
7
8    **UNITED STATES DISTRICT COURT**

9    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    DANIEL RENARD,                          CASE NO. 06-CV-2665 H
                                                (BLM)
12                              Plaintiff,
                                                **ORDER GRANTING**
13        vs.                                   **DEFENDANTS' MOTION TO
                                                DISMISS WITHOUT**
14    SAN DIEGO UNIFIED PORT                    **PREJUDICE**
      DISTRICT, ET AL.,
15
                                Defendants.
16

17        On December 14, 2006, Plaintiff Daniel Renard, appearing pro se, filed his first

18    amended complaint ("FAC") against the San Diego Unified Port District, the Port

19    District Board of Commissioners, individual members of the Board of Commissioners,[1]

20    the San Diego Harbor Police, individual members of the Harbor Police,[2] and Does 1-10.

21    (Doc. No. 2.) On February 6, 2007, Defendants filed a motion to dismiss Plaintiff's

22

23        [1] Plaintiff names the following individual commissioners as Defendants in the
      caption of the FAC: Robert J. (Rocky) Splane, Sylvia C. Rios, Michael B. Bixler,
      Stephen P. Cushman, Mike Najera, Robert "Dukie" Valderrama, and Bruce B.
24    Hollingsworth. Additionally, Plaintiff references Victor A. Vilaplana as an individual
      Defendant in the text of the first amended complaint, (see FAC ¶ 7), but Plaintiff did
25    not name Mr. Vilaplana in the caption. Further, Plaintiff only served Vilaplana on
      March 29, 2007. (Doc. No. 75.)
26

27        [2] Plaintiff names the following individual officers as Defendants in the caption
      of the FAC: Chief Kirk M. Sanfilippo, Kim Fives, Officer Miles, Bay Control Officer
      Sergeant Micsclhtllis, Officer Tosada, and Sergeant Leeson. In the text of the FAC,
28    however, Plaintiff only specifically references Officer Miles, Sergeant Miscslhtllis,
      Officer Tosada, and Officer Fives. (See FAC ¶¶ 23, 29, & 30.)

- 1 -                                    06cv2665

1  complaint. (Doc. No. 55.) Plaintiff filed a response in opposition on March 26, 2007.
2  (Doc. No. 73.) Defendants filed a reply in support of their motion on April 2, 2007.
3  (Doc. No. 76.) Pursuant to its discretion under Civil Local Rule 7.1(d)(1), the Court
4  submits Defendants' motion for decision on the papers without oral argument, and the
5  Court cancels the hearing noticed for April 9, 2007. For the reasons set forth below, the
6  Court **GRANTS** Defendants' motion to dismiss without prejudice.   The Court
7  **GRANTS** Plaintiff 45 days to amend the complaint to attempt to cure the deficiencies
8  indicated below.

9                                        **Background**

10        In the FAC, Plaintiff alleges that he is an owner and operator of vessels in the
11  United States, and he states that he is disabled. (FAC ¶ 5.) Plaintiff alleges that he has
12  a permit for the A-9 Anchorage in San Diego Bay and that he lives there. (Id. ¶ 16.)
13  In the FAC, Plaintiff complains of several actions taken by Defendants. First, Plaintiff
14  asserts that the Port District Board of Commissioners' ("Board's") actions in regulating
15  various anchorages violate federal law. (FAC ¶¶ 15, 20.) Plaintiff alleges that federal
16  law preempts some of the local regulations. (Id. ¶ 22.) Further, he alleges that certain
17  regulations violate Article 10, Section 4 of the California Constitution. Next, Plaintiff
18  alleges that the San Diego Unified Port District ("Port District") and its officers have
19  violated various federal and state laws in ticketing him without cause. (Id. ¶ 23.)

20        Plaintiff also claims that, following his initiation of a lawsuit in 2003, he entered
21  into a settlement with the Port District, its commissioners, and employees in December
22  of 2003. (Id. ¶ 27.) In the agreement, the Port District provided him with a disabled
23  permit for the Port's A-9 Anchorage, and in return he agreed to dismiss the suit and to
24  comply with applicable laws. (Id., Ex. 10 at 5.) Plaintiff alleges that, on June 6, 2006,
25  the Board voted to eliminate the A-9 Anchorage accommodation for disabled boaters.
26  (Id. ¶ 26.) According to Plaintiff, on or about July 12, 2006, a notice was placed on his
27  vessel indicating that the vessel would be seized if it was not relocated from its
28  ///

-2-                                                                          06cv2665

1   anchorage within 72 hours. (Id. ¶ 28.) He asserts that the permitting program violates
2   the United States Constitution. (Id. ¶ 29.)

3         Plaintiff states that he received a letter on August 12, 2006 from the Chief of the
4   San Diego Harbor Police ("SDHP") noting that the Port District's commissioners had
5   voted to eliminate free, unlimited anchoring in the A-8 Anchorage. (Id. ¶ 30, Ex. 10 at
6   9.) The letter also states that, because the A-9 Anchorage was designated as an
7   alternative anchoring site for persons with disabilities who were unable to use A-8, and
8   because qualified disabled owners using A-9 are required to meet all the requirements
9   set forth in the A-8 Anchorage ordinance in order to obtain an A-9 permit, the changes
10  to the A-8 ordinance will also affect the A-8 disabled permit holders. (Id.) In response,
11  Plaintiff sent a letter stating that he wanted to remain in the A-9 Anchorage, and that the
12  changes proposed in the letter would violate the December 2003 settlement agreement.
13  (Id. ¶ 30, Ex. 10 at 10.) He received a response from the SDHP indicating that
14  Plaintiff's A-9 disabled anchorage permit requires him to comply with all requirements
15  in the A-8 Anchorage ordinance. (Id. ¶ 30, Ex. 10 at 11.) The letter indicates that,
16  when the free, long term A-8 Anchorage was eliminated, the A-9 Disabled Anchorage
17  was also eliminated. (Id.) Further, the letter indicates that A-9 Disabled Anchorage
18  permittees could join any A-8 Anchorage permittees who wish and are eligible to
19  obtain, for a monthly fee, a mooring ball in an existing mooring field in San Diego Bay.
20  (Id.) The letter also states that Plaintiff's settlement did not entitle him to permanent,
21  free, long term anchoring in the A-9 Anchorage. Rather, the obligation to accommodate
22  him arose from the existence of the A-8 Anchorage program. (Id., Ex. 10 at 12.)
23  Accordingly, the letter states that, when the A-8 Anchorage is eliminated, there will no
24  longer be any free, long term anchoring in the bay, and the A-9 Disabled Anchorage
25  will revert to its prior use. (Id.)

26        Plaintiff's complaint lists the following seven claims: (1) unlawful rulemaking
27  based on preemption and claims under 42 U.S.C. §§ 1983 and 1985; (2) unlawful
28  threatened seizure in violation of Article 1, section 13 of the California Constitution;

                                   - 3 -                                    06cv2665

1   (3) 42 U.S.C. § 1983 claim based on violations of the Fourth and Fifth Amendments
2   for "rescinding Disabled Person Anchorage"; (4) conspiracy to violate civil rights
3   pursuant to 42 U.S.C. § 1985 arising out of Defendants "maliciously citing my
4   vehicles"; (5) unlawful retaliation or coercion based on disability; (6) breach of contract
5   and fraud in violation of 28 U.S.C. § 1658; and (7) negligence and negligent hiring in
6   violation of 42 U.S.C. § 1986.

7                         **Legal Standard for Motion to Dismiss**

8       "A complaint should not be dismissed under Rule 12(b)(6) 'unless it appears
9   beyond doubt that the plaintiff can prove no set of facts in support of his claim which
10   would entitle him to relief.'" Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th
11   Cir. 1990) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Dismissal can be
12   based on the lack of a cognizable legal theory or the absence of sufficient facts alleged
13   under a cognizable legal theory." Id. In ruling on a Rule 12(b)(6) motion, the facts in
14   the complaint are taken as true and construed in the light most favorable to the
15   nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.
16   1996). Conclusory allegations of law, however, will not defeat a motion to dismiss for
17   failure to state a claim. See, e.g., Miranda v. Clark County, 279 F.3d 1102, 1106 (9th
18   Cir. 2002).

19       "Generally, a district court may not consider any material beyond the pleadings
20   in ruling on a Rule 12(b)(6) motion." Hal Roach Studios, Inc. v. Richard Feiner & Co.,
21   896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court may, however, consider the
22   contents of documents specifically referred to and incorporated into the complaint.
23   Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). Plaintiff attaches several exhibits
24   to the FAC.

25       In addition, a court ruling on a motion to dismiss may consider facts that are
26   subject to judicial notice. A district court may take judicial notice of matters of public
27   record, but cannot use this rule to take judicial notice of a fact that is subject to
28   "reasonable dispute" simply because it is contained within a pleading that has been filed

1  as a public record. Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001);

2  Biagro W. Sales Inc. v. Helna Chemical Co., 160 F. Supp. 2d 1136, 1140-41 (E.D. Cal.

3  2001) (matters of public record include "pleadings, orders and other papers filed with

4  the court"). Similarly, a court may take judicial notice of the *existence* of a court

5  opinion, but not "'the truth of the facts recited therein.'" Lee, 250 F.3d at 689 (quoting

6  S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410,

7  426-27 (3d Cir. 1999)).

8      In a § 1983 action where the plaintiff is proceeding pro se, the court must

9  construe his pleadings liberally. Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d

10 621, 623 (9th Cir. 1988) (citing Bretz v. Kelman, 773 F.2d 1026, 1027 (9th Cir. 1985)).

11 The court must grant leave to amend the complaint unless it is clear that amendment

12 could not cure the complaint's deficiencies. Id. (quoting Noll v. Carlson, 809 F.2d

13 1446, 1447 (9th Cir. 1987) (internal citations omitted)). The plaintiff must still allege

14 specific, overt acts which support his claims. See Jones v. Cmty. Redev. Agency, 733

15 F.2d 646, 649 (9th Cir. 1984); see also Ivey v. Bd. of Regents of the Univ. Of Alaska,

16 673 F.2d 266, 268 (9th Cir. 1982) (stating "[v]ague and conclusory allegations of

17 official participation in civil rights violations are not sufficient to withstand a motion

18 to dismiss."). Even though the plaintiff's claims are to be liberally construed, the court

19 must determine whether the pro se plaintiff can prove no set of facts which would

20 support his claim and entitle him to relief. Ortez v. Washington County, State of Or.,

21 88 F.3d 804, 807 (9th Cir. 1996) (citing Jones, 733 F.2d at 649).

22                                **Analysis**

23 **A.    Constitutional Claims Arising Out of Anchorage Regulations**

24      Defendants argue that Plaintiff's constitutional claims arising out of the Board's

25 vote to eliminate the A-8 Anchorage as a free, long term anchorage cannot succeed.

26 According to Defendants, boaters do not have a constitutional right to unregulated long

27 term anchorage in public waters. In his opposition, Plaintiff refers to the right to travel,

28 as set forth in Attorney General of New York v. Soto-Lopez, 476 U.S. 898 (1986).

- 5 -                                    06cv2665

1    Soto-Lopez, however, addressed whether a state preference in civil service employment
2    opportunities for veterans who lived in the state when they entered the service violated
3    the constitutional rights of veterans who lived outside the state when they entered the
4    service. The Court in Soto-Lopez examined whether the law at issue interfered with the
5    right to interstate travel and concluded that the preference for in state veterans violated
6    the right. Id. at 899 & 911. According to the Court, "[a] state law implicates the right
7    to travel when it actually deters such travel, when impeding travel is its primary
8    objective," or when it uses a classification that serves to penalize the exercise of the
9    right to travel. Id. at 903 (citations omitted). Plaintiff, however, has not explained how
10   the anchorage regulations in San Diego Bay implicate the right to interstate travel, and
11   he has not shown that the regulations classify based on state of residence. Rather, as
12   Defendants argue, Plaintiff can freely navigate San Diego Bay, and the regulations do
13   not create any distinctions between residents and non-residents.   Moreover, his
14   complaint does not contain allegations indicating that the regulations hinder interstate
15   travel.

16        Further, Plaintiff does not direct the Court to any authority establishing a
17   constitutional right to free long term anchorage. Rather, state and federal courts
18   recognize states' power to regulate anchorage and mooring. As the California courts
19   have explained, the "State of California holds title to the navigable waterways and the
20   land beneath them within its borders as trustee for the public." Graf v. San Diego
21   Unified Port Dist., 7 Cal. App. 4th 1224, 1228 (1992) (citing Colberg, Inc. v. California,
22   67 Cal. 2d 408, 416 (1967)). This public trust also includes tidelands. Id. "The state's
23   power to control, regulate and utilize the navigable waterways within terms of the trust
24   is absolute except as limited by the supervisory power of the federal government." Id.
25   at 1228-29 (citing Colberg, Inc., 67 Cal. 2d at 416). The state may delegate the power
26   to manage and control to local agencies. Id. at 1229 (citing City of Long Beach v.
27   Lisenby, 175 Cal. 575, 579 (1917)). Through the Port Act, the state of
28   ///

- 6 -                                    06cv2665

1  California has "delegated its authority to manage and control San Diego Bay to [the]
2  Port District." Id. at 1229.

3      Addressing various legal challenges, the Ninth Circuit, like other federal courts,
4  has recognized the power of states to regulate anchorage and mooring. See, e.g., Barber
5  v. Hawai'i, 42 F.3d 1185, 1194 (9th Cir. 1994). As the Court in Barber observed, the
6  Supreme Court has long recognized "that anchorage and mooring rules are best left to
7  the states in the absence of compelling government interests to the contrary." Barber,
8  42 F.3d at 1193.

9      Further, even after recent amendments, the Unified Port District Code provides
10  for free anchoring in other areas of San Diego Bay, albeit for limited time periods. See,
11  e.g., Unified Port District Code § 4.38 (free anchoring for limited time in A-1 and A-5
12  anchorages). There are also mooring fields available for rent that allow for long term
13  anchoring.

14      In short, in light of the absence of any authority setting forth a constitutional right
15  to free long term anchoring, Plaintiff's constitutional claims arising out of the Board's
16  elimination of free long term anchoring in A-8, and the corresponding elimination of
17  A-9 as an anchorage for disabled boaters unable to use the A-8 anchorage, do not
18  survive.

19  **B.    Unlawful Seizure Claims**

20      Plaintiff contends that Defendants threatened to seize his vessel by placing a 72
21  hour notice on it in violation of the California Constitution, art. I, § 13. That provision
22  of the California Constitution provides:

23      The right of the people to be secure in their persons, houses, papers, and
        effects against unreasonable seizures and searches may not be violated;
24      and a warrant may not issue except on probable cause, supported by oath
        or affirmation, particularly describing the place to be searched and the
25      persons and things to be seized.

26  Similarly, to the extent Plaintiff also brings a § 1983 claim alleging a violation of the
27  Fourth Amendment to the United States Constitution, that provision provides:

28      The right of the people to be secure in their persons, houses, papers, and
        effects, against unreasonable searches and seizures, shall not be violated,

1
2
and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

3    The Fourth Amendment applies to the states through the Fourteenth Amendment. See,
4    e.g., Miranda v. City of Cornelius, 429 U.S. 858, 864 (9th Cir. 2005).

5       A seizure of property occurs when there is some meaningful interference with an
6    individual's possessory interests in the property. Soldal v. Cook County, Illinios, 506
7    U.S. 56, 61 (1992) (citation and quotation omitted). Here, Plaintiff does not allege that
8    any seizure ever occurred. Rather, he states that Defendants merely posted a notice on
9    his vessel. Accordingly, because he has not alleged a seizure, his unlawful seizure
10   claims fail, whether alleged under the California Constitution or the Fourth Amendment
11   to the United States Constitution.

12      Moreover, regarding Plaintiff's allegations based on receipt of parking citations,
13   Defendants argue that receipt of parking citations does not amount to an unlawful
14   seizure. Plaintiff does not direct the Court to any contrary authority. Indeed, the Ninth
15   Circuit has explained that law enforcement may go beyond issuing citations, and may
16   actually impound cars, so long as the decision to impound is reasonable under the
17   Fourth Amendment. See, e.g., Miranda v. City of Cornelius, 429 U.S. 858, 864-65 (9th
18   Cir. 2005) (For example, "the violation of a traffic regulation justifies impoundment of
19   a vehicle if the driver is unable to remove the vehicle from a public location without
20   continuing its illegal operation."). Here, Plaintiff does not allege any seizure of his
21   vehicle as a result of the citation, but only that he received citations. Thus, Plaintiff has
22   not demonstrated any seizure of his property. Accordingly, absent any authority to the
23   contrary, Plaintiff's unconstitutional seizure claims premised on receipt of parking
24   citations fail.

25   **C.    Fifth Amendment Claims**

26      Plaintiff alleges at several points in his complaint that Defendants violated his
27   rights under the Fifth Amendment to the United States Constitution. Plaintiff seems to
28   contend that the Port District's ordinances regulating anchorage in San Diego Bay and

- 8 -                                              06cv2665

1   the Board's decision to eliminate free long term anchoring constitute a taking of his
2   property. Plaintiff alleges that the decision to eliminate free anchoring in the A-8
3   anchorage, and the corresponding elimination of the free anchoring in A-9 for disabled
4   boaters as a reasonable accommodation, violate his constitutional rights. In his
5   response, Plaintiff has not directed the Court to any authority demonstrating that he
6   holds a property interest in anchoring in the A-9 anchorage. Further, the exhibits he
7   attaches to the complaint demonstrate that Defendants have given Plaintiff significant
8   notice of the elimination of the free long term anchoring. (See, e.g., Ex. 10 (August 10,
9   2006 letter from Chief Sanfilippo to Plaintiff regarding the future of the A-8 and A-9
10   anchorages).)

11       Finally, although he does not explicitly raise this issue in his opposition, the fact
12   that Plaintiff obtained a permit for the A-9 disabled anchorage through settlement of a
13   lawsuit does not create a property right. Plaintiff entered into a settlement with the Port
14   District in December of 2003. (See FAC ¶ 27 & Ex. 10.) The settlement and letter
15   from a Port District attorney indicate that, in exchange for the issuance of an A-9
16   disabled anchorage permit, Plaintiff agreed to be subject to all requirements of the A-9
17   anchorage permit and also agreed to comply with all applicable federal, state and local
18   laws, including provisions of the San Diego Unified Port District Code. (Id., Ex. 10.)
19   Nothing in the settlement indicates that Plaintiff acquired rights beyond those of other
20   A-9 permit holders, or otherwise acquired a right to unlimited free long term anchorage
21   in San Diego Bay.

22       In sum, Plaintiff has not directed the Court to any authority indicating that he has
23   a property right in free long term anchorage, and his Fifth Amendment claims fail.

24   **D.**   **Discrimination on the Basis of Disability**

25       Plaintiff states that Defendants discriminated against him on the basis of
26   disability. In the FAC, Plaintiff cites to the Americans with Disabilities Act ("ADA").
27   Further, he cites to the Rehabilitation Act and various state laws. Plaintiff claims
28   Defendants discriminated against him when the Board voted to eliminate the free long

06cv2665

1  term A-8 anchorage, resulting in the elimination of the long term anchorage for disabled
2  boaters in the A-9 anchorage.

3      The Port District established the A-9 disabled anchorage after a state court found
4  the A-8 anchorage to be a service, program, or activity under Title II of the ADA, 42
5  U.S.C. § 12132. See San Diego Unified Port Dist. v. Gallagher, 62 Cal. App. 4th 501,
6  505 (1998). Thus, the Port District was required to provide reasonable accommodation
7  to disabled boaters unable to use the A-8 anchorage. As noted above, following a
8  lawsuit, Plaintiff entered into a settlement agreement with the Port District. (FAC, Ex.
9  10.) After showing he was disabled, he obtained a permit to anchor in the A-9 disabled
10 anchorage. (Id.)

11      The letters Plaintiff attaches to his complaint show that the Board voted to
12 eliminate the A-8 anchorage in June of 2006. (Id.) Further, he attaches a letter from
13 Chief Sanfilippo stating that the estimated time for transition would be twelve to
14 eighteen months, that the Board would vote on the proposed amendments to the Unified
15 Port District Code in September of 2006, and that, because A-9 was set up as a
16 reasonable accommodation for those unable to use A-9, any amendments would also
17 affect free long term anchoring in A-8 by disabled boaters. (Id.) The letter also
18 indicated that the Board approved installation of additional mooring buoys that would
19 be made available to current A-8 permit holders. (Id.)

20      "To prove that a public service or program violates Title II of the ADA, a
21 plaintiff must show '(1) he is a 'qualified individual with a disability'; (2) he was either
22 excluded from participation in or denied the benefits of a public entity's services,
23 programs, or activities or was otherwise discriminated against by the public entity; (3)
24 such exclusion, denial of benefits, or discrimination was by reason of his disability.'"
25 Townsend v. Quasim, 328 F.3d 511, 516 (9th Cir. 2003) (quoting Duvall v. County of
26 Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001). The Rehabilitation Act contains
27 provisions comparable to those in Title II. See 29 U.S.C. 794(a). "When a state's
28 policies discriminate against the disabled in violation of the ADA, the ADA's

- 10 -

06cv2665

1  regulations mandate reasonable modifications to those policies in order to avoid
2  discrimination on the basis of disability, at least when such modification would not
3  fundamentally alter the nature of the services provided by the state." Id. at 517.   The
4  ADA does not, however, require public entities "to create new programs that provide
5  heretofore unprovided services to assist disabled persons." Id. at 518.  Similarly, the
6  ADA only requires entities to make reasonable changes in existing policies to
7  accommodate individuals' disabilities. Id.  As the Second Circuit has explained, "the
8  ADA requires only that a particular service provided to some not be denied to disabled
9  people. . . .  [The state] cannot have unlawfully discriminated against appellees by
10  denying a benefit that it provides to no one." Rodriguez v. City of New York, 197 F.3d
11  611, 618 (2d Cir. 1999); see also Townsend, 328 F.3d at 517 (discussing Rodriguez
12  decision). Thus, the ADA simply requires that the services an entity actually provides
13  be administered without discrimination. Id.

14       Here, the Board voted to eliminate free long term anchoring in A-8. Thus, the
15  Port District is eliminating the service for which it originally created the reasonable
16  accommodation.  Because the Port District will not be providing free long term
17  anchoring to boaters in A-8, it need not reasonably accommodate disabled boaters by
18  providing them with free long term anchoring in A-9. See, e.g., id. (the ADA only
19  requires that services actually provided be administered without discrimination).
20  Plaintiff has not directed the Court to any allegations showing discrimination on the
21  basis of disability arising out of the Port District's decision to eliminate all free long
22  term anchoring. Further, he has not directed the Court to any authority for his position
23  that elimination of free long term anchoring in A-8 and A-9 amounts to discrimination
24  on the basis of disability.

25  **E.**   **California Civil Code § 52.1**

26       Plaintiff cites to California Civil Code § 52.1 at several points in his opposition.
27  This provision provides that, if a person interferes, or attempts to interfere, by threats,
28  intimidation, or coercion, with the exercise or enjoyment of federal or California

- 11 -             06cv2665

1  constitutional or statutory rights, that individual may sue for damages. See Cal. Civ.

2  Code §§ 52.1(a) & (b). Further, Plaintiff cites to Venegas v. County of Los Angeles,

3  32 Cal. 4th 820 (2004), in support of his opposition. In Venegas, the California

4  Supreme Court clarified that § 52.1 is not limited to hate crimes, and it does not require

5  any showing of an actual intent to discriminate to state a claim. 32 Cal. 4th at 841. The

6  court also observed that § 52.1 "does not extend to all ordinary tort actions because its

7  provisions are limited to threats, intimidation, or coercion that interferes with a

8  constitutional or statutory right." Id. at 843. Moreover, the allegations in Venegas

9  involved seizure and impoundment of a car, false imprisonment, and coercion by

10  officers to obtain authorization to search a home. Id. at 827-828. Thus, Plaintiff's

11  allegations here are not similar to those in Venegas. Further, Plaintiff does not direct

12  the Court to any allegations in the complaint that purportedly state a claim under § 52.1.

13  Accordingly, to the extent Plaintiff seeks to state a claim under California Civil Code

14  § 52.1, that claim fails.

15  **F. California Government Code § 815.6**

16      In his response, Plaintiff also cites to California Government Code § 815.6. This

17  code section provides:

18      Where a public entity is under a mandatory duty imposed by an enactment
    that is designed to protect against the risk of a particular kind of injury, the
19      public entity is liable for an injury of that kind proximately caused by its
    failure to discharge the duty unless the public entity establishes that it
20      exercised reasonable diligence to discharge the duty.

21  Cal. Gov't Code § 815.6. Thus, § 815.6 creates liability where a public entity fails to

22  discharge a mandatory duty. Plaintiff refers to various federal regulations, and

23  apparently argues that federal law preempts the Port District's regulations.

24      As discussed in the Court's order denying injunctive relief, federal law does not

25  preempt the Port District's regulation of anchoring in San Diego Bay. "[W]hen a

26  State's exercise of its police power is challenged under the Supremacy Clause, 'we start

27  with the assumption that the historic police powers of the States were not to be

28  superseded by the Federal Act unless that was the clear and manifest purpose of

- 12 -

1  Congress.'" Beveridge v. Lewis, 939 F.2d 859, 862 (9th Cir. 1991) (quoting Ray v.
2  Atlantic Richfield Co., 435 U.S. 151, 157 (1978)). Preemption can occur in three ways.
3  First, preemption occurs if "Congress has expressly stated that federal law preempts
4  state or local law on a particular topic." Id. at 862 n.1. Second, states are preempted
5  where Congress has implicitly occupied a field either through pervasive regulations
6  leaving no room for states to supplement "or through the federally sensitive nature of
7  the particular subject area (e.g., foreign affairs)." Id. at 862. Third, preemption occurs
8  if a state law actually conflicts with federal law. Id.

9        Congress has not expressly stated that anchorage and mooring are preempted by
10  federal law. Looking at whether Congress has implicitly preempted state regulation of
11  this area, the Ninth Circuit has held that anchorage and mooring are not federally
12  sensitive areas. Barber, 42 F.3d at 1194. Moreover, the Ninth Circuit has found that
13  the federal government has not so pervasively regulated in the area so as to implicitly
14  leave no room for state regulation. See id. at 1190, 1193. As the court stated, "[f]ederal
15  laws and regulations have not occupied the field of anchorage and mooring." Id. at
16  1193; see also Beveridge, 939 F.2d at 864 ("[T]here is no reason to believe that
17  Congress intended to occupy the field in the area of mooring . . . ."). Rather, the Ninth
18  Circuit noted "the Supreme Court's longstanding recognition that anchorage and
19  mooring rules are best left to the states in the absence of compelling government
20  interests to the contrary." Barber, 42 F.3d at 1193.

21        In short, the Port District is not preempted from regulating anchoring in San
22  Diego Bay, and Plaintiff has not directed the Court to any mandatory duties that
23  Defendants allegedly breached that might give rise to liability under California
24  Government Code § 815.6. Accordingly, to the extent Plaintiff attempts to state a claim
25  under § 815.6, that claim fails.

26  G.    **Qualified Immunity as to Individual Defendants**

27        Under the doctrine of qualified immunity, "government officials performing
28  discretionary functions generally are shielded from liability for civil damages insofar

-13-                                                06cv2665

1   as their conduct does not violate clearly established statutory or constitutional rights of
2   which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800,
3   818 (1982). To establish qualified immunity, a court must first determine whether
4   "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged
5   show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S
6   194, 201 (2001). If a violation of a constitutional right is established, the next question
7   is "whether the right was clearly established." Id. That is, "whether it would be clear
8   to a reasonable officer that his conduct was lawful in the situation he confronted." Id.
9   at 202. The United States Supreme Court has noted that a ruling on immunity should
10  be made early in the proceedings. Id. at 200. When there are disputed issues of
11  material fact, however, a jury must resolve the factual disputes. Ortega v. O'Connor,
12  146 F.3d 1149, 1154 (9th Cir. 1998); Act Up!/Portland v. Bagley, 988 F.2d 868, 873
13  (9th Cir. 1993).

14      As discussed above, Plaintiff has failed to state a claim that any of the individual
15  Defendants violated a constitutional right. Absent a violation of a constitutional right,
16  "there is no necessity for further inquiries concerning qualified immunity." Saucier,
17  533 U.S. at 201. Accordingly, Plaintiff's constitutional claims against the individual
18  Defendants also fail on qualified immunity grounds.

19  **H.    Conspiracy to Violate Civil Rights**

20      Plaintiff also contends at various points in the FAC that the individual
21  Defendants conspired to violate his constitutional rights. In the absence of an
22  actionable constitutional violation, a conspiracy to violate constitutional rights cannot
23  exist as a matter of law. See, e.g., Woodrum v. Woodward County, 866 F.2d 1121,
24  1126 (9th Cir. 1989). Accordingly, because Plaintiff's constitutional claims fail, his
25  claims based on conspiracy to violate constitutional rights also fail. Similarly, to the
26  extent Plaintiff attempts to state a claim under 42 U.S.C § 1986 for failure to prevent
27  a conspiracy to violate civil rights, that claim fails for the same reason.
28  / / /

- 14 -

06cv2665

**I.    General Negligence Claim Against the Port District**

In his seventh claim, Plaintiff attempts to state a "general negligence" claim against all Defendants. Defendants argue that Plaintiff cannot state a general negligence claim against the Port District, as special rules of liability apply to public entities.

California Government Code § 815 limits the grounds upon which a public entity may be held liable:

> Except as otherwise provided by statute:
> (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
> (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person.

As the Senate Legislative Comment explains, "[t]his section abolishes all common law or judicially declared forms of liability for public entities . . . . In the absence of a constitutional requirement, public entities may be held liable only if a statute (not including a charter provision, ordinance or regulation) is found declaring them to be liable." Cal. Gov't Code § 815, Senate Legis. Comment. Accordingly, any causes of action brought against a public entity must be grounded in a statute. Absent such a basis, the public entity is not liable in tort. See generally Peterson v. San Francisco Cmty. College Dist., 36 Cal. 3d 799, 809 (1984). Accordingly, the Port District may not be held liable on any general negligence theory, and Plaintiff's seventh claim fails as to the Port District.

## Conclusion

For the reasons set forth above, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's complaint without prejudice.[3] Plaintiff may attempt to amend his complaint to cure the deficiencies noted above within 45 days of the date of this order. The Court also directs Plaintiff to Rule 10 of the Federal Rules of Civil Procedure,

---

[3] The Court notes that Defendants did not address Plaintiff's claims for breach of contract, fraud, and negligence as to Defendants other than the Port District.

1  which requires that averments be made in numbered paragraphs, the contents of which

2  should be limited to a statement of a single set of circumstances. Fed. R. Civ. P. 10(b).

3  Further, Rule 10 requires that each claim founded upon a separate transaction or

4  occurrence shall be stated in a separate count whenever a separation makes for a clear

5  presentation of the matters set forth. Id.

6      IT IS SO ORDERED.

7  DATED: April 4, 2007

8
9                                   MARILYN L. HUFF, District Judge
                                    UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  Copies To:

25  Daniel Renard, pro se
    P.O. Box 6301
26  San Diego, CA 92166

27  All Counsel of Record

28

- 16 -                                           06cv2665

**Connie Bellatti - Activity in Case 3:06-cv-02665-H-BLM Renard v. San Diego Unified Port District et al "Order on Motion to Dismiss"**

| | |
|---|---|
| **From:** | <efile_information@casd.uscourts.gov> |
| **To:** | <casd.uscourts.gov@casd.uscourts.gov> |
| **Date:** | 4/4/2007 1:51 PM |
| **Subject:** | Activity in Case 3:06-cv-02665-H-BLM Renard v. San Diego Unified Port District et al "Order on Motion to Dismiss" |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. District Court

### Southern District of California

Notice of Electronic Filing

The following transaction was received from agp, entered on 4/4/2007 at 1:48 PM PDT and filed on 4/4/2007
**Case Name:**     Renard v. San Diego Unified Port District et al
**Case Number:**     3:06-cv-2665
**Filer:**
**WARNING: CASE CLOSED on 04/04/2007**
**Document Number:** 77

**Docket Text:**
ORDER granting [55] Motion to Dismiss without prejudice. Signed by Judge Marilyn L. Huff on 04/04/07. (agp)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=4/4/2007] [FileNumber=1878126-0]
[40aae56a09760b8a44b17fce687e4a0fddd12242e55f24de7f095a7ca5f688c41901
05f2e597b1f86d95409408077e35adc9ed090ae3d63dfe2e84930c468e98]]

**3:06-cv-2665 Notice will be electronically mailed to:**

William D Mcminn     bmcminn@portofsandiego.org, cbellatt@portofsandiego.org; climbric@portofsandiego.org

Ellen Gross Miles     egross@portofsandiego.org, cbellatt@portofsandiego.org; climbric@portofsandiego.org

**3:06-cv-2665 Notice will be delivered by other means to:**

Daniel Renard
PO Box 6301
San Diego, CA 92166

**EXHIBIT 18**

1 | Amy B. Vandeveld, SBN 137904
LAW OFFICES OF AMY B. VANDEVELD
2 | 1850 Fifth Avenue
San Diego, California  92101
3 | Telephone:  (619) 231-8883
Facsimile:  (619) 231-8329
4 |
Attorney for JOHN GALLAGHER
5 |
6 |
7 |



8 | IN THE UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | JOHN GALLAGHER,                          Case No.: 98 cv 0615  J
                                                    (JAH)
11 |           Plaintiff,
                                              PLAINTIFF'S NOTICE OF
12 | vs.                                      MOTION AND MOTION TO
                                              ENFORCE JUDGMENT
13 | SAN DIEGO UNIFIED PORT DISTRICT and
DOES 1 THROUGH 20, Inclusive,               Date:   12/02/02
14 |                                          Time:   10:30 a.m.
          Defendants.                        Courtroom: 12
15 |                                          Judge: The Honorable
                                                    Napoleon A. Jones
16 |

17 | **TO DEFENDANT AND TO ITS ATTORNEY OF RECORD IN THIS ACTION:**

18 | **YOU ARE HEREBY NOTIFIED** that on December 2, 2002 at 10:30 a.m.

19 | or as soon as the matter may be heard, the Plaintiff John Gallagher

20 | will move to enforce the Judgment entered on December 29, 2000. The

21 | motion is based upon this Notice, the accompanying Memorandum of

22 | Points and Authorities, and the Exhibits thereto, the Declaration of

23 | Amy B. Vandeveld, and upon such other matters as may be presented at

24 | or before the hearing of this motion.

25 |                                     LAW OFFICES OF AMY B. VANDEVELD

26 |

27 | Dated:   11/1/02

28 |                              By:  Amy B. Vandeveld, Attorney
                                      for Plaintiff

PROOF OF SERVICE

[F.R.Civ.P 6(e)]

I, the undersigned, declare that: I am over the age of Eighteen (18) years and not a party to the instant case; and my business address is 3776 Fourth Avenue, San Diego, CA 92101.

On this date, I caused to be served the following document(s):

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ENFORCE JUDGMENT; PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHOURITIES IN SUPPORT OF MOTION TO ENFORCE JUDGMENT; DECLARATION OF JOHN GALLAGHER IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE JUDGMENT DECLARATION OF ABV IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE JUDGMENT; NOTICE OF LODGMENT**

on the party(ies) in this action by placing a true copy thereof in sealed envelopes addressed as stated on the Mailing List attached hereto

**BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the US Postal Service on the same day with postage thereon fully prepaid, at San Diego, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit

**BY PERSONAL SERVICE:** I caused such documents to be delivered by hand to the offices of the addressee.

**BY FACSIMILE TRANSMISSION:** From Fax No. (619) 233-6119 to the facsimile number(s) listed on this proof of service. The facsimile machine I used complied with Rule 2003(3), and no error was reported by the machine.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed On: __11/1/02__

By: __James Baker__

00:11:22

SERVICE LIST
(EXHIBIT "A")

Shawn Haggerty, Esq.
BEST BEST & KRIEGER LLP
402 West Broadway, 13th Floor
San Diego, CA 92101
Facsimile No.:(619) 233-6118
Counsel for Defendant SAN DIEGO UNIFIED PORT DISTRICT

<u>Gallagher v. San Diego Unified Port District et.al.</u>
USDC Case No: 98 cv 0615 J  (JAH)

1 | Amy B. Vandeveld, SBN 137904
LAW OFFICES OF AMY B. VANDEVELD
2 | 1850 Fifth Avenue
San Diego, California 92101
3 | Telephone: (619) 231-8883
Facsimile: (619) 231-8329
4 |
Attorney for JOHN GALLAGHER
5 |
6 |
7 |



**FILED**

NOV 1 2002

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPU

8 | IN THE UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | JOHN GALLAGHER,

11 | Plaintiff,

12 | vs.

13 | SAN DIEGO UNIFIED PORT DISTRICT and
DOES 1 THROUGH 20, Inclusive,

14 |

15 | Defendants.

16 |

17 |

Case No.: 98 cv 0615 J
(JAH)

PLAINTIFF'S POINTS AND
AUTHORITIES IN SUPPORT
OF MOTION TO ENFORCE
JUDGMENT

Date:    12/02/02
Time:    10:30 a.m.
Courtroom: 12
Judge: The Honorable
Napoleon A. Jones

18 | **I.**

19 | **BACKGROUND**

20 | **A.    The Basis of Plaintiff's Complaint.**

21 | Plaintiff JOHN GALLAGHER (hereinafter "Mr. Gallagher") is a

22 | post-polio survivor. He has a significantly atrophied left leg and

23 | must use a brace. He walks with a significant limp because his left

24 | leg is substantially shorter than his right leg. Because of these

25 | physical conditions, he has difficulty maintaining his balance in

26 | rough waters, which effects his ability to transfer from his dinghy

27 | to his boat. While he is unable to make such difficult transfers,

28 | he is still able to navigate a boat, because he can sit while    00 0 0 64

Printed on Recycled Paper

1 | operating the vessel.  (Please see Declaration of John Gallagher,
2 | par. 2.)

3 | When transferring from his boat to his dinghy, or vice versa,
4 | he must negotiate a difference in gunnel height of about three to
5 | five feet, depending on the type of boat.  This requires that Mr.
6 | Gallagher attempt to raise himself from an unstable dinghy to a
7 | level three to five feet higher than the dinghy.  Depending upon the
8 | height of the boats, he may also be required to negotiate a vertical
9 | ladder.  This is a difficult task in calm waters, but is impossible
10 | in rough waters. (Gallagher Declaration, par. 3.)

11 | Further, like all sailors without boat slips, Mr. Gallagher
12 | must use a dinghy to transfer from his boat to shore.  His post-
13 | polio condition has effected his muscle strength, however, and he is
14 | unable to row his dinghy for more than about 150 yards before he
15 | becomes too fatigued to continue.  (Gallagher Declaration, par. 4.)

16 | When the San Diego Unified Port District (hereinafter "the
17 | PORT") attempted to evict Mr. Gallagher from Glorietta Bay near
18 | Coronado, where he had anchored free of charge for more than three
19 | years, he filed an action under Title II of the Americans with
20 | Disabilities Act.  Mr. Gallagher alleged that he was denied full and
21 | equal access to the programs, services and activities of the PORT
22 | because he was unable to utilize the only long-term, free anchoring
23 | location.  These claims were later referred to by the parties as
24 | "the Anchoring Claims." (Gallagher Declaration, par. 5.)

25 | Mr. Gallagher also asserted that the PORT failed to remove
26 | architectural barriers prior to January 26, 1995, as required by 28
27 | CFR Section 35.150(c).  He alleged that the PORT failed to properly
28 | perform a self-evaluation and/or to develop a proper transition

1  plan.   These architectural and self-evaluation claims were resolved

2  by way of a written Settlement Agreement on May 30, 2000.

3  **B.    Resolution of the Anchoring Claims**.

4       The parties continued to litigate the Anchoring Claims,

5  however, which were not resolved until November of 2000, when

6  Defendant issued an offer to compromise pursuant to Federal Rules of

7  Civil Procedure, Rule 68.  Mr. Gallagher accepted the Third Offer of

8  Judgment and formally filed the Notice of Acceptance on November 27,

9  2000. (Please see Exhibit "A", lodged herewith.)

10      In the Third Offer of Judgment, The PORT offered a permit to

11  Mr. Gallagher to anchor in Anchorage A-9, long-term, free of charge,

12  consistent with the anchorage terms at A-8.  Most importantly,

13  however, The PORT also offered to provide an interactive process by

14  which a person with disability could request a reasonable

15  accommodation in the event the A-9 anchorage was not useable by him

16  or her.  (Please see paragraph 3 of the Third Offer of Judgment,

17  Exhibit "A").

18  **C.    A-9 Anchorage Is Not Useable by Plaintiff**.

19      Mr. Gallagher has asserted throughout this litigation that A-9

20  is not useable by him because, among other factors, the wind and

21  weather conditions at the anchorage are extremely adverse and the

22  closest dinghy dock (actually located in another Anchorage location)

23  is inaccessible because the ramp is too steep.

24      Mr. Gallagher also contended that the only area of A-9 which is

25  arguably protected from the elements is more than 1400 yards from

26  the closest dinghy dock.  This distance is almost as far as the

27  distance between the A-8 Anchorage and it's adjacent dinghy dock,

28  which Mr. Gallagher argued throughout the litigation was

1  inaccessible to him.  Further, unlike A-8, A-9 does not have an
2  adjacent boat launch ramp that would allow Mr. Gallagher to take his
3  dinghy out of the water on a daily basis.

4  **D.   Acceptance of the Defendant's Offer of Judgment.**

5       Because the Third Offer of Judgment contained a provision which
6  provided reasonable accommodations to those individuals with
7  disabilities who could not use A-9, Mr. Gallagher felt compelled to
8  accept the Offer because it was unlikely that he would recover
9  greater relief if the matter went to trial.  That is, the PORT
10  offered an alternative location for long-term free anchoring (the A-
11  9 Anchorage), other than A-8, and also offered to provide reasonable
12  accommodations to anyone who could not use the alternative location.
13  (Declaration of John Gallagher, par. 6.)

14  **E.   Mr. Gallagher's Request for a Reasonable Accommodation.**

15       Following the entry of judgment in his favor, Mr. Gallagher
16  attempted to obtain a disabled boating permit, but was unable to do
17  so for at least three and one-half months because the PORT had not
18  instituted a procedure by which such an application could be made.
19  Finally, he was directed to submit the standard application for an
20  A-9 permit, which included the timing restrictions that were not
21  supposed to apply to people with disabilities.  He explained to the
22  person providing the application that he could not use the A-9
23  Anchorage because of his disability.  Mr. Gallagher was then
24  directed to provide a letter to the Executive Director of the PORT
25  regarding his request for another anchoring location.  He submitted
26  the letter and the Application in mid-April of 2001.  (Gallagher
27  Declaration, par. 7.)

28       Mr. Gallagher was finally granted a meeting with PORT officials

1 | on June 5, 2001, regarding his request for a permit to anchor long-
2 | term, free of charge in a location other than A-9. In that meeting,
3 | PORT officials inquired whether he would be willing to anchor in A-9
4 | if a "break" were installed to protect against adverse sea
5 | conditions and if an accessible ramp were installed. Mr. Gallagher
6 | said that he would consider that option. (Gallagher Declaration,
7 | par. 8.)

8 | **F.   The PORT's Initial Offer of Accommodation**.

9 |       In fact, following that initial meeting, Ralph Hicks, Director
10 | of Land Use Planning for the PORT District, contacted Mr.
11 | Gallagher's attorney and advised her that Mr. Gallagher could use
12 | the Glorietta Bay Anchorage, A-5, until modifications were made to
13 | the A-9 Anchorage. (See Declaration of Amy B. Vandeveld, par. 4.)

14 | **G.   The PORT's Revocation of It's Offer**.

15 |       The PORT ultimately reneged on its offer to provide reasonable
16 | accommodations and has since taken the position that Mr. Gallagher
17 | may only anchor in the A-9 Anchorage, despite his assertions that
18 | the A-9 Anchorage is unuseable by him. The PORT has offered the A-9
19 | Anchorage on a "take it or leave it" basis. The PORT has never
20 | offered Mr. Gallagher a reasonable accommodation for long-term, free
21 | anchorage, despite his repeated requests. (Gallagher Declaration,
22 | par. 9.)

23 | **H.   The A-9 Anchorage is not Useable by Mr. Gallagher**.

24 |       Mr. Gallagher is unable to use A-9 for the same reasons that he
25 | is unable to use the A-8 Anchorage. The anchorage location is too
26 | far from the closest dinghy dock, the closest dinghy dock is too
27 | steep, the weather and sea conditions are too extreme and there is
28 | no boat launching ramp at the A-9 Anchorage. (Gallagher

1 | Declaration, par. 10.)

2 |       **1. The PORT's Own Evaluation Establishes**

3 |          **A-9 is an Unuseable Site.**

4 |     In fact, the PORT itself has evaluated the A-9 Anchorage and

5 | has determined that the A-9 Anchorage has the third worst climate

6 | conditions of the locations evaluated. The PORT's evaluation is set

7 | forth in the "San Diego Unified Port District Boat Dock Evaluation",

8 | lodged herein as Exhibit "B". This Evaluation was provided by the

9 | PORT District to it's ADA Citizens Advisory Committee, of which Mr.

10 | Gallagher was a member. (Gallagher Declaration, par. 11.)

11 |     The PORT determined that the A-8 anchorage had the most adverse

12 | climate conditions. In fact, in it's evaluation, the PORT gave the

13 | A-8 Anchorage a score of only "40" for "Climate Conditions". It

14 | described the A-8 conditions as the "Worst." (See Exhibit B, page

15 | 15). The A-9 Anchorage was given only a rating of "80" for "Climate

16 | Conditions" and was described as "Rough: 4-5' swells." (See Exhibit

17 | B, page 16).

18 |     The PORT determined that "Dock access" for the A-9 Anchorage is

19 | very poor and it was given a rating of only "20". It is also

20 | described as "Far from Anchorage." Moreover, there is no boat

21 | launch ramp. The restrooms are rated at "20" and the report states

22 | the "nearest is approximately one mile away." (See Exhibit B, page

23 | 16). At the A-8 Anchorage, despite the adverse climate conditions,

24 | a boat launch is available and the restrooms are described as

25 | accessible.

26 |     Mr. Gallagher merely seeks an opportunity to anchor long-term

27 | free of charge in a location which has wind and weather conditions

28 | that do not prohibit him from transferring between his dinghy and

1   his boat.  He also seeks an anchoring location adjacent to a boat

2   launch ramp, with an accessible dinghy dock or other accessible

3   means for getting ashore and for removing his dinghy.  He also seeks

4   a location with an accessible restroom a reasonable distance from

5   the dinghy dock. (Gallagher Declaration, par. 12.)

6                                    II.

7                **LEGAL AUTHORITY FOR ENFORCEMENT OF JUDGMENT**

8        The Court has ancillary jurisdiction to enforce its own orders

9   and decrees.  To the extent a settlement is embodied in the

10  judgment, the Court can enforce it by execution and by contempt

11  proceedings. *TNT Marketing, Inc. v. Agresti* (9th Cir. 1986) 796 F2d

12  276, 278. "Process subsequent to judgment is as essential to

13  jurisdiction as process antecedent to judgment, else the judicial

14  power would be incomplete and entirely inadequate to the purposes

15  for which it was conferred by the Constitution." *Riggs v. Johnson*

16  *County* (1867) 73 US 166, 167.

17       The Court has mandamus authority to force governmental

18  officials to act consistent with the judgment. *Peacock v. Thomas*

19  (1996) 516 US 349.

20                                   III.

21               **PLAINTIFF'S REQUEST FOR RELIEF**

22       Mr. Gallagher has evaluated all of the Anchorage Locations in

23  San Diego Bay.  He has determined that only the Anchorage at

24  Glorietta Bay has protection from the weather, protection from open

25  harbor traffic, a boat launch ramp and a dock which is close to the

26  anchorage sites.  He, therefore, requests that he be allowed to

27  anchor long-term, free of charge at Glorietta Bay.

28  ///

# IV.

## CONCLUSION

Mr. Gallagher requests that the Court order the PORT to provide Mr. Gallagher with long-term, free anchoring in a location which is useable by him. Based upon Mr. Gallagher's knowledge of the anchorage locations in San Diego Bay, only Glorietta Bay has a protected anchorage, an adjacent dinghy dock or other means to access the shore within a reasonable distance from the anchorage site, and a boat launch ramp.

LAW OFFICES OF AMY B. VANDEVELD

Dated:    11/1/02

By:    Amy B. Vandeveld, Attorney
       for Mr. Gallagher