# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GALLAGHER,<br><br>                    Plaintiff,<br><br>vs.<br><br><br>SAN DIEGO UNIFIED PORT DISTRICT and CITY OF CORONADO,<br><br>                    Defendants. | CASE NO. 08-CV-886-IEG-RBB<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT CITY OF CORONADO'S MOTION TO DISMISS; (Doc. No. 16)**<br><br>**(2) GRANTING IN PART DEFENDANT SAN DIEGO UNIFIED PORT DISTRICT'S MOTION TO DISMISS; (Doc. No. 17) and**<br><br>**(3) GRANTING PLAINTIFF LEAVE TO AMEND.** |

      Presently before the Court are: (1) a motion to dismiss plaintiff's Second Amended Complaint filed by defendant San Diego Unified Port District ("the Port"); and (2) a motion to dismiss plaintiff's Second Amended Complaint filed by defendant City of Coronado ("the City"). For the following reasons, the Court (1) grants the City's motion to dismiss; (2) grants in part the Port District's motion to dismiss; and (3) grants plaintiff leave to amend certain causes of action.

## BACKGROUND

**Factual Background**

      Plaintiff John Gallagher has a weak and shortened left leg due to childhood polio. Plaintiff brings this case primarily to challenge the Port's failure to re-issue the anchorage permit for his

boat in early 2007. Plaintiff previously sought an accessible anchorage for his boat in Gallagher v. San Diego Unified Port District, 98-cv-0615 J (JAH) ("Gallagher I").[1] In that case, plaintiff alleged the "A-8 anchorage," which provided free long-term anchorage, was not accessible to him because of the choppy surface waters and the distance from his anchorage site to the shore. Plaintiff accepted the Port's third offer of judgment in that case in November of 2000. The offer's terms included: "The [Port] shall designate Anchorage Area A-9 (the "Cruiser Anchorage") as an alternative free, long-term anchorage for qualified individuals with a disability who, because of that disability, are unable to use Anchorage Area A-8 . . . .The [Port] shall issue a permit to Plaintiff John Gallagher to anchor in Anchorage Area A-9 as an alternative free, long-term anchorage area, subject to all the regulations applicable to A-8." (Port's Ex. 3 ISO Motion .)

On September 5, 2006, the Port adopted amendments to § 4.36 of the Unified Port District Code ("UPDC"). In pertinent part, those amendments provide: "Upon enactment of this Section 4.36, as amended, the Port shall discontinue issuing Permits to anchor in the A-8 Anchorage, except for the purpose of re-issuing Permits to Vessels with current valid Permits and meeting all the requirements and conditions of this Section." (Port's Ex. 7 ISO Motion (providing UPDC § 4.36(c)(11))).[2] The regulations of the A-9 Anchorage require permittees to comply with all regulations of the A-8 Anchorage. (Port's Ex. 5 ISO Motion (providing UPDC § 4.38(h)(4)(d))). Accordingly, the elimination of the A-8 anchorage also ended the Port's issuance of A-9 permits.

Plaintiff's boat was vandalized on July 26, 2006, two days after he received his A-9 permit. Plaintiff alleges he attempted to renew his permit in January of 2007, but the Port ignored his letters and phone calls. Plaintiff eventually received a letter from the Port dated July 6, 2007.

---

[1] The Court takes judicial notice of the pleadings in that case under Rule 201 of the Federal Rules of Evidence.

[2] The Port has requested the Court judicially notice the regulations governing A-5, A-8 and A-9 anchorages, UPDC §§ 4.36 and 4.38. On a motion to dismiss a court may properly look beyond the complaint to matters of public record. Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1281 (9th Cir. 1986), abrogated on other grounds by Astoria Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104, 111 (1991). City charters and ordinances are proper subjects for judicial notice, as they are considered within the public's common knowledge. See, e.g., Newcomb v. Brennan, 558 F.2d 825, 829 (7th Cir. 1977); Oceanic Cal., Inc. v. San Jose, 497 F. Supp. 962, 967 n.8 (N.D. Cal. 1980); see also Fed. R. Evid. 201. The Court accordingly takes judicial notice of the regulations.

(Port's Ex. 8 ISO Motion.) The letter directed plaintiff's attention to the September 5, 2006 amendments regulating the A-8 and A-9 anchorages and explained the Port would not renew plaintiff's permit because it expired "in or about" January of 2007. (Id.)

**Procedural Background**

Plaintiff filed suit on May 19, 2008 and filed a first amended complaint ("FAC") on July 11, 2008, naming the Port and the City. The Court dismissed the FAC in its entirety on October 1, 2008. ("Dismissal Order") (Doc. No. 14.) The Dismissal Order granted plaintiff leave to amend his complaint. Plaintiff filed a second amended complaint ("SAC") on November 12, 2008. (Doc. No. 15.) The SAC alleges five causes of action: (1) violation of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101; (2) discrimination in violation of the ADA, 42 U.S.C. § 12132; (3) retaliation in violation of the ADA, 42 U.S.C. § 12203; (4) violation of 42 U.S.C. § 1983; and (5) breach of California state laws protecting the disabled.

On December 2, 2008, the City filed a motion to dismiss the complaint, or alternatively for a more definite statement. (Doc. No. 16.) On December 3, 2008, the Port filed a motion to dismiss the SAC. (Doc. No. 17.) On December 29, 2008, plaintiff filed an opposition to defendants' motions and the Port's request for judicial notice. (Doc. Nos. 18, 19.) Plaintiff also filed a request for judicial notice. (Doc. No. 18-1.) The Port filed a reply on January 2, 2009 (Doc. No. 20,) and the City filed its reply on January 5, 2009. (Doc. No. 22.) The Court heard oral argument on defendants' motions on Monday, January 12, 2009.

**DISCUSSION**

1.  Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). To survive a Rule 12(b)(6) motion, a complaint generally must satisfy only the minimal notice pleading requirements of Fed. R. Civ. P. 8(a)(2); Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003). To avoid a Rule 12(b)(6) dismissal, a

complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). In deciding a motion to dismiss for failure to state a claim, the court's review is generally limited to the contents of the complaint. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996). The Court recognizes the mandate to construe a pro se plaintiff's pleadings liberally in determining whether a claim has been stated. Ortez v. Washington County, 88 F.3d 804, 807 (9th Cir. 1996).

2.      Defendant City of Coronado's Motion to Dismiss

The FAC contained no specific factual allegations against the City of Coronado. The Dismissal Order stated that for plaintiff to state a claim against the City, plaintiff needed to explain the factual basis of his claim and identify the relief he sought from the City. Plaintiff added to his SAC the allegation that "anchorage 5 (Glorietta Bay), does not have a disabled access boat dock, which dock is owned and operated by defendant CITY OF CORONADO." (SAC ¶7.)

The City moves to dismiss the SAC on the basis that it still fails to state any factual allegations against the City. The City argues plaintiff has merely added the City's name to each cause of action, but the conduct complained of and the relief sought is specifically directed against the Port. The City argues plaintiff cannot provide factual basis for his allegations and has in fact acknowledged in the FAC and in prior litigation (i.e. his filings in Gallagher I) that the A-5 anchorage falls within the Port's authority.[3]

The Court has taken judicial notice of UPDC § 4.38 of the Unified Port District Code, entitled "Regulation of Vessels–A-1 Anchorage, A-5 Anchorage, and A-9 Anchorage." The Code section, in pertinent part reads,

///

---

[3] The City has requested the Court take judicial notice of plaintiff's first amended complaint and of pleadings and documents from the Gallagher I docket to support the argument that the A-5 anchorage does not fall within the City's authority. As the Court has decided this issue on an independent basis, the City's request for judicial notice is denied as moot.

       (a) Purpose: [¶] California law (San Diego Unified Port District Act, Harbors and Navigation Code, Appendix 1) requires the Board of Port Commissioners to **regulate and control the anchoring, mooring, towing and docking of vessels**, and to make and enforce all necessary rules and regulations governing the use and control of navigable waters within the District. The purpose of this Section of the San Diego [UPDC] is to implement that responsibility within the A-1, A-5, and A-9 Anchorages. [¶]

       (b) Definitions: [¶] 2. A-5 Anchorage–In Central San Diego Bay, the Glorietta Bay Anchorage

(Port's Ex. 5 ISO Motion (providing UPDC § 4.38)) (emphasis added). Based thereon, the Court finds that the Port has exclusive control over the A-5 anchorage. Plaintiff has presented no further factual allegations against the City beyond his allegations regarding the accessibility of the A-5 anchorage. Accordingly, plaintiff's accessibility causes of action against the City do not state a claim for relief that is plausible on its face. <u>Bell Atl.</u>, 127 S. Ct. at 1974.

     The Court dismisses plaintiff's complaint against the City without prejudice. If plaintiff files an amended complaint against the City, he must allege facts regarding conduct or facilities that are under the City's control.[4] The allegations under each cause of action must also be legally sufficient to withstand a motion to dismiss, as the Court describes in the discussion below.

3.     <u>Defendant San Diego Unified Port District's Motion to Dismiss</u>

    A.     <u>Plaintiff's ADA Claims</u>

     The SAC alleges three causes of action under the ADA, all of which the Port moves to dismiss: (1) violation of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101 &12131; (2) discrimination in violation of the ADA, 42 U.S.C. § 12132; and (3) retaliation in violation of the ADA, 42 U.S.C. § 12203. The Court examines each cause of action below.

        1)     <u>First Cause of Action: "Violation" of the ADA</u>

     In the SAC, plaintiff first alleges the Port "violated" the ADA, citing 42 U.S.C. §§ 12101 and 12131. (SAC ¶10.) However, these two sections are explanatory and do not contain provisions capable of being violated. 42 U.S.C. § 12101 (2008) merely explains the Congressional findings and purposes behind the ADA. 42 U.S.C. § 12131 (2008) merely provides the definitions

---

[4] To the extent plaintiff amends his complaint against the City regarding accessibility of the dock, the allegations must not include the A-5 anchorage or other facilities shown by the UPDC to be under the Port's control.

of "public entity" and "qualified individual" under Title II of the ADA. Plaintiff refers to "discrimination" several times in his argument, even though he brings a separate cause of action for discrimination under the ADA. The Court strikes the first cause of action under Fed. R. Civ. P. 12(f)(1)[5] as redundant of plaintiff's ADA discrimination claim.

### 2) Second Cause of Action: "Discrimination" Under the ADA

The SAC also alleges defendants deliberately and intentionally discriminated against plaintiff in violation of Title II of the ADA (42 U.S.C. § 12132) because they excluded him from public benefits and services. (SAC ¶ 14.) 42 U.S.C. § 12132 (2008) provides "[s]ubject to the provisions of [Title II of the ADA], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. In order to state a claim for disability discrimination under Title II of the ADA, a plaintiff "must allege four elements: (1) he 'is an individual with a disability'; (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities'; (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity'; and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'" McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).

The SAC meets the first factor because plaintiff alleges he is a "qualified individual" (SAC ¶7) due to his mobility impairments. However, the SAC does not allege sufficient facts to satisfy the remaining elements of an ADA discrimination claim. Construing the SAC broadly, plaintiff alleges he was excluded from or denied the benefits of services of a public entity in three ways: by the revision of UPDC § 4.36 (SAC ¶7); by the denial of an A-9 Anchorage permit (SAC ¶6); and by the lack of disabled access to various boat ramps and dock ramps. (SAC ¶7.) The Court discusses each of these allegations in turn below.

///

---

[5] "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed R. Civ. P. 12(f) (2008).

### a) Revision of UPDC § 4.36

The SAC alleges that the Port's revision of UPDC § 4.36 effectively "terminated ADA anchorage in the San Diego Bay." (SAC ¶7.)[6] "When a state's policies discriminate against the disabled in violation of the ADA, the ADA's regulations mandate reasonable modifications to those policies in order to avoid discrimination on the basis of disability, at least when such modification would not fundamentally alter the nature of the services provided by the state." Townsend v. Quasim, 328 F.3d 511, 517 (9th Cir. 2003). Nevertheless, the ADA does not require "public entities [] to create new programs that provide heretofore un-provided services to assist disabled persons." Id. at 518. The ADA only requires entities to make reasonable changes to existing policies to accommodate the disabilities. Id.

When plaintiff brought suit in Gallagher I, the Port only allowed free long term anchoring to boaters in Anchorage A-8. Plaintiff alleged he was not able to use the A-8 anchorage because of his disability. The Port established free long term anchoring in the A-9 anchorage for plaintiff as a reasonable accommodation of his disability. Plaintiff's present claim is premised on the September 2006 amendment of UPDC § 4.36. The amendment reflected the Port's decision to end the issuance of new licenses for free long-term anchoring in the A-8 anchorage, and effectively free long term anchoring for the disabled in the A-9 anchorage. In the wake of the amendment, the Port was only authorized to "re-issu[e] Permits to Vessels with current valid Permits." (Port's Ex. 7 ISO Motion (providing UPDC § 4.36 (c)(11)). The amendment did not "terminate" ADA anchorage in San Diego Bay, because plaintiff could still could have renewed his A-9 ADA license after the amendment was passed. The reasonable accommodation was therefore still available to him after the amendment. The Court dismisses plaintiff's claim with prejudice insofar as it alleges discrimination on the basis of the Port's 2006 revision of UPDC § 4.36.

### b) Denial of the A-9 Anchorage Permit

Plaintiff also argues he was discriminated against because he was denied an A-9 anchorage permit (SAC ¶6). The Court previously found that plaintiff must allege he was eligible to renew

---

[6] Although the Port amended UPDC § 4.36 once in September 2006 and once in September 2008, (Port's Ex. 9 ISO Motion), plaintiff's complaint refers only to the 2006 amendment. The Court will accordingly construe plaintiff's complaint as directed only toward the 2006 amendment.

his permit in order to show he was denied a benefit given to individuals with non-disabilities. The SAC alleges plaintiff's vessel "met all criteria for licensure" imposed by UPDC § 4.36 when he requested renewal of his permit in January 2007, but the Port ignored his telephone calls and letters and denied his request.[7] Plaintiff has thus alleged sufficient facts to show he was "otherwise qualified" to receive the benefit of the Port's services. McGary, 386 F.3d at 1265. However, plaintiff does not sufficiently allege that the denial was "by reason of his disability" or that he was denied a benefit given to people without disabilities. Id. The Court dismisses plaintiff's claim without prejudice insofar as it alleges discrimination on the basis of the Port's denial of his attempt to renew his A-9 permit. The Court grants plaintiff leave to amend his complaint in order to allege that the denial of the A-9 permit was by reason of his disability.

          *c)      Accessibility Claims*

Plaintiff also alleges the Port discriminated against him by not providing adequate disabled access in several anchorage areas. (SAC ¶7.)[8] The SAC alleges the A-3 anchorage provides for only temporary[9] mooring and has no disabled access boat ramp, and A-5 anchorage (Glorietta Bay), does not have a disabled access boat dock. The SAC further alleges the A-8 anchorage is dock accessible but the moorings are approximately 1200 yards from the dock and the A-9 anchorage has no boat or dock ramps and has "ceased permitting as an ADA anchorage." (Id.)

As indicated above, plaintiff has sufficiently alleged he is a qualified individual for ADA

---

[7] The Port's argument that plaintiff was responsible for the denial of his permit because he missed the renewal deadline is unavailing. UPDC § 4.36 provides "The Anchoring Permit will be valid for Six (6) Months from the date of issue." (Port's Ex. 7 ISO Motion.) Plaintiff's permit was allegedly issued on or about July 24, 2006, giving him until on or about January 24, 2006 to renew it. Plaintiff alleges he tried to renew his permit in January, making it plausible that his request was timely.

[8] The Port asks the Court to take judicial notice of a May 30, 2000 settlement agreement, in which plaintiff released the Port from the accessibility claims he alleged in Gallagher I. (Port's Ex. 2 ISO Motion.) The Court denies the Port's request for judicial notice because the settlement agreement is not mentioned in the complaint and is not a public record. Cf. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (holding that a court may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading). The Court will not dismiss plaintiff's accessibility claims at the pleading stage based on the settlement agreement.

[9] The complaint states "Anchorage 3 [] provides for temporally [sic] mooring only." Construing the complaint in the light most favorable to plaintiff, the Court reads the complaint as alleging Anchorage 3 provides "temporary" mooring only.

purposes. He has not, however, alleged that he is eligible to use the anchorages for the purposes he seeks (ostensibly for free long-term anchorage). He has therefore not alleged that he is "otherwise qualified to participate" in the services offered by the Port. McGary, 386 F.3d at 1265. Moreover, although the SAC makes allegations regarding the docks and ramps at certain facilities, plaintiff does not allege that he personally is unable to use the facilities because of his disability. Therefore, plaintiff has also not sufficiently alleged he was "excluded from participation" of the Port's services or was "otherwise discriminated against" by the Port "by reason of [his] disability." Id. Finally, the Court takes judicial notice of the fact that on September 2, 2008, the Port again amended UPDC § 4.36 to reflect the closure of the A-8 anchorage to **all** anchoring (pending environmental restoration) until July 1, 2011. (Port's Ex. 9 ISO Motion (providing UPDC § 4.36 (c)(1)). The amended section also states that, "[a]fter completion of environmental restoration of the A-8 Anchorage, the anchorage will be reserved for aquatic sports activities, regattas, other small craft temporary usage subject to permit, or other uses as specified by amendment of this section by the Board of Port Commissioners." (Id. (providing UPDC § 4.36 (c)(2))). The Court finds that plaintiff's accessibility claim regarding the A-8 anchorage is not ripe because the anchorage is not open for use by any person. The Court therefore grants plaintiff leave to amend his complaint with regard to the accessibility of the A-3, A-5,[10] and A-9 anchorages only.[11]

### 3) Third Cause of Action: "Retaliation" Under the ADA

The SAC alleges the Port's refusal to acknowledge Plaintiff's attempt to renew his ADA A-9 anchorage permit was an act of retaliation in violation of 42 U.S.C. § 12203. Plaintiff claims the Port retaliated because of his previous ADA suit against the Port. The Port argues its action was not retaliatory, and occurred because pursuant to UPDC § 4.36 the Port could not renew an

---

[10] Plaintiff requests that the Court take judicial notice of a passage from the court Order Denying Plaintiff's Motion to Enforce Judgment in Gallagher I. He argues the passage supports his argument that the A-5 anchorage is not ADA compliant. The passage has no bearing on the Court's finding that plaintiff has insufficiently alleged his accessibility claims. Accordingly, the Court denies as moot plaintiff's request for judicial notice.

[11] The Court duly notes that in Gallagher I plaintiff alleged the A-5 anchorage was accessible to him and admitted at an evidentiary hearing that the A-9 anchorage was accessible to him. However, the Court will not dismiss plaintiff's claims on these bases because in considering a motion to dismiss the Court may not take judicial notice of disputed facts just because they are "stated in public records." Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

1   expired permit. The Port argues plaintiff received his ADA A-9 permit on July 26, 2006, and
2   pursuant to § 4.36 it was his responsibility to renew the permit within 6 months. (Port's Ex. 8 ISO
3   Motion.)

4       42 U.S.C. § 12203 (2008) provides, "[n]o person shall discriminate against any individual
5   because such individual has opposed any act or practice made unlawful by this Act or because
6   such individual made a charge, testified, assisted, or participated in any manner in an investigation,
7   proceeding, or hearing under this Act." In order to state a claim for retaliation in violation of the
8   ADA, a plaintiff must show 1) plaintiff's involvement in a protected activity, 2) defendant
9   subjected plaintiff to an adverse action, and 3) a causal link between the protected activity and the
10  defendant's action. Shotz v. City of Plantation, 344 F.3d 1161, 1181 (11th Cir. Fla. 2003).[12]

11      In Gallagher I plaintiff opposed an "act or practice" made unlawful by the ADA. This was
12  protected activity. Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 850 (9th Cir. 2004)
13  ("Pursuing one's rights under the ADA constitutes a protected activity.") The requisite "adverse
14  action" was the Port's refusal to renew plaintiff's ADA Anchorage 9 permit. An action is deemed
15  adverse if it is "reasonably likely to deter [individuals] from engaging in protected activity." Id. In
16  this case, the Port allegedly ignored plaintiff's requests to renew his disabled access permit and
17  ultimately denied his renewal request. This conduct is reasonably likely to deter a disabled person
18  from pursuing rights under the ADA. Finally, the Port's adverse conduct occurred within six
19  months of the settlement of a five-year long legal dispute between plaintiff and the Port. A causal
20  link between the protected activity and the defendant's conduct may be inferred when an adverse
21  action closely follows the engagement in a protected activity. Id. Plaintiff has alleged sufficient
22  facts to state a retaliation claim under the ADA.

23      B.    Plaintiff's 42 U.S.C. § 1983 Claim

24      The SAC alleges the Port violated 42 U.S.C. § 1983 when it "amended its ordinance 4.36
25  in a (sic) attempt to evict plaintiff and all disabled people from ADA anchorage 9," and by this

---

[12] Facing an issue of first impression, the Shotz court modified the analysis of an ADA employment retaliation claim and applied it in a non-employment context. The Ninth Circuit has similarly only considered ADA retaliation issues in employment law cases, but district courts have extended this analysis beyond the employment context. See Munir v. Thomas, 2008 U.S. Dist. LEXIS 16895, *6 (E.D.Cal. March 5, 2008).

1  conduct discriminated against plaintiff because of his disability. (SAC ¶¶ 22-23.) Plaintiff alleges
2  the revised UPDC § 4.36 violates the 14th Amendment of the Constitution and Article I, and
3  Section 7 of the California Constitution because it deprives plaintiff of the lawful use of his vessel
4  without due process of law and denies plaintiff the equal protection of the laws. The Port asserts
5  that as a matter of law there was no constitutional violation because plaintiff does not have a
6  constitutional right to unregulated long term anchorage in public navigable waters.

7        42 U.S.C. § 1983 is the proper vehicle by which plaintiffs may complain of a violation of a
8  constitutional right by a state actor. Greenawalt v. Sun City West Fire Dist., 250 F. Supp. 2d
9  1200, 1212-13 (D. Ariz. 2003). The Supreme Court held in Monell v. Soc. Svs. Dept. of New
10 York that. "Congress intended municipalities and other local government units to be included
11 among those persons to whom § 1983 applies," and that "[l]ocal governing bodies, therefore, can
12 be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action
13 that is alleged to be unconstitutional implements or executes a policy statement, ordinance,
14 regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658,
15 690 (1978). To state a § 1983 claim, "the plaintiff must demonstrate that (1) the action occurred
16 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or
17 federal statutory right." West v. Atkins, 487 U.S. 42, 48 (1988).

18       Plaintiff has made a constitutional challenge to the September 2006 amendment to UPDC §
19 4.36, an ordinance "officially adopted and promulgated" by the Port. He has therefore sufficiently
20 alleged the Port was acting "under color of state law" by amending the ordinance. See Monell,
21 436 U.S. 658, 690. Nevertheless, plaintiff has not and for several reasons cannot allege that the
22 Port's amendment of UPDC § 4.36 resulted in "the deprivation of a constitutional right or federal
23 statutory right." West, 487 U.S. at 48. First, plaintiff does not state, nor has the Court found any
24 authority establishing a federal constitutional right to free, long term anchoring. The Ninth Circuit
25 has held that "anchorage and mooring rules are best left to the states in the absence of compelling
26 government interests to the contrary." Barber v. Hawai'i, 42 F.3d 1185, 1193 (9th Cir. 1994).
27 Furthermore, the Port still provides for free anchoring in other areas of San Diego Bay, for limited
28 time periods, and plaintiff has not alleged he is precluded from long term anchorage at a private

1 marina.  See UPDC § 4.38 (free anchoring for limited time in A-1 and A-5 anchorages).[13]

2 Second, plaintiff has provided no authority demonstrating that he has a property interest in free, long term anchoring, and he therefore cannot state a due process claim under either the Fourteenth Amendment.  Accordingly, plaintiff's assertion that the Port's amendment of UPDC § 4.36 deprived him of his property without due process fails to state a claim.

Third, to the extent plaintiff bases his § 1983 claim on an alleged right set forth in the California Constitution, § 1983 provides no remedy for "the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997).  Therefore, Plaintiff's reference to the California constitution does not provide a basis for his § 1983 claims premised his alleged right to use his vessel in the A-9 anchorage.  Finally, as discussed in Section supra, plaintiff has not successfully alleged that the Port's amendment to UPDC § 4.36 deprived him of any federal statutory right.  The Court therefore dismisses plaintiff's § 1983 cause of action with prejudice insofar as it alleges a § 1983 violation on the basis of the Port's 2006 revision of UPDC § 4.36.

C.    Plaintiff's California Law Claims

The SAC asserts a cause of action for violation of California statutory law provisions protecting the handicapped, specifically: Cal. Civ. Code §§ 51, 52, and 54; Cal. Gov. Code § 4450; and Cal. Health & Saf. Code § 19955.  Plaintiff alleges all of the statutes "require that public accommodation and facilities built with private funds provide services to people with disabilities which are equal" to those provided to non-disabled people.  (SAC ¶30.)  Plaintiff alleges the Port "continue[s] to violate the . . .State regulations promulgated pursuant to the state statutes by constructing, or altering San Diego Bay docks without installing ramps at the docks, and otherwise depriving plaintiff of equal access to San Diego Bay."  (Id. ¶32.) The Port argues plaintiff's allegations are vague and conclusory, and in supplemental briefing argued plaintiff is jurisdictionally barred from asserting a claim for damages against the Port because he did not comply with the Government Claims Act.

---

[13] California courts have similarly explained that it is "axiomatic that boaters do not have a constitutional right to unregulated long term anchorage in public navigable waters." Graf v. San Diego Unified Port District (Graf II), 7 Cal. App. 4th 1224, 1232 (Cal. Ct. App. 1992).

1    Compliance with the procedural requirements of the California Tort Claims Act, including
2 submitting a written claim, is a necessary prerequisite to suing a public entity for money or
3 damages. Cal. Gov't Code § 945.4 (2008).[14]  The Tort Claims Act "is comprehensive in scope and
4 includes tort claims arising out of negligence, nuisance, breach of statutory duties and intentional
5 wrongs." Loehr v. Ventura County Community College Dist., 147 Cal. App. 3d 1071, 1079 (Cal.
6 Ct. App. 1983).  However, the claim requirement does not apply to actions brought primarily for
7 declaratory or injunctive relief, even when money damages are sought.  In Independent Hous.
8 Servs. v. Fillmore Ctr. Assocs., 840 F. Supp. 1328 (N.D. Cal. 1993), the plaintiffs challenged an
9 alleged violation of federal, state and local handicapped access laws.  The court found that
10 although the plaintiffs sought damages, their request for injunctive relief was of "great weight and
11 not just ancillary to the request for damages."  The Court held the plaintiffs were not required to
12 file a written claim because their claims were not primarily monetary.  Id. at 1357-58.

13    Here, plaintiff specifically seeks "compensatory and punitive damages in an amount to be
14 proven at trial" under his state causes of action (SAC  ¶33.)  However, elsewhere in the complaint
15 plaintiff states he seeks "an injunction order requiring compliance with State and Federal laws
16 which protect people with disability from discrimination based upon relief the Court may deem
17 proper."  (Id. ¶11.)  Plaintiff's state claims are premised on the same accessibility allegations as his
18 ADA discrimination claim.  Construing plaintiff's state claims liberally, the Court therefore finds
19 that plaintiff seeks injunctive relief for his state law claims as well as his federal law claims. The
20 injunctive relief plaintiff seeks is not merely ancillary to the pecuniary relief he requests.  The
21 Court accordingly finds that no statutory notice was required under the Government Claims Act.

22    Nevertheless, as discussed in Section 3(A)(2)(a) *supra*, plaintiff has not alleged that he
23 personally is unable to use the facilities because of his disability, or that he has been denied a
24 benefit given to non-disabled people.  Plaintiff must cure the deficiencies in his accessibility
25 claims in order to bring his desired state law claims, which are all based on equal access.  The
26 Court therefore dismisses plaintiff state law causes of action with final leave to amend.

---

[14] "...no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board." Cal. Gov. Code § 945.4 (2008).

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant City of Coronado's motion to dismiss. The Court also GRANTS defendant San Diego Port District's motion to dismiss in part, and DENIES it part. Plaintiff may file a third and final amended complaint within thirty (30) days of the date of this Order, addressing the deficiencies expressly set forth herein. Specifically, in order to assert a claim against the City, plaintiff must allege facts regarding conduct and facilities under the City's control. Those allegations must not concern the A-5 anchorage or other facilities shown by the UPDC to be under the Port's control. In order to assert a claim that his permit request was improperly denied in January of 2007, plaintiff must allege facts showing that the denial of his permit was by reason of his disability. In order to assert a claim that the A-3, A-5, and A-9 anchorages are not accessible to him, plaintiff must allege he was eligible to use the identified facilities for the purposes he seeks and explain he was prevented from using those facilities by reason of his disability.

The Court dismisses plaintiff's claim WITH PREJUDICE insofar as it alleges discrimination based on the Port's 2006 revision of UPDC § 4.36. The Court also dismisses plaintiff's 42 U.S.C. § 1983 cause of action WITH PREJUDICE insofar as it alleges a § 1983 violation on the basis of the Port's 2006 revision of UPDC § 4.36.

The Court GRANTS the Port's request for judicial notice in part and denies it in part, as set out in this Order. The Court DENIES AS MOOT the Port District's request for judicial notice of each exhibit not expressly discussed herein. The Court also DENIES AS MOOT the City's request for judicial notice, and DENIES AS MOOT plaintiff's request for judicial notice.

**IT IS SO ORDERED.**

DATED: February 6, 2009

*Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**