1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  JOHN GALLAGHER, | CASE NO. 08-CV-886-IEG (RBB) |
| 12                            Plaintiff, | **ORDER:** |
| 13 | **(1) GRANTING DEFENDANT CITY OF CORONADO'S MOTION TO DISMISS; (Doc. No. 36)** |
| 14       vs. | |
| 15 | **(2) GRANTING IN PART AND DENYING IN PART DEFENDANT SAN DIEGO UNIFIED PORT DISTRICT'S MOTION TO DISMISS; (Doc. No. 38) and** |
| 16 | |
| 17 | |
| 18  SAN DIEGO UNIFIED PORT DISTRICT; and CITY OF CORONADO, | **(3) GRANTING IN PART AND DENYING IN PART DEFENANT SAN DIEGO UNIFIED PORT DISTRICT'S MOTION TO STRIKE (Doc. No. 38)** |
| 19                            Defendants. | |
| 20 | |

21          Presently before the Court are Defendant San Diego Unified Port District's (the "Port") and

22    Defendant City of Coronado's (the "City") motions to dismiss the third amended complaint ("TAC")

23    pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. Nos. 36 and 38.)  As part of its motion to dismiss, the Port

24    has also moved for judicial notice of several documents and moved to strike Plaintiff's damages

25    claims.  For the reasons stated herein, the Court grants the City's motion, grants Port's motions in part,

26    and grants the Port's request for judicial notice in part.

27    ///

28    ///

**BACKGROUND**

I.      Factual Background

Plaintiff John Gallagher has a weak and shortened left leg due to childhood polio.  Plaintiff brings this case, *inter alia*, to challenge the Port's failure to re-issue the anchorage permit for his boat in early 2007.  Plaintiff previously sought an accessible anchorage for his boat in 1998 when he filed the federal action Gallagher v. San Diego Unified Port District, 98-cv-0615 J (JAH) ("Gallagher I").[1] The main factual allegations of Gallagher I were that: (1) the Port denied the disabled access to San Diego Bay due to inadequate docks,  ramps, and facilities (the "Accessibility Claims"); and (2) the District's anchoring regulations discriminated against the disabled, resulting in their inability to anchor in the San Diego Bay (the "Anchoring Claim").

On August 8, 2000 Gallagher I resolved with respect to the Accessibility Claims only, when the parties signed a "Settlement Agreement and Release of Claims." [("Settlement Agreement"), Ex. 3 ISO Motion.]  On November 17, 2000, in order to resolve the Anchoring Claim, the Port made a Third Offer of Judgment to Plaintiff wherein the Port agreed to issue a permit to Plaintiff to anchor in a portion of the A-9 anchorage free and long-term, subject to all the regulations applicable to the A-8 anchorage, as a reasonable accommodation.  [("Third Offer of Judgment"), Port's Ex. 4 ISO Motion.]   Plaintiff accepted the third offer of judgment on  November 27, 2000.  (Port's Ex. 5 ISO Motion.)

On September 5, 2006, the Port adopted amendments to § 4.36 of the Unified Port District Code ("UPDC").  In pertinent part, those amendments provided: "Upon enactment of this Section 4.36, as amended, the Port shall discontinue issuing Permits to anchor in the A-8 Anchorage, except for the purpose of re-issuing Permits to Vessels with current valid Permits and meeting all the requirements and conditions of this Section." [Port's Ex. 8 ISO Motion (providing UPDC § 4.36(c)(11)).][2]   The regulations of the A-9 Anchorage require permittees to comply with all

---

[1]   The Court takes judicial notice of the pleadings in that case under Rule 201 of the Federal Rules of Evidence.

[2]   The Port has requested the Court judicially notice  the regulations governing A-5, A-8 and A-9 anchorages, UPDC §§ 4.36 and 4.38.  On a motion to dismiss a court may properly look beyond the complaint to matters of public record.  Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1281 (9th Cir. 1986),  abrogated on other grounds by Astoria Federal Savings and Loan Ass'n v. Solimino,

1  regulations of the A-8 Anchorage. [Port's Ex. 7 ISO Motion (providing UPDC § 4.38(h)(4)(d)).]

2  Accordingly, the halt in the issuance of new A-8 anchorage permits also ended the Port's issuance of

3  new A-9 permits.

4     Plaintiff's boat was vandalized on July 26, 2006, two days after he received his A-9 permit.

5  Plaintiff alleges he attempted to renew his permit in January of 2007, but the Port ignored his letters

6  and phone calls.  Plaintiff eventually received a letter from the Port dated July 6, 2007. (Port's Ex. 9

7  ISO Motion.)  The letter directed plaintiff's attention to the September 5, 2006 amendments regulating

8  the A-8 and A-9 anchorages and explained the Port would not renew plaintiff's permit because it

9  expired "in or about" January of 2007.  (Id.)

10  II.     Procedural Background

11     Plaintiff filed suit on May 19, 2008 and filed a first amended complaint ("FAC") on July 11,

12  2008, naming the Port and the City.  The Court dismissed the FAC in its entirety on October 1, 2008,

13  but granted Plaintiff leave to amend.  (Doc. No. 14.)  Plaintiff filed a second amended complaint

14  ("SAC") on November 12, 2008. (Doc. No. 15.)  The Court partially dismissed the SAC on February

15  6, 2009,  ("Second Dismissal Order,") granting Plaintiff leave to amend some of his claims.  On May

16  6, 2009, Plaintiff filed his third amended complaint ("TAC.") The TAC alleges eight causes of action:

17  (1) discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132;

18  (2) retaliation in violation of the ADA,  42 U.S.C. § 12203; (3) injunctive relief pursuant to California

19  state laws protecting the disabled; (4) "impairment of contracts" in violation of the United States

20  Constitution; (5) violation of 42 U.S.C. § 1983 based on impairment of contracts; (6) violation of 42

21  U.S.C. § 1983 based on constitutional due process violations; (7) tortious breach of contract; and (8)

22  violation of 42 U.S.C. § 1983 based on violation of the federal Constitution's *Ex Post Facto* clause.

23     The City and the Port now move to dismiss the TAC.  Plaintiff filed an opposition that

24  addresses both motions, and Defendants have each filed reply briefs.  The Court finds the motions

25  suitable for disposition without oral argument pursuant to Local Civil Rule 7.1(d)(1).

26

27

28  501 U.S. 104, 111 (1991).  City charters and ordinances are proper subjects for judicial notice, as they
are considered within the public's common knowledge.  See, e.g., Newcomb v. Brennan, 558 F.2d 825,
829 (7th Cir. 1977); Oceanic Cal., Inc. v. San Jose, 497 F. Supp. 962, 967 n.8 (N.D. Cal. 1980); see
also Fed. R. Evid. 201.  The Court accordingly takes judicial notice of the regulations.

# DISCUSSION

I.      Legal Standards

     A.      Motion to Dismiss

A complaint survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.544, 570 (2007).  The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party.  Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  Notwithstanding this deference, the court need not accept "legal conclusions" as true.  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).  Moreover, it is improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). Accordingly, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950.

However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " Id. (citing Twombly, 550 U.S. at 557). The Court recognizes the mandate to construe a pro se plaintiff's pleadings liberally in determining whether a claim has been stated.  Ortez v. Washington County, 88 F.3d 804, 807 (9th Cir. 1996).  The Court may deny leave to amend the complaint where a complaint previously has been amended, or where amendment would be futile.  Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990).

     B.      Motion to Strike

Fed. R. Civ. P. 12(f) states, in relevant part: "Upon motion made by a party … the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent,

1  or scandalous matter."  A motion to strike may be used to strike a prayer for relief when the damages

2  sought are not recoverable as a matter of law.  Bureerong v. Uvawas, 922 F. Supp. 1450, 1479 (C.D.

3  Cal. 1996).  However, motions to strike are a drastic remedy and are generally disfavored. 5C Wright

4  & A. Miller, Federal Practice and Procedure § 1380 (3d ed. 2009).

5  II.      The City's Motion to Dismiss the Complaint

6         Plaintiff's SAC contained only one specific factual basis for his claims against the City: the

7  general allegation that  "anchorage 5 (Glorietta Bay), does not have a disabled access boat dock,

8  which dock is owned and operated by defendant City of Coronado." (SAC ¶ 7.) The Court dismissed

9  the SAC's claims against the City in their entirety based on judicially-noticed facts establishing that

10 the Port, not the City, has exclusive control over the  A-5 anchorage, and found that Plaintiffs' factual

11 allegations did not give rise to a facially plausible claim for relief.  The Court granted Plaintiff leave

12 to amend the complaint against the City, but specifically ordered that any such amendment "must

13 allege facts regarding conduct or facilities that are under the City's control." (Second Dismissal Order

14 at 5.)   Plaintiff's TAC has simply reiterated the allegation that "defendant City of Coronado owns

15 and operates the dockage facility in anchorage Area A-5 and fails to provide disabled access to said

16 dockage facility" as a basis for his claim that the City discriminated against him in violation of the

17 ADA. (TAC ¶ 13.)   The only other cause of action Plaintiff brings against the City is one for

18 injunctive relief, and under that cause of action he fails to allege specific factual allegations supporting

19 his claim.

20         As the Court has already established that the A-5 anchorage is *not* under the City's control,

21 Plaintiff has not complied with the Court's order that any amendment must allege facts regarding

22 conduct or facilities that *are* under the City's control.  Accordingly, the Court dismisses Plaintiff's

23 complaint against the City with prejudice.

24 III.      The Port's Motion to Dismiss the Complaint

25         A.      Propriety of Considering the Settlement Agreement

26         The Port relies on the Settlement Agreement in support of its motion to dismiss some of the

27 TAC's claims.  A court generally may not consider matters beyond the pleadings on a Rule 12(b)(6)

28 motion,  but "a document is not 'outside' the complaint if the complaint specifically refers to the

document and if its authenticity is not questioned." Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds, Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327, at 762-63 (2d ed. 1990)). Here, the TAC specifically mentions that Gallagher I was "settled by way of a contractual agreement between the parties in which the Port District agreed to designate anchorage Area A-9 as an alternative free, long-term anchorage for qualified individuals with a disability . . . ." (TAC ¶ 7.) The Court finds the "contractual agreement" the TAC references encompasses both the Settlement Agreement and the Third Offer of Judgment because both of these agreements comprised the full Gallagher I settlement. Plaintiff does not dispute the authenticity of the Settlement Agreement, and therefore the Court may properly consider it in deciding the present motion.[3]

### B.      Released Accessibility Claims

The Port argues Plaintiff's "accessibility based claims" are barred by the Settlement Agreement he signed in Gallagher I. The TAC's "accessibility based claims" are comprised of: (1) the allegations that the Port discriminated against Plaintiff in violation of the ADA by not providing adequate disabled access in several anchorage areas; and (2) the state law claims based on the same accessibility allegations, asserted under Cal. Civ. Code §§ 51, 52, and 54; Cal. Gov. Code § 4450; and Cal. Health & Saf. Code § 19955. Plaintiff argues his accessibility claims are not barred because "the current case and the TAC rest upon acts and circumstances arising long after [Gallagher I], which acts and conduct stand on their own as the basis of the current action." (Opp. at 3.) The validity of the Port's argument, therefore, turns on whether Plaintiff's claims fall within the scope of the Settlement Agreement.

### 1.      The Gallagher I Claims and Release

In Gallagher I, Plaintiff's complaint alleged, in relevant part, that:

> 9. [ . . . ] Plaintiff, and others similarly situated, attempted to obtain full and equal access to *facilities, docks,* anchorage sites, services, programs and benefits owned and/or operated and/or provided by PORT DISTRICT.

_____

[3] The Court alternatively considers the Settlement Agreement as "a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) superseded by statute on other grounds, as noted in Abrego v. Dow Chem. Co., 443 F.3d 676, 681 (9th Cir. 2006).

10.  Plaintiff and others similarly situated were denied full and equal access to the public programs, activities, or services provided by PORT DISTRICT: [including] *[i]nsufficiently sloped ramps*[.]

11.  Plaintiff believes and thereon alleges that *other access violations exist*, which must be remedied so that people with disabilities have access to the programs, services and facilities provided and/or operated by the PORT DISTRICT.

(Gallagher I Complaint ¶¶ 9-11) (emphasis added).  These claims, *inter alia*, formed the factual basis for Plaintiff's claim that he was subjected to disability discrimination under Title II of the ADA and California Civil Code Sections 51, 52, and 54.

Plaintiff settled these accessibility claims in the Settlement Agreement, which provided in a recital[4] that,

The Parties have . . . agreed to enter into the Agreement to avoid further expense, inconvenience and distraction of litigation, with respect to the claims released herein and *to be free of further liability from any claims by Plaintiff, whether or not asserted in Plaintiff's Complaint* or any successor or predecessor complaints in this action [.]

(Settlement Agreement at 1) (emphasis added).  The Settlement Agreement also provided a comprehensive release which stated as follows:

5.  Plaintiff's Release of Defendant.  Plaintiff . . . hereby *fully release[s], absolve[s] and forever discharge[s]* [the Port] of and from *all past, present, or future claims*, demands, damages, liabilities, rights, actions, attorney's fees, obligations, costs, expenses, liens, actions, judgments, and causes of action *of every kind and nature whatsoever* existing between them . . . *whether known, unknown or suspected, arising out of, or in any way connected with or relating to* the claims in Plaintiff's Complaint.

(Settlement Agreement at 6) (emphasis added).  Finally, the Settlement Agreement contained an explicit waiver of the parties' rights to pursue unknown or unsuspected claims under [California] Civil Code Section 1542.[5]  (Settlement Agreement at 7.) The waiver provision also states,

[I]t is the intention of the Parties to fully, finally, and forever settle and release all claims as to Plaintiff's Complaint, and *all claims relative*

---

[4] This recital was also incorporated into the Agreement.  See Settlement Agreement at 3 ( "The aforesaid 'Recitals' shall be part of the Agreement.")

[5] "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."  Cal. Civ. Code § 1542 (2009).

*thereto*, known or unknown, suspected or unsuspected, which now exist *or may exist in the future*[.] In furtherance of such intention, the Releases as given herein shall be and remain in effect as full and complete Releases of all such matters, notwithstanding the discovery or existence of any additional or different claims or facts relating thereto.

(Settlement Agreement at 7) (emphasis added).

    2.    Analysis

"The interpretation of a settlement agreement is governed by principles of state contract law[,] . . . even where a federal cause of action is 'settled' or 'released.' " Botefur v. City of Eagle Point, 7 F.3d 152, 156 (9th Cir. 1993) (citations omitted). Under California law, "Release, indemnity and similar exculpatory provisions are binding on the signatories and enforceable so long as they are . . . 'clear, explicit and comprehensible in each [of their] essential details. Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement.'" Skrbina v. Fleming Cos., 45 Cal. App. 4th 1353, 1368 (Cal. Ct. App. 1996) (citation omitted). Also, as a general rule, contractual limitations on liability for future conduct must be clearly set forth. 17A Am. Jur. 2d Contracts § 282. Here, the Settlement Agreement clearly, on its face, extinguished all *future claims* of every kind and nature whatsoever, whether known, unknown or suspected, that were in any way connected with Plaintiff's accessibility claims regarding the "facilities," "docks," "insufficiently sloped ramps," and "other access violations" alleged in the Gallagher I complaint.

Moreover, it is an established principle of California contract law that contracts are to be interpreted according to the objective intent of the parties. See Beck v. American Health Group Int'l, Inc., 211 Cal. App. 3d 1555, 1562 (Cal. Ct. App. 1989); Cal. Civ. Code § 1636 (2009).[6] Here, the Settlement Agreement explicitly stated the parties' intention to "forever settle and release" all *future claims* in any way relating to the accessibility claims in the Complaint.

Notwithstanding the release of future accessibility claims relating to facilities, docks, ramps, and other access violations, the TAC alleges,

    10. [The Port has] continued to do absolutely nothing about ADA

---

[6] "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

accommodations, or access on the issue of boat ramps and dock ramps within ADA anchorage 9, anchorage 8, anchorage 3, and anchorage 5 . . . . For example, anchorage 5 (Glorietta Bay) does not have a disabled boat dock . . . .  Anchorage 3, provides for temporary mooring only, and has no disabled access boat ramp.  Anchorage area 8, is dock accessible, but moorings are approximately 1200 yards from the dock. Former anchorage A-9 ceased permitting as an ADA anchorage.

11.  Defendants San Diego Unified Port District and the City of Coronado deliberately and intentionally committed discriminatory acts towards Plaintiff by denying him access to Coronado and San Diego Bay.

[...]

13. . . . Plaintiff would be eligible to anchor in the anchorage areas A-3, A-8, and A-5 but for the lack of disabled accessibility in those anchorage areas, which plaintiff is personally unable to utilize.

(TAC ¶¶ 10-11, 13.)   Although Plaintiff argues these allegations rest upon circumstances occurring long after Gallagher I settled, the allegations nevertheless are exactly the type of "past, present, or future claims" regarding accessibility to docks, ramps, and facilities barred by the Settlement Agreement. Plaintiff therefore may not raise the claims in this action.  Accordingly, the Plaintiff's ADA discrimination claim is dismissed with prejudice insofar as it is based on the accessibility claims described above.  Plaintiff's third cause of action for injunctive relief under California law is also dismissed with prejudice in its entirety, because it is entirely premised on accessibility allegations barred by the Settlement Agreement.

C.    Discrimination Under the ADA

The TAC again alleges Defendants deliberately and intentionally discriminated against Plaintiff in violation of the ADA because they excluded him from public benefits and services.  42 U.S.C. § 12132 (2009) provides, "[s]ubject to the provisions of [Title II of the ADA], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  In order to state a claim for disability discrimination under Title II of the ADA, a plaintiff "must allege four elements: (1) he 'is an individual with a disability'; (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities'; (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public

- 9 -

08cv886

1    entity'; and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his]

2    disability.'"  McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (citations omitted).

3           Here, as in the SAC, Plaintiff has sufficiently alleged he is an individual with a disability.  The

4    Court now turns to whether the Plaintiff's other allegations sustain an ADA discrimination cause of

5    action.  Construing the TAC broadly, Plaintiff again alleges he was excluded from or denied the

6    benefits of a public entity in three ways: first, by the revision of UPDC § 4.36 (TAC ¶ 13); second,

7    by the Port's denial of an A-9 anchorage permit (TAC ¶ 9); and third, by the lack of disabled access

8    to various docks and boat ramps.  (TAC ¶ 10.)  Having previously dismissed the first and third bases

9    for this claim with prejudice,[7] Plaintiff can no longer use them to support his ADA discrimination

10   claim.

11          The Court accordingly turns to whether the Port's denial of Plaintiff's A-9 permit constituted

12   discrimination under the ADA.  The Court most recently dismissed this claim because Plaintiff did

13   not sufficiently allege that he was denied a benefit given to people without disabilities, or that the

14   denial was otherwise "by reason of his disability."  Plaintiff has now alleged that "[t]he Port's denial

15   of [his ADA A-9 anchor]" permit was due to plaintiff's disability."  (TAC ¶ 9.)

16          The Port argues Plaintiff has "failed to show that the denial was based upon his disability

17   rather than that the permit expired, or that he was denied a benefit given to people without disabilities

18   who  continued to be able to renew their A-8 permits after they had expired[.]" (Memo ISO Motion

19   at 11.)  However, at this stage of the proceedings, Plaintiff is not required to make a detailed factual

20   showing.  He must merely plead "enough facts to state a claim to relief that is plausible on its face."

21   Twombly, 550 U.S. at 570.  The Court has already determined it is plausible that Plaintiff made a

22   timely renewal request.  (See Second Dismissal Order at 8, n. 1.)  The Court also finds it plausible that

23   Plaintiff, as he now alleges, was denied renewal of the permit because of his disability.  The Port's

24   motion to dismiss Plaintiff's ADA claim on this ground is therefore denied.

25          D.       42 U.S.C. § 1983 Claims

26          In dismissing the SAC, the Court determined Plaintiff had not properly alleged the deprivation

27   
       _____

28          [7] The Court dismissed the claim based on the revision of UPDC § 4.36 with prejudice in the
       second dismissal order, and dismissed the accessibility claim with prejudice in Section III(B) *supra*.

of a constitutional or federal statutory right. The TAC now alleges the Port violated 42 U.S.C. § 1983 based on: violation of due process; impairment of contract; and violation of the "*ex post facto*" clause. 42 U.S.C. § 1983 is the proper vehicle by which plaintiffs may complain of a violation of a constitutional right by a state actor. Greenawalt v. Sun City West Fire Dist., 250 F. Supp. 2d 1200, 1212-13 (D. Ariz. 2003). The Supreme Court held in Monell v. Soc. Svs. Dept. of New York that "Congress [intended] municipalities and other local government units to be included among those persons to whom § 1983 applies," and that "[l]ocal governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). To state a § 1983 claim, the plaintiff must demonstrate that (1) the action occurred "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. West v. Atkins, 487 U.S. 42, 48 (1988).

### 1. Due Process Claim

Plaintiff's sixth cause of action alleges that the Port, by "doing the things hereinabove alleged . . . acted willfully and with deliberate indifference to plaintiff's vested rights, in violation of plaintiff's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution." (TAC ¶ 34.) This cause of action is insufficiently pled for a number of reasons.

First, Plaintiff's due process claim does not make the required allegation of an action occurring "under color of state law" for purposes of § 1983. He merely incorporates by reference his pleadings on other claims and generally alludes to the "things hereinabove alleged." A pleading, even when filed by a *pro se* claimant, must "give[] fair notice and state[] the elements of the claim plainly and succinctly." Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984) (citation omitted). As pled, the sixth cause of action does not give the Port fair notice of the state action it allegedly undertook to cause the alleged violation(s) of Plaintiff's due process rights. While the TAC's claims must be construed with the liberality afforded to *pro se* plaintiffs, it is not proper to assume Plaintiff can prove that the Port has violated his due process right in ways that have not been specifically alleged. Assoc. Gen. Contractors, 459 U.S. at 526.

1    Furthermore, Plaintiff's newly-raised Fifth Amendment due process claim fails because "the

2    Due Process Clause of the Fifth Amendment . . . appl[ies] only to actions of the federal government

3    –not to those of state or local governments."   Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir.

4    2001).

5    Finally, Plaintiff has not stated which Fourteenth Amendment due process right or rights the

6    Port allegedly violated.  Under the Fourteenth Amendment, no state may "deprive any person of life,

7    liberty, or property, without due process of law." U.S. Const. amend. XIV.  Moreover, the due process

8    clause provides substantive protections for certain unenumerated fundamental rights.  Raich v.

9    Gonzales, 500 F.3d 850, 862 n. 11 (9th Cir. 2007).  Here, however, Plaintiff does not identify a

10   constitutionally-protected interest.  Plaintiff has merely alleged in a conclusory manner that the Port's

11   general actions deprived him of unspecified "vested rights."  Moreover, the facts set forth in the TAC

12   do not reveal any discernible due process violation.[8]  See Williams v. Gorton, 529 F.2d 668, 671 (9th

13   Cir. 1976) (holding a § 1983 claim failed because its allegations were vague and conclusory, and the

14   factual surroundings do not serve to "fill in the gaps" in the claim)).  Plaintiff's sixth cause of action

15   is therefore dismissed with prejudice.

16                    2.     Impairment of Contract and *Ex Post Facto* Claims

17   In support of Plaintiff's "impairment of contract" and "*ex post facto*" claims, he has alleged

18   the Port amended UPDC § 4.36.  (TAC ¶¶ 27, 39.)  The Court construes these allegations as claims that

19   the amended code was "officially adopted and promulgated" by the Port. Plaintiff has therefore

20   sufficiently alleged the Port was acting "under color of state law" by amending the ordinance with

21   respect to these claims.  See Monell, 436 U.S. 658, 690.  The Court now turns to whether Plaintiff has

22   successfully alleged the deprivation of constitutional rights.

23                    a.     Impairment of Contract

24   Plaintiff's fourth and fifth causes of action allege the amendment of UPDC § 4.36 impaired

25   the contractual obligation between him and the Port set forth in the Third Offer of Judgment.  The

26   United States Constitution provides, "No State shall . . . pass any . . . Law impairing the Obligation

27   _____

28        [8]   The Court has already determined that Plaintiff has no constitutional right to free, long term
     anchoring and that the amendment of UPDC § 4.36 did not deprive Plaintiff of any protected property
     interest.  (Second Dismissal Order at 11:22-12:5.)

of Contracts."  U.S. Const. art. I, § 10, cl. 1.  "Despite the sweeping terms of its literal text, the Supreme Court has construed this prohibition narrowly in order to ensure that local governments retain the flexibility to exercise their police powers effectively."  Matsuda v. City & County of Honolulu, 512 F.3d 1148, 1152 (9th Cir. 2008).  Nevertheless, when a state's action interferes with its own contractual obligations, as opposed to mere private contracts, Courts defer to the state's legislative judgment to a lesser degree, because the "the State's self-interest is at stake."  RUI One Corp. v. City of Berkeley, 371 F.3d 1137, 1147 (9th Cir. 2004).[9]

Whether a regulation violates the Contract Clause is governed by a three-step inquiry: (1) the threshold inquiry of whether the state law has, in fact, operated as a substantial impairment of a contractual relationship; (2) whether the state law is justified by a significant and legitimate public purpose; and (3) whether the impairment resulting from the law is both "reasonable and necessary to fulfill [such] public purpose."  Matsuda, 512 F.3d at 1152 (citations omitted).

The threshold inquiry, whether the state law "has operated as a substantial impairment of a contractual relationship, itself has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial."  RUI, 371 F.3d at 1147 (citations omitted).  "An impairment of a public contract is substantial if it deprives a private party of an important right, thwarts performance of an essential term, defeats the expectations of the parties, or alters a financial term.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 890 (9th Cir. 2003) (citations omitted).

Here, the parties do not dispute that the Third Offer of Judgment established a contractual relationship.  With respect to the second prong, however, the Port argues that the amendment of UPDC § 4.36 did not impair Plaintiff's contract with the district.  The Court agrees.  When Plaintiff brought suit in Gallagher I, the Port only allowed free long term anchoring to boaters in Anchorage A-8.  Plaintiff alleged he was not able to use the A-8 anchorage because of his disability.  The Port established free long term anchoring in the A-9 anchorage for plaintiff as a reasonable accommodation

---

[9]  The Contracts Clause applies to a municipalities, as well as states.  Matsuda, 512 F.3d at 1152 n. 3 (citing RUI, 371 F.3d at 1141, 1147)

1    of his disability in the Third Offer of Judgment.[10]  Plaintiff's present claim is premised on the

2    September 2006 amendment of UPDC § 4.36.  The amendment reflected the Port's decision to end

3    the issuance of new licenses for free long-term anchoring in the A-8 anchorage, and effectively new

4    licenses for free long term anchoring for the disabled in the A-9 anchorage.  In the wake of the

5    amendment, the Port was only authorized to "re-issu[e] Permits to Vessels with current valid Permits."

6    (Port's Ex. 8 ISO Motion (providing UPDC § 4.36 (c)(11)).  Accordingly, the amendment did not

7    extinguish any right or benefit established by the Third Offer of Judgment, because Plaintiff could

8    have renewed his existing A-9 license after the amendment was passed.  As Plaintiff has failed to

9    make the threshold showing for an impairment of contracts claim, the Court dismisses his fourth and

10   fifth causes of action with prejudice.

11                        b.        Violation of the *Ex Post Facto* Clause

12           Plaintiff's eighth cause of action alleges that by amending § 4.36 the Port "acted for punitive

13   purposes, and in derogation of plaintiff's vested contractual and statutory rights, thereby willfully

14   violating plaintiff's rights under the *ex post facto* clause of the United States Constitution." (TAC ¶

15   39.  Article I, Section 10 of the Constitution provides, "No State shall . . . pass  any . . . ex post facto

16   Law." U.S. Const. art. I, § 10, cl. 1.  Although Plaintiff alleges the amendment to 4.36 was "punitive"

17   in nature, the *ex post facto* clause does not apply here, because the amendment to § 4.36 did not

18   impose criminal penalties.  See Wolfe v. George, 486 F.3d 1120, 1127 (9th Cir. 2007) (affirming

19   judgment against a plaintiff asserting an *ex post facto* clause challenge to a vexatious litigant statute

20   because the statute did not impose criminal penalties).  Plaintiff's eighth cause of action is accordingly

21   dismissed with prejudice.

22           E.        Seventh Cause of Action: Tortious Breach of Contract

23           The TAC raises a claim for tortious breach of contract that was not raised in the SAC.  The

24

25        [10]  The TAC also alleges that "[i]n prior litigation in this Court, the Port District's counsel
26   asserted that Plaintiff's A-9 anchorage permit 'does not expire, subject to annual inspection for
     seaworthiness and sanitation,'" and that this representation comprised a "contractual commitment"
27   impaired by the amendment of UPDC § 4.36. (TAC ¶ 27.)  The Court declines to consider Plaintiff's
     allegation as a provision of the contract between the Port and Plaintiff because it is unsupported by
28   the plain language of the Third Offer of Judgment, which only provides that "[t]he Port District shall
     issue a permit to Plaintiff . . . to anchor in [Anchorage A-9] as an alternative free, long-term anchorage
     area, subject to all the regulations applicable to A-8."

1   Court's Second Dismissal Order only gave Plaintiff leave to file a third amended complaint

2   "addressing the deficiencies expressly set forth herein."  (Second Dismissal Order at 14:4-5.)  The

3   Court did not grant Plaintiff leave to amend in order to add new causes of action.  Plaintiff's seventh

4   cause of action is accordingly dismissed with prejudice.

5   III.      The Port's Motion to Strike Damages Claims

6         The Port moves to strike all of Plaintiff's damages claims from the TAC pursuant to the

7   Settlement Agreement, or alternatively to strike Plaintiff's requests for punitive damages because it

8   is not liable for such damages under Cal. Gov. Code § 818.  The Court's inquiry focuses only upon

9   the claims that have not been dismissed from the TAC: the claims for discrimination and retaliation

10  under the ADA, premised upon the Port's denial of Plaintiff's A-9 anchorage permit.[11]   Both of these

11  causes of action request compensatory and punitive damages.

12        A.      Settlement Agreement Damages Clause

13        The Port first argues Plaintiff's damages claims must be stricken from the TAC pursuant to

14  the following language in the Gallagher I Settlement Agreement:

15              Plaintiff accepts the $120,000 donation to Accessible San Diego, as
                provided for in Section 3(f) of this Agreement, as full and total
16              compensation for any damages (including but not limited to actual,
                general, punitive, special, treble, etc .) that he may have suffered as a
17              result of Defendant's conduct as alleged in the Complaint, including
                conduct related to the Anchoring Claim.  Plaintiff agrees that he is not
18              and shall not in any future litigation or other proceedings of any kind
                be entitled to and hereby  waives any claim for additional damages
19              arising out of the Anchoring Claim . . ."

20  [("Damages Clause,") Settlement Agreement at 5] (emphasis in original).   The TAC's remaining

21  causes of action arise from the Port's allegedly deliberate refusal to renew Plaintiff's ADA anchorage

22  A-9 permit: (1) in retaliation for pursuing his rights under the ADA; and (2) because of Plaintiff's

23  disability.  The question for the Court, therefore, is whether the Damages Clause applies to remaining

24  claims in the TAC.

25        Again, the Court's interpretation of the Settlement Agreement is governed by principles of

26  state contract law,  Botefur, 7 F.3d at 156, and  contracts are to be interpreted according to the

27

28  _____

        [11]  The Court denies the Port's motion to strike as moot to the extent that it references claims
from the TAC that have been dismissed.

objective intent of the parties.  <u>Beck</u>, 211 Cal. App. 3d at 1562; Cal. Civ. Code § 1636 (2009).  In the

Damages Clause, Plaintiff agrees that the Port's $120,000 donation would constitute full compensation

for any damages suffered *as a result of conduct alleged in the complaint*.  The conduct underlying

Plaintiff's instant claims, denial of his A-9 permit, clearly does not constitute conduct alleged in the

<u>Gallagher I</u> complaint.  The Damages Clause also provides that Plaintiff  "shall not in any *future*

*litigation* . . . be entitled to and hereby waives any claim for additional damages *arising out of the*

*Anchoring Claim*."  Although the Port initially provided Plaintiff with an A-9 permit as part of its

settlement of the Anchoring Claim,[12] the Port's alleged retaliatory and discriminatory refusal to renew

Plaintiff's A-9 permit does not state a claim for damages arising out of the Anchoring Claim itself.

It comprises discrete, subsequent misconduct with only an ancillary connection to the Anchoring

Claim.  The Court therefore finds the Damages Clause does not extend to the claims set forth in the

TAC, and denies the Port's motion to strike the damages claims on this basis.

<u>B.</u>      California Government Code § 818

The Port alternatively argues the Court should strike Plaintiff's requests for punitive damages

because they are not subject to punitive damages under Cal. Gov. Code § 818.  Plaintiff presents no

argument in opposition regarding the propriety of punitive damages.

As a general rule, punitive damages may not be awarded against a municipality unless such

damages are expressly authorized by statute.  <u>See</u> <u>Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247,

258-263 (1981).  In keeping with this principle, the Port relies on Cal. Gov. Code § 818, which

provides that, "[n]otwithstanding any other provision of law, a public entity is not liable for damages

awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of

example and by way of punishing the defendant."  Although the Port cites no authority for the

proposition that Section 818 bars punitive damages sought in federal causes of action, the Court need

not reach this issue because Plaintiff's ADA claims do not allow recovery of punitive damages.

The Supreme Court has held that punitive damages "may not be awarded in suits brought under

_____

[12]  Plaintiff's "Anchoring Claim" in <u>Gallagher I</u> was based on his allegations that the Port "has regulated anchorage within San Diego Bay, which regulation effectively discriminates against Plaintiff and others similarly situated."  The Anchoring Claim contested the Port's 1994 decision to discontinue long term anchorage in Glorietta Bay and instate long term anchorage in A-8, because anchorage A-8 was allegedly inaccessible to Plaintiff.  (See Gallagher I Complaint, ¶¶ 12-15, Ex. 2 ISO Motion.)

§ 202 of the ADA [codified at 42 U.S.C. § 12132]." <u>Barnes v. Gorman</u>, 536 U.S. 181, 189 (2002). The Court therefore strikes the request for punitive damages from Plaintiff's discrimination claim under 42 U.S.C. § 12132. Because Plaintiff's ADA retaliation claim stems from an allegedly retaliatory response to his prior ADA Title II discrimination claim in <u>Gallagher I</u>, his remedies are the same as those available in an action under § 12132.[13] As punitive damages are not available under that section, the Court strikes the request for punitive damages in Plaintiff's ADA retaliation claim under 42 U.S.C. § 12203.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the City's motion to dismiss the TAC with prejudice. The Court also GRANTS the Port's motion to dismiss in part, and DENIES it in part. The Court finds Plaintiff has successfully alleged: (1) a claim for discrimination under the ADA against the Port, premised ONLY upon the Port's denial of an A-9 anchorage permit; and (2) a claim for retaliation under the ADA against the Port, also based on the denial of the A-9 anchorage permit. All of the remaining claims in the TAC against the Port are hereby DISMISSED WITH PREJUDICE.

The Court GRANTS the Port's request for judicial notice in part, as set out in this Order. The Court DENIES AS MOOT the Port's request for judicial notice of each exhibit not expressly discussed herein. Finally, the Court GRANTS IN PART and DENIES IN PART the Port's motion to strike Plaintiff's damages claims, and hereby STRIKES Plaintiff's claims for punitive damages. The Court DENIES AS MOOT the Port's motion to strike any damages claims from causes of action that have been dismissed.

**IT IS SO ORDERED.**

**DATED:  August 31, 2009**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

[13] In an ADA retaliation action, "[t]he remedies and procedures available under sections 107, 203, and 308 of this Act [42 USCS §§ 12117, 12133, 12188] shall be available to aggrieved persons . . . with respect to title I, title II and title III [42 USCS §§ 12111 et seq., 12131 et seq., 12181 et seq.], respectively." 42 U.S.C. § 12203(c) (2009). Accordingly, in this case the anti-retaliation provision incorporates the remedies set forth in § 12133, the "enforcement" provision of Title II of the ADA.