UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GALLAGHER, | Case No.: 08cv0886 AJB (WVG) |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| v. | |
| SAN DIEGO UNIFIED PORT DISTRICT, CITY OF CORONADO, and DOES 1 through 20, inclusive, | [Doc. No. 64] |
| Defendants. | |

The Defendant, San Diego Unified Port District, filed a motion for summary judgment and request for judicial notice[1], [Doc. No. 64]. The Plaintiff filed an opposition, [Doc. No. 66], and the Defendant filed a reply, [Doc. No. 67]. Based upon the record and the parties moving papers and for the reasons set forth herein, the Defendant's motion for summary judgment, Doc. No. 64, is hereby GRANTED.

///

///

---

[1] Defendant's request for judicial notice, [Doc. No. 64-1], which is unopposed by the Plaintiff, is granted as to numbers 1-11, 15, because these are public records which are proper subjects for judicial notice, as they are considered within the public's common knowledge. *See, e.g., Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977); *Oceanic Cal., Inc. v. San Jose*, 497 F. Supp. 962, 967 n.8 (N.D. Cal. 1980); *see also* Fed. R. Evid. 201. The Court accordingly takes judicial notice of the regulations. The Defendant's remaining requests for judicial notice are denied as these have either already been granted in this Court's prior rulings [Doc. Nos. 27 and 43] or are inappropriate under Federal Rule of Evidence 201.

## Background

*I. Factual Background*

Plaintiff John Gallagher has a weak and shortened left leg due to childhood polio. Plaintiff brings this case, inter alia, to challenge the Port's failure to re-issue the anchorage permit for his boat in early 2007. Plaintiff previously sought an accessible anchorage for his boat in 1998 when he filed the federal action *Gallagher v. San Diego Unified Port District*, 98-cv-0615 J (JAH) ("Gallagher I").[2] The main factual allegations of Gallagher I were that: (1) the Port denied the disabled access to San Diego Bay due to inadequate docks, ramps, and facilities (the "Accessibility Claims"); and (2) the District's anchoring regulations discriminated against the disabled, resulting in their inability to anchor in the San Diego Bay (the "Anchoring Claim").

On August 8, 2000 Gallagher I resolved with respect to the Accessibility Claims only, when the parties signed a "Settlement Agreement and Release of Claims." [("Settlement Agreement"), Ex. 3 ISO Motion.] On November 17, 2000, in order to resolve the Anchoring Claim, the Port made a Third Offer of Judgment to Plaintiff wherein the Port agreed to issue a permit to Plaintiff to anchor in a portion of the A-9 anchorage free and long-term, subject to all the regulations applicable to the A-8 anchorage, as a reasonable accommodation. [("Third Offer of Judgment"), Port's Ex. 4 ISO Motion.] Plaintiff accepted the third offer of judgment on November 27, 2000. (Port's Ex. 5 ISO Motion.)

Even though the Port gave the Plaintiff a Permit to anchor in the A-9 Anchorage, the Plaintiff did not attempt to use the permit until July of 2006. On July 24, 2006, the Plaintiff called the Port's mooring office to obtain a Permit and was told that he needed to bring his vessel down to a dock for a vessel inspection in order to get a Permit. See Pla.'s Depo. 48:18-25. Two officers assisted the Plaintiff and a new Permit was issued to the Plaintiff dated July 24, 2006 with an expiration date of January 23, 2007. The Plaintiff's boat was vandalized on July 26, 2006, two days after he received his A-9 permit. The Plaintiff did not notify the Port of the vandalism or the removal of his boat from the anchorage for repairs. *See* Pla.'s Depo. 66: 3-6; 72: 3-6.

---

[2] This Court previously took judicial notice of the pleadings in that case under Rule 201 of the Federal Rules of Evidence.

On September 5, 2006, the Port adopted amendments to § 4.36 of the Unified Port District Code ("UPDC"). In pertinent part, those amendments provided: "Upon enactment of this Section 4.36, as amended, the Port shall discontinue issuing permits to anchor in the A-8 Anchorage, except for the purpose of re-issuing Permits to Vessels with current valid Permits and meeting all the requirements and conditions of this Section." [Port's Ex. 8 ISO Motion (providing UPDC § 4.36(c)(11)).] The regulations of the A-9 Anchorage require permittees to comply with all regulations of the A-8 Anchorage. [Port's Ex. 7 ISO Motion (providing UPDC § 4.38(h)(4)(d)).] Accordingly, the halt in the issuance of new A-8 anchorage permits also ended the Port's issuance of new A-9 permits.

The Plaintiff alleges he attempted to renew his permit in December 2006 or January of 2007, but the Port ignored his letters and phone calls. A review of the record and moving papers, however, demonstrates that the Plaintiff has provided no evidence to support these contentions and the Port's mooring office has no record of any telephone calls or letters being received from the Plaintiff during this period. The Port does have a record of Staff Assistant Emily Quimpo receiving a telephone call on April 3, 2007 from the Plaintiff seeking to renew his Permit, and a message of this call being forwarded to Bay Control Officer Corporal Laura Tosatto, who asked her incoming replacement, Officer Matt Bishop, to return the call to the Plaintiff. See Bishop Decl. at ¶¶ 2-3. Officer Bishop called the Plaintiff back on April 3, 2007. Officer Bishop has determined that Plaintiff's Permit had expired and that his vessel was not currently in the water. The Plaintiff told Officer Bishop that he wanted to renew his Permit, but said nothing about any prior attempts to do so. The Plaintiff also asked Officer Bishop if it was true that the Port was no longer issuing A-8 Anchorage Permits and Officer Bishop replied that it was true based upon changes to the UPD Code made by the BPC in September 2006. Bishop Decl. at ¶7.

On July 3, 2007, the Plaintiff met with Port counsel Ellen Gross Miles. On July 6, 2007, the Plaintiff received a letter from the Port dated July 6, 2007,[3] which stated that the Plaintiff's Permit had expired pursuant to UPD Code § 4.36. (Port's Ex. 9-11.) The letter directed plaintiff's attention to the September 5, 2006 amendments regulating the A-8 and A-9 anchorages and explained the Port would not renew plaintiff's permit because it expired "in or about" January of 2007. (*Id*.)

---

[3] A copy of the letter defense counsel sent to Plaintiff is attached as Exhibit 18 to the Defendant's motion for summary judgment, [Doc. No. 64].

*II. Procedural Background*

Plaintiff filed suit on May 19, 2008 and filed a first amended complaint ("FAC") on July 11, 2008, naming the Port and the City. The Court dismissed the FAC in its entirety on October 1, 2008, but granted Plaintiff leave to amend. (Doc. No. 14.) Plaintiff filed a second amended complaint ("SAC") on November 12, 2008. (Doc. No. 15.) The Court partially dismissed the SAC on February 6, 2009, ("Second Dismissal Order,") granting Plaintiff leave to amend some of his claims. On May 6, 2009, Plaintiff filed his third amended complaint ("TAC.") The TAC alleges eight causes of action: (1) discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; (2) retaliation in violation of the ADA, 42 U.S.C. § 12203; (3) injunctive relief pursuant to California state laws protecting the disabled; (4) "impairment of contracts" in violation of the United States Constitution; (5) violation of 42 U.S.C. § 1983 based on impairment of contracts; (6) violation of 42 U.S.C. § 1983 based on constitutional due process violations; (7) tortious breach of contract; and (8) violation of 42 U.S.C. § 1983 based on violation of the federal Constitution's Ex Post Facto clause.

The City and the Port filed motions to dismiss Plaintiff's TAC. The Court granted the City's motion to dismiss with prejudice on August 31, 2009, finding that the Plaintiff failed to comply with the Court's February 6, 2009 Order requiring any amendment allege facts regarding conduct or facilities that are under the City's control. The Court granted in part and denied in part the Port's motion to dismiss, dismissing all of the Plaintiff's with prejudice except the Plaintiff's claims for: (1) discrimination under the ADA against the Port, premised only upon the Port's denial of an A-9 anchorage permit; and (2) retaliation under the ADA against the Port, also based on the denial of the A-9 anchorage permit.

The Court also granted in part and denied in part the Port's motion to strike Plaintiff's compensatory and punitive damages claims. Although the Port argued that the Settlement Agreement's Damages Clause precluded recovery of such damages, the Court found that the Port's allegedly retaliatory and discriminatory refusal to renew the Plaintiff's A-9 permit constituted a discrete and subsequent misconduct with only ancillary connection to the Anchoring Claim set forth and covered by the Settlement Agreement, but also found that punitive damages are not available under 42 U.S.C. § 12132. As such, the Court denied the Port's motion to strike Plaintiff's compensatory damages for

Plaintiff's discrimination and retaliation claims under the ADA for the Port's denial of an A-9 anchorage permit and granted the Port's motion to strike Plaintiff's punitive damages claims.

### *Legal Standard*

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322, 106 S.Ct. 2548. Where the moving party does not have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways: "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir.2000). To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir.2000). The non-moving party may not rely on the pleadings alone, but must present specific facts creating a genuine issue of material fact through affidavits, depositions, or answers to interrogatories. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

### *Discussion*

All of the Plaintiff's claims in the TAC were previously dismissed with prejudice except for the Plaintiff's claims for: (1) discrimination under the ADA against the Port, premised upon the Port's denial of an A-9 anchorage permit; and (2) retaliation under the ADA against the Port, also based on the

denial of the A-9 anchorage permit. See Doc. Nos. 27 and 43. In the instant motion, the Port moves for summary judgement on these claims arguing that there is no genuine issue as to any material fact that the Port's refusal to renew Plaintiff's expired permit was neither discriminatory nor retaliatory and the Plaintiff has failed to offer any evidence to the contrary.

The Plaintiff's opposition, however, states that the "only viable claim left in this case is Mr. Gallagher's claim that the District retaliated against him by refusing to continue his permission to anchor in the A-9 anchorage area." The Plaintiff's opposition does not mention the discrimination claim or address any of the Port's summary judgment arguments. In light of the Plaintiff's abandonment of his discrimination claim and failure to demonstrate a prima facie case of disability discrimination under Title II of the ADA, the Port's motion for summary judgment as to the Plaintiff's discrimination claims is hereby GRANTED.

The Plaintiff's only remaining claim is for retaliation under the ADA against the Port based on the denial of the A-9 anchorage permit. The ADA prohibits retaliation against individuals who oppose discriminatory acts or practices. 42 U.S.C. § 12203(a). 42 U.S.C. § 12203(a) states in pertinent part that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." To establish a prima facie case of retaliation under the ADA,[4] the Plaintiff must show that: (1) Plaintiff engaged in a protected activity; (2) suffered an adverse action;[5] and (3) there was a causal link between the two. *Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir.2003). "The requisite degree of proof necessary to establish a prima facie case for Title VII…on summary judgment is minimal and does not even need to rise to the level of preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F. 3d 885, 889 (9th Cir. 1994).

---

[4] When considering the elements of an ADA retaliation claim, Title VII employment cases may also be considered for guidance. *See Pardi v. Kaiser Foundation Hospitals, Inc.*, 389 F.3d 840, 850 (9th Cir. 2004).

[5] For purposes of a retaliation claim under the ADA, an adverse action is any action reasonably likely to deter [a person with a disability] from engaging in protected activity." *Pardi v. Kaiser Foundation Hospitals*, 389 F. 3d 840, 850.

If the Plaintiff establishes a prima facie case of retaliation, the burden shifts to the Port to offer legitimate, non-retaliatory reasons for the action taken. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir.2004). If the Port presents legitimate reasons, "the burden shifts back to the Plaintiff to demonstrate a triable issue of fact as to whether such reasons are pretextual." *Id.*

With regard to the first element, the Plaintiff argues that pursuing one's rights under the ADA constitutes a protected activity. *See, e.g., McAlindin v. County of San Diego*, 192 F.3d 1226, 1238 (9th Cir.1999) (stating that "vigorously asserting [one's] rights" under the ADA and other state and federal discrimination laws constitutes protected activity). Plaintiff claims that the second element, an adverse action, was satisfied when the Port: 1) claimed that Plaintiff's A-9 permit was expired (when the Plaintiff claims it had no expiration date), denied the Plaintiff's request to reissue the permit documentation, and 3) denied the Plaintiff the right to anchor at the Port's A-9 Anchorage.

With regard to the third element, causal connection, the Plaintiff must present evidence sufficient to raise the inference that his protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 *citing Hagans v. Andrus*, 651 F.2d 622, 626. The Plaintiff argues that the Defendant was aware that the Plaintiff had previously sued the Port and been granted free, long-term, unexpiring anchorage rights at A-9 and the Plaintiff contends that the Port's position that the Plaintiff's Permit had expired and their subsequent refusal to renew or reissue Plaintiff a Permit creates a fair and plausible inference that this adverse action was causally linked to Mr. Gallagher's persona non grata standing with the Port.

The Plaintiff appears to premise his causal connection argument on the grounds that retaliatory intent may be inferred when adverse actions closely follow complaints of discrimination. *Pardi v. Kaiser Foundation Hospitals*, 389 F. 2d 840, 850 *citing Bell v. Clackamas County*, 341 F.3d 858, 865-66. However, the Court is not moved by this argument since the Plaintiff was able to obtain a Permit on July 24, 2006. While it is undisputed that the Plaintiff's prior permit contained no expiration date, the permit Plaintiff received from the Port on August 22, 2001 stated that it had "no expiration date as long as vessel passes normal inspections." There is no evidence in the record to support the leap the Plaintiff asks this Court to make in interpreting the absence of an expiration date to constitute a grant by the Port of an unexpiring Permit to the Plaintiff. It is clear from the record that the lack of an expiration

date was not a special provision for the Plaintiff based upon the Third Offer of Judgment, but rather a restatement of then-current law regarding A-8 Anchorage permits at that time[6].

The Plaintiff's claim of causal connection is further undermined by the fact that the Permit was initially issued without incident on July 24, 2006 with an expiration date of January 23, 2007. It was not until the Plaintiff failed to comply with all provisions of Unified Port District (UPD) Code §4.36, as set forth in the Third Offer of Judgment,[7] and allowed the Permit to expire that any alleged adverse action was taken by the Port. While the Plaintiff argues that the Defendant's awareness that the Plaintiff had engaged in a protected activity by way of the prior litigation, neither this awareness nor the Plaintiff's disabled status excuses the Plaintiff's failure to comply with all provisions of Unified Port District (UPD) Code §4.36, to seek timely renewal of his Permit. The changes to the provisions of UPD Code §4.36, the A-8 Anchoring Ordinance, and how it affected the permitting of vessels anchoring in either the A-8 or A-9 Disabled Anchorages constitute a superseding cause in the link between Plaintiff's protected activities and the District's refusal to renew his expired Permit.[8]

Even if the Court were to find the Plaintiff has demonstrated a causal connection and made a prima facie showing of retaliation under the ADA, thereby shifting the burden to the Port, the Port has demonstrated a legitimate, non-retaliatory reason for the refusal to renew the Plaintiff's expired Permit. *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir.2004). As such, the burden shifts back to the Plaintiff to demonstrate a triable issue of fact as to whether such reasons are pretextual." *Id.* The Plaintiff has failed to make any such showing and the ample evidence in the record supports the Port's

---

[6] *See* Def. Mot. Ex. 2, UPD Code §4.36(c)5.: "[t]he Anchoring Permit will be valid for Six (6) Months from the date of issue. Re-inspection of the vessel will be required upon renewal of the Anchoring Permit and the vessel inspection will be at a site determined by District."

[7] The explicit terms of the Third Offer of Judgment state only that "[t]he Port District shall issue a permit to Plaintiff John Gallagher to anchor in Anchorage Area A-9 as an alternative free, long-term anchorage area, subject to all the regulations applicable to A-8" (Exhibit "12", ¶2, 2:15-18). There is no mention of when or how a permit would be issued or whether it would expire, and there is no permit attached to the Third Offer of Judgment.

[8] As of October 6, 2006, a permit not renewed while the existing permit was still valid would be considered expired and unrenewable pursuant to UPD Code §4.36(c)11 (Exhibit "11", pg. 7). Further, the BPC had voted on June 6, 2006 to eliminate free long term anchoring all together, effective October 1, 2008. (Def. Mot., Doc. No. 64, Exs. 7 and 8).

legitimate, non-retaliatory purpose to address the problems facing the Port in managing these anchorages.[9]

### *Conclusion*

For the reasons set forth above, the Defendant's motion for Summary Judgment is hereby GRANTED, terminating this case. The Clerk of the Court shall enter Judgment in favor of Defendants and against Plaintiff.

IT IS SO ORDERED.

DATED: July 22, 2011

Hon. Anthony J. Battaglia
U.S. District Judge

---

[9] *See* Def. Mot., Statement of Facts at 1:22 - 4:3.