UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GALLAGHER,<br><br>                Plaintiff,<br>v.<br><br>SAN DIEGO UNIFIED PORT DISTRICT, CITY OF CORONADO, and DOES 1 through 20, inclusive,<br><br>                Defendants. | Case No.: 08cv0886 AJB (WVG)<br><br>ORDER:<br><br>(1) ESTABLISHING CAUSATION STANDARD FOR PLAINTIFF'S ADA RETALIATION CLAIM; AND<br><br>(2) REQUESTING SUPPLEMENTAL BRIEFING. |

      The instant matter comes before the Court on Defendant the San Diego Unified Port District's ("District") Motion for Summary Judgment. (Doc. No. 91.) The District's renewed Motion comes after the Ninth Circuit issued a memorandum decision reversing this Court's prior grant of summary judgment to the District and entering judgment in favor of the District. The District now asserts that an intervening Supreme Court case, *University of Texas Southwestern Medical School v. Nassar*, 133 S. Ct. 2517 (2013), renders the Ninth Circuit Mandate inapplicable to this action. Plaintiff, John Gallagher, opposes and argues the Ninth Circuit mandate is the law of the case and this Court must follow its directive. (Doc. No. 94.) The Court entertained oral arguments on April 11, 2014.

## I. BACKGROUND

### A. Factual Background

The District is a special district created by the California Legislature to operate, regulate, and manage the San Diego Bay. *See* Cal. Harb. And Nav. Code App. 1 (the "Port Act"), § 4. The District has the right and duty to regulate and control the anchoring, mooring, towing, and docking of all vessels. *Id.* at §§ 30, 55. The District is governed by the Board of Port Commissioners ("BPC"), which has the power to adopt ordinances to carry out the District's granted powers, including regulating anchoring. *Id.* at §§ 16, 21. The A-8 Anchorage was a federally-designated anchorage located in the South San Diego Bay that the District established as a free long-term anchorage. (Doc. No. 91 at 3.)

Plaintiff previously sought an accessible anchorage for his boat in 1998 when he filed the federal action, *Gallagher v. San Diego Unified Port District*, 98cv615 (JAH) ("*Gallagher I*"), under Title II of the American's with Disabilities Act ("ADA"), 42. U.S.C. § 12101 et seq. (*Id.*) The main allegations in *Gallagher I* were that (1) the District denied the disabled access to San Diego Bay due to inadequate docks, ramps, and facilities (the "Accessibility Claims") and (2) the District's anchoring regulations discriminated against the disabled, resulting in their inability to anchor in the San Diego Bay, and that Plaintiff was denied access to anchor his vessel due to his disability (the "Anchoring Claims"). (*Id.*)

On August 8, 2000 *Gallagher I* resolved with respect to the Accessibility Claims when the parties signed a "Settlement Agreement and Release of Claims" ("Settlement Agreement"). On November 17, 2000, in order to resolve the Anchoring Claims, the Port made a Third Offer of Judgment to Plaintiff wherein the District agreed to issue a permit to Plaintiff to anchor in a portion of the A-9 anchorage, free and long-term, subject to all the regulations applicable to the A-8 anchorage, as a reasonable accommo-

dation. ("Third Offer of Judgment"), Plaintiff accepted on November 27, 2000.  (Doc. No. 91, Ex. 1.)[1]

When Plaintiff accepted the Third Offer of Judgment, the BPC had previously approved Ordinance 2107, codified as UPD Code § 4.36 in August of 2000.  Code § 4.36 required the issuance of a permit to be conditioned on meeting certain requirements to anchor in the A-8 Anchorage and could be renewed every six (6) months subject to a vessel inspection to ensure seaworthiness.  UPD Code § 4.36(c)(5) (2000); *see also* Doc. No. 91, Ex. 5.

Plaintiff was issued a permit for the A-9 Disabled Anchorage in 2001, pursuant to the Third Offer of Judgment.  The 2001 permit expressly stated "no expiration date." Despite the issuance of the permit in 2001, Plaintiff did not attempt to use it until July of 2006.  (Doc. No. 91 at 4-5.)  On July 24, 2006, Plaintiff called the District's mooring office to obtain a permit and was told he needed to bring his vessel down for an inspection to obtain a permit.  Plaintiff did so, and a new Permit was issued dated July 26, 2006 with an expiration date of January 23, 2007 ("2006 Permit").  (*Id.* at 5.)  Two days later, Plaintiff's boat was vandalized, he did not notify the District of the vandalism or the removal of his boat from the anchorage for repairs. (Doc. No. 64, Ex. 22, Pl.'s Depo. 72: 1-6.)

In late 2005 and 2006, environmental, pollution, and crime issues pertaining to the A-8 Anchorage were causing significant problems and costs to the District.  (Doc. No. 91 at 5.)  The District held multiple public meetings to address these issues. (*Id.* at Exs. 9-12, MPC Meeting Agendas.)  On June 6, 2006, the BPC approved of eliminating the free and long-term anchoring in the A-8 Anchorage, effective October 1, 2008. (BPC June 6, 2006 Agenda, *Id.* at Ex. 11.)  To encourage attrition in the A-8 Anchorage due to the impending closure, the BPC adopted amendments to UPD Code § 4.36 including, among others, discontinuing the issuance of new permits to anchor in the A-8 Anchorage

---

[1] The A-9 Anchorage, also known as the "Cruiser's Anchorage" was and is designated solely for short-term anchoring for use only by non-San Diego County vessel owners. (Doc. No. 91 at 4.)

and only reissuing "Permits to Vessels with current, valid Permits and meeting all the requirements and conditions in this District." UPD Code § 4.36(c)(11) (2006). The District notified all affected vessel owners by either mailing a copy of the new ordinance to the address on their permits or affixing a copy to their vessels.

Plaintiff's 2006 permit expired on January 23, 2007. Plaintiff claimed that he called to renew his permit in December 2006 or January 2007, but that the District ignored his calls. However, a review of the record demonstrated that Plaintiff had not provided any evidence to support this contention. The only record of a communication from Plaintiff is an April 3, 2007 telephone call seeking to renew his Permit, and a message of this call being forwarded to Bay Control Officer Corporal Laura Tossato, who asked her incoming replacement, Officer Matt Bishop, to return Plaintiff's call. (Doc. Nos. 69 at 3, 91 at 6-7.) Officer Bishop testified that he called Plaintiff that same day. However, Officer Bishop determined that Plaintiff's permit had expired and his vessel was not currently in the water. Plaintiff did not notify Officer Bishop of any prior attempts to renew his permit. (Decl. Of Officer Matt Bishop ("Bishop Decl.") Doc. No. 91, Ex. 14 at 1-2.) Plaintiff inquired whether it was true that the District was no longer issuing A-8 permits, Officer Bishop confirmed this pursuant to the changes to the UPD Code and thus denied renewing Plaintiff's permit. On July 3, 2007, Plaintiff met with District counsel Ellen Gross Miles. On July 6, 2007, Plaintiff received a letter from the District dated July 6, 2007, stating that Plaintiff's Permit had expired pursuant to UPD Code § 4.36. (Doc. No. 64, Ex. 18.) The letter directed Plaintiff's attention to the September 5, 2006 amendments regulating the A-8 and A-9 Anchorages and explained the District would not renew Plaintiff's permit because it expired "in or about" January of 2007. (*Id.*)

### B.   Procedural Background

Plaintiff initiated the instant action on May 19, 2008. On May 6, 2009, Plaintiff filed his Third Amended Complaint ("TAC"). On August 31, 2009, the Court granted in part and denied in part the District's Motion to Dismiss the TAC, thereby dismissing all

of Plaintiff's claims with prejudice except the claims for: (1) discrimination under the ADA, premised upon the District's denial of an A-9 Anchorage Permit; and (2) retaliation under the ADA, also premised upon the District's denial of the A-9 Anchorage permit. (Doc. No. 43.)

On July 27, 2011, this Court granted summary judgment on all of Plaintiff's claims for the District and entered judgment in favor of the District. (Doc. No. 69.) Plaintiff subsequently appealed. (Doc. No. 74.) The Ninth Circuit Court of Appeals affirmed all of the Court's dismissal but found that the Court erred in granting summary judgment to the District on Plaintiff's ADA retaliation claim. The Ninth Circuit found that Plaintiff had made a prima facie case of retaliation and although the District had articulated a plausible non-retaliatory reason for its actions, Plaintiff satisfied the burden of "raising a genuine factual issue as to whether the District's proffered reason is a pretextual ruse to mask retaliatory action." The Ninth Circuit remanded the case for further proceeding.

The Court held a hearing spreading the mandate on January 30, 2014 and setting the case for trial. During the hearing, counsel for the District alerted the Court to an intervening change in law under the Supreme Court's June 24, 2013 decision, *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013). According to the District, the Motion for Summary judgment must now be analyzed under the new causation standards set forth in *Nassar* and must be done prior to trial. The Court recognized the possible impact of *Nassar* to the instant ADA retaliation claim and ordered briefing on the limited issue of the proper standard of causation for ADA retaliation claims.

## II. LEGAL STANDARD

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material issue of fact is a question a

trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322, 106 S. Ct. 2548. Where the moving party does not have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways: "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir.2000). To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir.2000). The non-moving party may not rely on the pleadings alone, but must present specific facts creating a genuine issue of material fact through affidavits, depositions, or answers to interrogatories. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548.

## III. DISCUSSION

On the instant Motion, the District essentially asks this Court to ignore the Ninth Circuit Mandate, revisit the District's previous Motion for Summary Judgment, and reinstate the Court's initial Order granting Summary judgment under the *Nassar* but-for standard of causation. Plaintiff opposes, arguing the Ninth Circuit Mandate is the law of this case and controls. First, Plaintiff argues the District waived any reliance on *Nassar* for failing to apprise the Ninth Circuit of the decision when the Parties were before the Ninth Circuit. Second, Plaintiff disputes whether *Nassar* constitutes an "intervening"

law that would allow this Court to depart from the Ninth Circuit Mandate under intervening law exception to the Law of the Case and Rule of Mandate Doctrines. Third, Plaintiff disputes the applicability of *Nassar's* but-for standard to ADA retaliation claims. Finally, Plaintiff argues that even if *Nassar* is applicable to ADA retaliation claims, Plaintiff has satisfied this burden. This Order adjudicates the first three arguments.

A.  *Nassar* **and But-For Causation**

*Nassar*, decided on June 24, 2013, held that Title VII retaliation claims under the Civil Rights Act of 1991 must be proved according to traditional principles of but-for causation. 133, S. Ct. at 2534 (analyzing 42 U.S.C. § 2000e-3). This but-for standard replaced the motivating-factor test previously used for retaliation claims, but still currently applicable for Title VII discrimination claims. *See id.* at 2528-31. The Court in *Nassar* noted that the motivating-factor test is the standard required to establish impermissible consideration of race, color, religion, sex, or national origin in employment practices. However, this standard does not apply to retaliation claims given the difference in statutory language between the two provisions. Although the anti-discrimination provision specifically uses the language "motivating factor", the anti-retaliation provision lacks any mention of "motivating factor" and instead uses "because" of language. *Compare* 42 U.S.C. § 20003-2(m) (stating a party establishes an unlawful employment practice by demonstrating an impermissible factor was a "motivating factor for any employment practice"), *with* 42 U.S.C. § 2000e-3(a) (making an unlawful employment practice for an employer to discriminate an employee . . . "because" the employee opposed any practice made unlawful by the statute). Given the difference in statutory language, which was presumed to be a deliberate choice by Congress, the Court found that the analysis under the anti-retaliation provision must be a "but-for" analysis. *Nassar*, 133 S. Ct at 2528-30.

B.  *Nassar* **and It's Impact on ADA Retaliation Claims**

Plaintiff disputes the applicability of *Nassar's* but-for standard in ADA retaliation

claims and characterizes the District's Motion as one that asks this Court to make new law based on a prediction that a higher court may one day apply *Nassar's* but-for causation to ADA retaliation cases. (Doc. No. 94 at 5.) This Court is unpersuaded by Plaintiff's arguments and agrees with the District that ADA retaliation claims must also be analyzed under traditional but-for causation. Given the similar use of the "because" of language in both Title VII's anti-retaliation provision and ADA's anti-retaliation provision as well as the Ninth Circuit's application of Title VII framework for ADA retaliation claims, this Court sees no logical reason why Title VII retaliation claims are subject to but-for causation while ADA retaliation claims may still be brought using the lesser motivating factor causation standard.

First, as stated above, the Supreme Court held that while Title VII discrimination claims are subject to the motivating factor test, Title VII retaliation claims must meet the higher but-for standard. This decision was largely based on the difference in statutory language, presumably a deliberate choice of words on the part of Congress, indicating that the motivating factor standard is only applicable to Title VII's ban on status-based discrimination but not retaliation. *Nassar*, 133 S. Ct. at 2529. Thus, as Congress did not alter the "because" of language in the anti-retaliation provision and given the plain meaning of the language, the Supreme Court determined that retaliation claims were subject to bu-for causation. In the instant matter, the ADA retaliation provision also uses the "because" of language. 42 U.S.C. § 200e-3(a) ("No person shall discriminate against any individual *because* such individual has opposed any act or practice made unlawful by this chapter or *because* such individual . . . .") (emphasis added).

Second, the Ninth Circuit applies the Title VII framework for retaliation claims to ADA retaliation claims. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000) (en banc) ("Therefore, we join our sister circuits in adopting the Title VII retaliation framework for ADA retaliation claims") *vacated on other grounds*, 533 U.S. 391 (2002); *see also Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 850 n.5 (9th Cir. 2004) ("While *Ray* addressed retaliation claims under Title VII, a retaliation claim under the

ADA is analyzed under the same framework) (citing *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)).  Given this express directive, it flies in the face of reason that the Ninth Circuit would follow the Supreme Court's express mandate to use but-for causation in Title VII retaliation claims but then apply the lesser motivating factor test for retaliation claims.

Finally, lower courts in this Circuit that have confronted this issue have adopted *Nassar's* but-for causation standard for ADA retaliation claims.[2]  *See e.g.*, *Brooks v. Capistrano Unified Sch. Dist.*, 2014 WL 794581, at *6 (C.D. Cal. Feb. 20, 2014) ("This Court sees no principled reason why Title VII retaliation claims are subject to the but-for causation standard while the lesser 'motivating factor' causation would apply to retaliation claims brought under other statutes."); *Doan v. San Ramon Valley Sch. Disti.*, 2014 WL 296861, at *3 (N.D. Cal. Jan. 27, 2014) (requiring a but-for causal link between the protected activity and the adverse employment action because "ADA retaliation claims are subject to the same framework of analysis as that of Title VII."); *Equal Employment Opportunity Comm'n v. Evergreen Alliance Golf Ltd.*, 2013 WL 4478870, at *11 (D. Ariz. Aug. 21, 2013) ("Retaliation claims require proof by a preponderance of the evidence that the adverse employment claims require proof by a that the adverse employment action would not have occurred in the absence of the protected activity.").

Plaintiff cites to three cases as support for the contention that the lesser motivating factor causation "remains 'controlling' authority in this circuit." (Doc. No. 93 at 5.) Plaintiff's citations are misleading.  First, *Thompson v. Donahoe* did not involve a retaliation claim under the ADA, instead *Thompson* was a discrimination claim under the Rehabilitation Act. 961 F. Supp. 2d 1017 (N.D. Cal. 2013).  Second, *Siring v. Oregon State Board of Higher Education*, involved an ADA discrimination claim.  2013 WL 5636718, at *1 (D. Ore. Oct. 15, 2013).  Indeed, that district court specifically noted that "[l]ower courts have applied the *Nassar* holding to ADA *retaliation* claims, however, no

---

[2] Likewise, lower courts in our sister circuits have also applied *Nassar's* but for standard in ADA retaliation claims.  *See e.g.*, *Rolfe v. Lawrence & Memorial Hosp.*, 2013 WL 5435507, at *7 (D. Conn. Sept. 30, 2013) (requiring plaintiff to show pretext and but-for causation under the ADA).

ADA retaliation claim is at issue in the pending case. *Id.* at *3 n.1 (emphasis in original). Third, in *Morgan v. Napolitano*, the district court did take note of the recent *Nassar* decision but stated that the Ninth Circuit applies a "motivating factor" standard in ADA retaliation cases. 2013 WL 6782845, at *14 (E.D. Cal. Dec. 19, 2013). In denying the defendant's motion for summary judgment on the plaintiff's ADA retaliation claim, the district court based its decision primarily on the fact that the defendant failed to meet its burden of showing a legitimate non-discriminatory reason for its actions under the burden shifting regime of retaliation claims after the plaintiff established a prima facie case of retaliation.

However, Plaintiff still fails to persuade the Court that it must follow *Morgan* in applying the motivating factor to the instant claim. The district court in *Morgan* did not provide any reason that would convince this Court that ADA retaliation claims should still be subject to motivating factor causation. Additionally, in analyzing whether third party retaliation claims are cognizable under the ADA and the ADEA, the district court noted that the Supreme Court found that they were under Title VII, a decision based in significant part on the text of the statutes. *Id.* The district court concluded that third party retaliation claims are also cognizable under the ADA and ADEA as the "anti-retaliation provisions of the ADA and ADEA are similarly worded to that of Title VII." *Id.* Given that the district court justified its conclusion based on the similarity of the statutory language of Title VII and the ADA, one questions whether the district court would have still applied the motivating factor test after a careful reading of the text of the anti-retaliation provisions and *Nassar*. Accordingly, this Court joins with those district courts in this circuit that find ADA retaliation claims should also be analyzed under the but-for standard.

**C.   Waiver of Argument before the Ninth Circuit**

Plaintiff contends that the District waived any reliance on *Nassar* by failing to raise the argument while the Parties were before the Ninth Circuit. (Doc. No. 94 at 3.) The District disagrees, stating that supplementing additional authority before the Ninth

Circuit is permissive and would not preclude this Court from considering the new law. The Court agrees with the District.

Federal Rule of Appellate Procedure 28(j) permits a party to cite supplemental authorities after the party's brief has been filed if pertinent and significant authorities come to light after the filing. Fed. R. App. Proc. 28(j) ("If pertinent and significant authorities come to a party's attention after the party's brief has been filed . . . a party *may* promptly advise the circuit clerk . . . ."). The operative word in this Rule is "may." The language of the rule itself does not indicate any mandatory directive that a party must supplement or raise an intervening decision or else risk waiver of arguments that rely on new law.

Plaintiff cites to *United States v. Perry*, 394 Fed. Appx. 356 (9th Cir. 2010) for the proposition that a failure to raise new case law before the Appellate Court waives any reliance on the new case law, even before a lower court on remand. The Court is unpersuaded. In *Perry*, the Government failed to apprise the Ninth Circuit on a new opinion, *United States v. Mayer*, 530 F.3d 1099 (9th Cir. 2008), after the parties filed their appellate briefs. The Ninth Circuit ordered supplemental briefing on the effect of *Mayer*, and whether the Government waived any reliance on the issue decided in *Mayer*. *Perry*, 394 Fed. Appx. at 359. Though the Ninth Circuit did hold that the Government waived the argument, a careful reading of *Perry* shows that the Ninth Circuit still had discretion to consider the issue decided in *Mayer*, but declined to exercise that discretion. *Id.*

*Perry* and the cases it cites do not inform the instant matter. While a party may waive new case law on appeal for failing to inform the Appellate Court of it, these cases do not stand for the proposition that arguments based on new case law is absolutely waived, even before a district court on remand. Accordingly, given the permissive nature of Rule 28(j) and the Court's duty to apply current law to the cases before it in an effort to prevent inconsistent application of the law, the Court finds that the District did not waive its reliance on *Nassar* for failing to bring it before the Ninth Circuit.

Plaintiff next argues that this Court must abide by the Ninth Circuit Mandate as it controls this case under the law of the case and mandate of rule doctrines.

### D.  Law of the Case and Mandate of Rule

Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *U.S. v. Cuddy*, 137 F.3d 1111, 1114 (9th Cir. 1998) (citations omitted). Similarly, "when a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *U.S. v. Luong*, 627 F.3d 1306 (9th Cir. 2010); *see also U.S. v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987) ("The rule is that the mandate of an appeals court precludes the district court on remand from considering matters which were either expressly or implicitly disposed of upon appeal."). However, the doctrines "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Leslie Salt Co v. U.S.*, 55 F.3d 1388, 1393 (9th Cir. 1995).

Under these two doctrines, this Court would have been precluded from considering the issues in question here - (1) whether Plaintiff has established a prima facie claim under the ADA and (2) whether Plaintiff has demonstrated a triable issue of fact on whether the reason proffered by the District in denying him a permit was pretextual. These two issues were explicitly resolved by the Ninth Circuit in its Mandate.

Importantly though, there is some flexibility with respect to the law of the case and rule of mandate. Indeed, the Ninth Circuit "cases make clear that the rule of mandate is designed to permit flexibility where necessary, *not* to prohibit it." *U.S. v. Kellington*, 217 F.3d 1084, 1095 n.12 (9th Cir. 2000) (emphasis added). The Ninth Circuit likewise recognizes that "[l]aw of the case should not be applied woodenly in a way inconsistent with substantial justice." *U.S. v. Miller*, 822 F.2d 828, 832-22 (9th Cir. 1987); *see also Yankee Atomic Electric Co. v. U.S.*, 679 F.3d 1354, 1360 (Fed. Cir. 2012) ("An appellate mandate does not turn a district judge into a robot, mechanically carrying out

orders that become inappropriate in light of subsequent factual discoveries or changes in the law.").

Accordingly, a court has the *discretion* to depart from the law of the case if: (1) The first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *Cuddy*, 137 F.3d at 1114. A court's "failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Id.* (citation omitted). "Further, because the mandate rule is a subpart of the law of the case doctrine[,] . . . the mandate rule is subject to the same exceptions as the law of the case doctrine." *Parra v. Bashas', Inc.*, 291 F.R.D. 360, 370 (D. Ariz. 2013) (internal quotation marks and citations omitted).

In the instant matter, the second exception – an intervening change in the law – applies. *See White v. Murtha*, 377 F.3d 428, 431 (5th Cir. 1967) (finding a court should apply the law of the case unless "controlling authority has since made a contrary decision of the law applicable to such issues . . ."). Plaintiff opposes, arguing that *Nassar* is not actually intervening as the decision was decided *prior* to the Ninth Circuit's Mandate in our case. Plaintiff argues that to be "intervening" the *Nassar* decision must have come after the Ninth Circuit's decision, and not six months before it. Moreover, Plaintiff contends that the Ninth Circuit panel must have been aware of the *Nassar* decision, as Judge Thomas previously applied *Nassar's* but-for causation standard in at least one other case before deciding this one. Plaintiff's position is unsubstantiated.

1. *Nassar* is "Intervening Law"

A review of Ninth Circuit case law shows that a district court may ignore Ninth Circuit mandates if a higher authority establishes something otherwise. In *Hegler v. Borg*, the Ninth Circuit instructed the district court to determine whether a particular error was harmless beyond a reasonable doubt. 990 F.2d 1258 (9th Cir. 1993). On remand, the district court "disobeyed the instruction in the mandate because of an

intervening Supreme Court decision prescribed a different standard." In *Hegler II*, another Ninth Circuit panel agreed that it "must apply intervening Supreme Court authority to a subsequent appeal[]" as an exception to the law of the case doctrine. 50 F.3d 1472 (9th Cir. 1995). In *Barter Fair,* the Court held that it was not an abuse of discretion to re-examine the merits after the issuance of a preliminary injunction, notwithstanding the law of the case, because an intervening Supreme Court decision "provided important guidance" therein. *Barter Fair,* 372 F.3d at 1136.

These cases do not stand for the proposition that failing to raise an argument or reliance on an intervening case law before an Appellate Court waives those arguments completely. Indeed, most of the case law state that a district court may deviate from a mandate in light of recent, dispositive Supreme Court decisions. The Court cannot assume that the Ninth Circuit panel deciding this issue was already informed of the *Nassar* decision and its potential application to ADA retaliation claims. Moreover, even if a party waives an argument, this Court is bound to apply the law as it stands now. To do so otherwise may risk inconsistent rulings among district courts. Finally, all of these cases read "intervening" to mean a change in law prior to the instant matter before that court deciding the issue. Intervening law does not mean a law that came out before a different court.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that: (1) *Nassar* is indeed an intervening law that would allow the Court to deviate from the Ninth Circuit Memorandum Opinion issued December 2, 2013; (2) *Nassar's* but-for causation is applicable for claims of retaliation under the ADA; and (3) the District has not waived its reliance on *Nassar* in this Court. Accordingly, the Court must revisit the District's Motion for Summary Judgment under the but-for standard.

In the instant motion for summary judgment filed by the District, the Court only authorized briefing on the limited issue of what causation standard should be applicable to Plaintiff's ADA retaliation claim. A thorough review of the briefs demonstrate that

while the District has presented arguments and evidence in the record that Plaintiff cannot show but-for causation, Plaintiff's brief primarily focuses on the issue what causation standard is applicable, as instructed by the Court. Accordingly, in fairness for the Parties, the Court finds that Plaintiff should be given the opportunity to fully present his arguments and evidence opposing the District's motion for summary judgment on whether Plaintiff has established a prima facie case of ADA retaliation under the but-for standard.

Plaintiff must file supplemental briefing on this matter on or before April 30, 2014. If Plaintiff fails to do so, the Court will rule on the matter based on the briefs and record before it. If the Plaintiff files supplemental briefing, the District may file a supplemental brief in response, if it so chooses, on or before May 9, 2014. Further argument will be scheduled if deemed necessary.

IT IS SO ORDERED.

DATED: April 14, 2014

_____
Hon. Anthony J. Battaglia
U.S. District Judge